# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VEHICLE CARRIER SERVICES ANTITRUST LITIGATION<br><br>*This Document Relates To All Actions* | Master Docket No.:13-3306(ES)(JAD)<br>(MDL No. 2471) |

## PLAINTIFFS' PROPOSED STIPULATION AND ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

This Stipulation and Order Regarding Production of Electronically Stored Information and Hard Copy Documents ("Production Stipulation and Order") shall govern the parties in the above-captioned case and all actions that are later consolidated with that case (collectively, the "Litigation").

## I.  GENERAL PROVISIONS

A.    This Production Stipulation and Order will only govern the production of electronically stored information ("ESI") and hard copy documents (collectively, "Document" or "Documents").

B.    **TIFF Image Files**:  The parties agree that all Documents will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution, except as provided in section III.C.  Page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the producing party, a particular item requires a different page size.  Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (e.g., portrait to portrait and landscape to landscape).

C.      **Text Files**:   Each Document produced under this Production Stipulation and Order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page.  Each text file shall be named using the Bates number of the first page of the corresponding production item.

      i.      **OCR**: The text for each hard copy document shall be generated by applying optical character recognition (OCR) technology to the scanned image of the document.  The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  The parties acknowledge, however, that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

      ii.      **ESI**: The text of each ESI item shall be extracted directly from the ESI native file. To the extent that is not technically possible (e.g., the underlying native file is an image file), the text for each ESI item shall be generated by applying OCR to the native file under the provision above. For contacts and calendars collected and/or processed after the execution date of this Production Stipulation and Order, user modifiable fields should be extracted and produced as text.

      iii.      **Redacted Text**:  The text file corresponding to a redacted document may be generated by applying OCR to the redacted TIFF file under the provision above.

      iv.      **Foreign Language Text**:  The parties will make reasonable efforts to ensure that all technologies and processes used to collect, process and produce the text of any Document – including all TIFF conversion and

OCR processes, and the extraction of text from native files – preserves all foreign language text, punctuation and other characteristics as they exist in the source native file.

D. **Bates Numbering**:

    i.    Each TIFF image produced under this Production Stipulation and Order must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document.

    ii.    If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify any such gap within 14 days of each production. The producing party need not provide a placeholder (e.g., gap sheet, dummy image) within the production.

    iii.    The producing party will brand all TIFF images with its corresponding Bates number, using a consistent font type and size. Parties will make reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

E. **Color**: If a receiving party finds the black and white version of a Document insufficient, the receiving party may request that the producing party provide a color image. If the producing party has viewed the Document in color for its own review for production, the producing party will provide the color image to the receiving party in the same format. If the producing party has not viewed the Document in color for its own use, the producing party will

not unreasonably deny a request to provide a color image after the requesting party demonstrates good cause for requesting a color image.  If a producing party converts a document to color image in response to a request from a receiving party, the producing party shall do so in JPEG, TIFF or such other format as agreed with the receiving party.

F.     **Confidentiality Designations**:  If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to the Document. The confidentiality designation should also be reflected in the "Confidentiality" field specified in Appendix 2.

G.     **Load Files**:  All productions will be provided with image and data load files as detailed in Appendix 1.  The image load file must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

H.     **Fields**:

　　i.     Documents shall be produced with all of the fields set forth in Appendix 2 to the extent that such fields can be extracted from the native file or created using an automated process.

　　ii.     Documents shall be produced with the following fields regardless of whether the fields may be populated automatically from the native file, created using an automated process, or manually entered:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f)

SourceParty, (g) NativeFileLink (for ESI only), (h) AttachRange, (i) Confidentiality, (j) RecordType, (k) Redacted, and (l) ProdVolume.

iii.     All field information will be provided in a .DAT file consistent with the descriptions and the field names provided in Appendix 2.

iv.     ESI shall be processed to reflect the date and time standardized for the UTC/GMT time zone.   The date and time reflected in the fields in Appendix 2 and on any TIFF image will include UTC/GMT.  TIFF images may optionally show the local date and time if they display the offset to UTC/GMT.

I.     **ESI Liaison**:  Each party agrees to designate an attorney to act as its ESI Liaison. Each ESI Liaison will be prepared to participate in the resolution of ESI discovery issues; know the party's ESI discovery efforts; and have access to those who are familiar with the party's electronic systems and capabilities in order to, as appropriate, answer relevant questions.  Each party shall designate its ESI Liaison within 10 days after entry of this Production Stipulation and Order.  Any party is free to change their designated ESI Liaison by providing written notice to the other parties.

## II.     PRODUCTION OF HARD COPY DOCUMENTS

A.     **Unitization of Hard Copy Documents**:  The parties will produce images of hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents, and with information that identifies the folder (or container) structure, to the extent such structure exists.

### III.   PRODUCTION OF ELECTRONICALLY STORED INFORMATION

A.   **System Files**:  Common system files defined by the NIST library, available at http://www.nsrl.nist.gov/, ("Industry Standard") need not be produced.  The parties recognize that to reduce the document review population, additional file types may need to be excluded. The parties recognize that certain parties have already processed documents that may be relevant to this Litigation.

     i.    Any party that has processed documents prior to the execution of this Production Stipulation and Order, will provide the other parties, within 30 days of the execution of this Production Stipulation and Order, a list of file types excluded from review that are not within the Industry Standard. Any party receiving the list must lodge objections with the party who provided the list within 14 days.  Any objection not received in this period will be waived.  If objections are made, the relevant parties will meet and confer to resolve them.

    ii.    As to documents processed after the execution of this Production Stipulation and Order, if a party plans to exclude from review a file type not within the Industry Standard, that party must disclose such an exclusion to the other parties.  Any party to whom such disclosure is made will have 5 business days to object.  Any objection not made in this period will be waived. If objections are made, the relevant parties will meet and confer to resolve them.

B. **Metadata Fields and Processing**:

    i. ESI items processed after the execution date of this Production Stipulation and Order shall be processed in a manner that preserves the source native file and metadata without modification, including time, date and time-zone metadata consistent with the requirements provided in this Production Stipulation and Order.

    ii. **Auto date/time stamps**:  ESI items processed after the execution date of this Production Stipulation and Order shall be processed so as to maintain the date/time shown in the document as it was last saved by the custodian or end user, not the date of collection or processing.

    iii. **Hidden text**:  Except as to the ESI produced in accordance with Sections III.C.-F., *infra*, ESI items processed after the execution date of this Production Stipulation and Order shall be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

C. **Production of Native Items**:  The following are exceptions to the agreements outlined in sections I.B. and I.C.

    i. Through the pendency of this Litigation, the producing party shall exercise reasonable, good faith efforts to maintain all collected Native Files that may be relevant to this Litigation in a manner that does not materially alter or modify the file or the metadata other than as provided in this Production Stipulation and Order.

ii.     The parties shall produce TIFF images of each presentation-application file (*e.g.*, MS PowerPoint) together with the full native version of each file.

iii.    The parties shall produce the TIFF images of the first five pages of each spreadsheet-application file (e.g., MS Excel) together with the full native version of each file.

iv.     To the extent necessary, the parties will meet and confer regarding production of relevant information from personal databases (*e.g.*, MS Access).

v.      The parties agree to meet and confer regarding the production of enterprise database-application files (*e.g.*, SQL and SAP) to determine the most reasonable form of production based on the specific circumstances. In addition, the production of transactional data contemplated by the Initial Discovery Plan, as entered by the Court, shall be in the form agreed to during the meet and confer process and shall not be subject to this Production Stipulation and Order regardless of the source of the transactional data.

vi.     To the extent necessary, the parties will meet and confer regarding production of relevant multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi).

vii.    The parties agree to meet and confer prior to producing native file types other than those described in this section.

D.      **Requests for Other Native Files**:   Other than as specifically set forth in Paragraph III.C., *supra*, a producing party need not produce documents in native format. If a party wants particular ESI produced in native format, and this Production Stipulation and Order does not require the production of that ESI in its native format, the requesting party bears the burden of showing that good cause exists for the producing party to produce the ESI in its native format.  The requesting party will provide a specific Bates range for ESI it wishes to be produced in native format.   Upon receiving such a request, the producing party shall either produce the requested ESI in native format or disclose to the requesting party why it is unreasonable or unnecessary to do so.  Any native files that are produced under this procedure are subject to all of the production requirements specified for native file productions above.

E.      **Embedded Files**.  If a document has discoverable information from another file embedded in it (*e.g.*, a Word document that has a spreadsheet embedded in it), the producing party shall produce the document with all embedded information, and the receiving party may request that the embedded file be produced as a standalone file.  The producing party shall promptly respond in writing if it cannot produce the requested embedded file as a standalone file, after which the parties shall meet and confer.

F.      **Parent-Child Relationships**:   Parent-child relationships for all ESI (*e.g.*, the association between an attachment and its parent email), must be preserved by assigning sequential Bates numbers to all items within the parent-child group and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a party is producing an e-mail with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail.

G.     **Redaction**:

    i.     Where ESI items need to be redacted the ESI items shall be produced in TIFF with the OCR text of the redacted TIFF and with each redaction clearly indicated on the face of the TIFF.  The producing party will also provide data fields specified in Appendix 2 to the extent that such fields can be provided for all redacted documents without individualized privilege review and redaction subject to Section I.H., *supra*.

    ii.     If ESI redacted and partially withheld from production are PowerPoint-type presentation decks or Excel-type spreadsheets as addressed in Paragraph III.C., *supra*, and the native items are also withheld, the entire file must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not display or print when opened as last saved by the custodian or end-user.  For PowerPoint-type presentation decks, this shall include, but is not limited to, speaker notes.  For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values and formulas as visible when printed, annotations and notes.  If a requesting party receives a TIFF image that the requesting party does not believe is formatted so as to be legible (e.g., column cells display "#########" instead of the value) or if a requesting party wants additional information from an Excel-type spreadsheet (e.g., formulas), the requesting party may request from the producing party a legible TIFF image or a redacted native item.  At that time the requesting party will explain why good cause exists to make the

request and will provide a specific Bates range for the ESI at issue.  Upon receiving such a request, the producing party shall either produce a legible TIFF image or redacted native item or disclose to the requesting party why it is unreasonable or unnecessary to do so.

    iii.    If ESI redacted and partially withheld from production are audio/visual files, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unprivileged portion of the content.

**H.**    **De-duplication**:

    i.    A Party is only required to produce a single copy of a responsive document.

    ii.    ESI duplicates shall be identified by using industry standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only.  Any other methodology for identification of duplicates must be discussed with the receiving party and approved in writing before implementation. The resulting hash value for each item shall be reflected in the HashValue field specified in Appendix 2.

    iii.    A Party may remove exact duplicate ESI according to the MDS/SHA-l hashing method as follows:

        a.    Parties must de-duplicate standalone documents or entire document families globally using MD5 or SHA-1 Hash value matching and shall provide the additional information about custodians of de-duplicated documents in the CustodianOther field specified in Appendix 2.

b.  Deduplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa, although each family member shall be hashed separately for purposes of populating the hash value field in Appendix 2.

c.  Attachments to e-mails or other documents shall not be disassociated from the parent e-mail or document even if they are exact duplicates of another document in the production.

d.  Paper documents shall not be eliminated as duplicates of responsive ESI.

e.  ESI that is not an exact duplicate according to the method specified above may not be removed.

iv.  The producing party shall make reasonable efforts to reach agreement on any culling criteria to be used, including but not limited to de-NIST criteria, date ranges, and file type inclusion/exclusion.

v.  All BCC recipients whose names would have been included in the BCC metadata field but are excluded because de-duplication must be identified in the BCC metadata field specified in Appendix 2.  In the event of a rolling production of documents or ESI items, the producing party shall provide an overlay load file with updated CustodianOther and BCC information along with each production.

I.  **Encryption**.  The Parties will make reasonable efforts to ensure that all encrypted or password-protected documents are successfully processed for review and production under the

requirements of this Production Stipulation and Order, and if produced in native form, the decrypted document is produced.  To the extent encrypted or password-protected documents are successfully processed according to the requirements of this Production Stipulation and Order, the parties have no duty to identify the prior encrypted status of such documents.  To the extent such documents are not successfully processed despite use of reasonable efforts, including reasonable efforts to obtain passwords, the producing party agrees to make a reasonable effort to produce an inventory of such files that are determined to have a reasonable likelihood of containing relevant information as is apparent without decryption such as attachments to responsive files, or metadata suggestive of responsiveness, such as relevant file names, and in any case shall include any container files such as PST or ZIP files.  The inventory shall contain any required metadata and document identifying information, including family relationships, to the extent that such information can be extracted using reasonable efforts during document processing.  The inventory shall be produced in accordance with the load file specifications provided in Appendix 1.  Each party may request production of such encrypted files, as well as a written description of the efforts undertaken by the producing party to decrypt the file, according to the procedure specified for requesting production of ESI in native format in Section III.D above, and such requests will not be unreasonably denied.

IV.     **MISCELLANEOUS PROVISIONS**

A.     **Objections Preserved**:  Nothing in this Production Stipulation and Order shall be interpreted to require disclosure of irrelevant information or relevant information that is overly burdensome or is protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the parties do not waive

any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents.

B.   **Cooperation**:   The parties agree to act cooperatively and meet and confer regarding preservation, processing, and production issues.

C.   Modifications:   Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of Documents.

SO ORDERED this ___day of _____, 2014.


_____
HONORABLE ESTHER SALAS, U.S. D.J.

/s/ Lauren Fenton-Valdivia
Lauren Fenton-Valdivia (035112011)
Lewis H. Goldfarb (LG5470)
Albert J. Pucciarelli (AP1040)
McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
Telephone: (973) 241-4224
LValdivia@mdmc-law.com
lgoldfarb@mdmc-law.com
apucciarelli@mdmc-law.com

*Proposed Direct Purchaser Liaison Counsel*

Manual John Dominguez
Christopher J. Cormier
COHEN MILSTEIN SELLERS & TOLL PLLC
2925 PGA Blvd  Suite 204
Palm Beach Gardens, FL 33410
Telephone: (561) 833-6575
jdominquez@cohenmilstein.com

Kit Pierson
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave NW
Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com

Steven A. Kanner
Michael J. Freed
Michael E. Moskovitz
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com

Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Lauren I. Dubick
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
rkilsheimer@kaplanfox.com
garenson@kaplanfox.com
ldubick@kaplanfox.com

William J. Pinilis
KAPLAN FOX & KILSHEIMER LLP
160 Morris Street
Morristown, NJ 07960
Telephone: (973) 656-0222
wpinilis@kaplanfox.com

*Proposed Direct Purchaser Interim Co-Lead Counsel*

Solomon B. Cera
C. Andrew Dirksen
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
scera@gbcslaw.com
cdirksen@gbcslaw.com

Joseph C. Kohn
Douglas A. Abrahams
William E. Hoese
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
jkohn@kohnswift.com
dabrahams@kohnswift.com
whoese@kohnswift.com

Lee Albert
Gregory B. Linkh
GLANCY BINKOW & GOLDBERG, LLC
122 East 42nd Street – Suite 2920
New York, NY 10168
Telephone: (212) 682-5340
lalbert@glancylaw.com
glinkh@glancylaw.com

W. Joseph Bruckner
Heidi M. Silton
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Telephone: (612) 339-6900
wbruckner@locklaw.com
hmsilton@locklaw.com

Gregory P. Hansel
Randall B. Weill
Michael Kaplan
Jonathan G. Mermin
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU &
PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
mkaplan@preti.com
jmermin@preti.com
msmith@preti.com

Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen
Rachel E. Kopp
SPECTOR ROSEMAN KODROFF
& WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
rkopp@srkw-law.com

*Additional Direct Purchaser Counsel*

James E. Cecchi
Lindsey H. Taylor
**CARELLA BYRNE CECCHI**
**OLSTEIN BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

*Proposed Interim Liaison Counsel*
*for End-Payor Plaintiffs*

Hollis Salzman
Meegan Hollywood
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
601 Lexington Avenue, Suite 3400
New York, NY 10022
(212) 980-7400

Terrell W. Oxford
Warren T. Burns
Daniel H. Charest
Omar Ochoa
**SUSMAN GODFREY LLP**
901 Main Street, Suite 5100
Dallas, TX 75202-3775
(214) 754-1900

Joseph W. Cotchett
Steven N. Williams
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000

*Proposed Interim Co-Lead Counsel for End-Payor Plaintiffs*

Peter S. Pearlman
COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
Park 80 Plaza West-One
250 Pehle Ave., Suite 401
Saddle Brook, NJ 07663 Telephone:(201) 845-9600
psp@njlawfirm.com

Jonathan W. Cuneo
Joel Davidow
Katherine Van Dyck
Victoria Romanenko
Daniel Cohen
CUNEO GILBERT & LADUCA, LLP
507 C Street NE
Washington, D.C. 20002
Telephone:(202) 789-3960
Facsimile: (202) 789-1813
jcuneo@cuneolaw.com
joel@cuneolaw.com
kvandyck@cuneolaw.com
vicky@cuneolaw.com
danielc@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
BARRETT LAW GROUP, P.A.
404 Court Square
P.O. Box 927
Lexington, Mississippi 39095
Telephone:(662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
Paul A. Sand
LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota 55101
Telephone:(651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

psand@larsonking.com

*Proposed Automobile Dealer Plaintiff Interim Co-Lead Counsel and Liaison Counsel*

# Appendix 1: Production Delivery Requirements

<u>General Instructions</u>

1. A cover letter should be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD or CD).
2. Data can be produced on CD, DVD, thumb drive or hard drive; use the media requiring the least number of deliverables.
3. Label all media with the following:
    a. Case number,
    b. Production date,
    c. Bates range, and
    d. Disk number (1 of X, 2 of X, etc.), if applicable.
4. Each deliverable volume should limit directory contents to approximately 5,000 files per folder.
5. All productions should be checked and produced free of computer viruses.
6. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.
7. There will be two Load/Unitization files accompanying all productions of ESI: an Image Load File and a Data Load File.

<u>Image Load File:</u> This is a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable format for the cross-reference files is .opt.

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.OPT).

- The volume names should be consecutive (e.g., ABC001, ABC002, *et seq*.).

- There should be one row in the load file for every TIFF image in the production.

- Every image in the delivery volume should be cross-referenced in the image load file.

- The imageID key should be named the same as the Bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

<u>Data Load File:</u> This is a metadata import file, in .DAT format, that contains the agreed upon metadata fields in UTF-8 encoding.

- The first line of the file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

3

- All date fields should be produced in mm/dd/yyyy format.

- All attachments should sequentially follow the parent document/email.

- Use carriage-return to indicate the start of the next record.

- Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.); a separate volume should be created for each piece of media delivered.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (e.g., ABC001.DAT).

- The volume names should be consecutive (e.g., ABC001, ABC002, *et seq*.).

- If foreign language / Unicode text exists, the .DAT file shall be in UTF-8 or UTF-16 format where appropriate, consistent with section I.C.iv.

OCR/Extracted Text Files

- OCR or Extracted Text files shall be provided in a separate \OCR\ directory containing Document level text files.

- If Foreign Language/Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format, consistent with section I.C.iv.

4

# Appendix 2: Fields

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item. |
| EndBates | Last Bates number (production number) of an item.<br>**The EndBates field should be populated for single-page items. |
| BegAttach | First Bates number of attachment range (i.e. Bates number of the first page of the first attachment). |
| EndAttach | Last Bates number of attachment range (i.e. Bates number of the first page of the first attachment). |
| PgCount | Number of pages in the item. |
| Custodian | Name of person from whose files the item is produced. |
| CustodianOther | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated. |
| FileSize | Size (in kilobytes) of the source native file. |
| SourceFilePath | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 hash value of the file. |
| NativeFileLink | Hyperlink path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| SourceParty | Name of party producing the item. |
| FileExtension | Indicates file extension of source native file. |
| DateSent<br>(mm/dd/yyyy) | Date email or calendar item was sent. |
| LastModDate<br>(mm/dd/yyyy) | Date the item was last modified. |
| TimeSent<br>(hh:mmAM/PM) | Time email or calendar item was sent. |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received |
| ParentBates | First Bates number for the parent item of a family.<br>**Will not be populated for items that are not part of a family. |
| AttachBates | First Bates number of each "child" attachment.<br>**Can be more than one Bates number listed depending on the number of attachments. |
| To | The names and SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item. |
| From | The name and SMTP email address of the sender of the email or calendar item. |
| CC | The names and SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item. |

| Field Name | Field Description |
|---|---|
| BCC | The names and SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item. |
| DateCreated (mm/dd/yyyy) | Date the item was created. |
| TimeCreated (hh:mm AM/PM) | Time the item was created. |
| FileName | The filename of the source native file for an ESI item. |
| Subject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item). |
| TextPath | Full relative path to the current location of the document-level text file |
| Confidentiality | Indicates if item has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| AttachRange | Bates number of the first page of the parent item to the Bates number of the last page of the last attachment "child" item. |
| RecordType | To indicate "Paper," "Hard Copy," or "HC" if a hard copy document and "ESI" if it is an ESI item. |
| Application | Indicates software application that generated the ESI item (e.g., Outlook, Word). |
| Redacted | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Importance Ranking | Level of importance/sensitivity of messages or calendar items. |
| MessageID | The unique message identifier generated by the source email or calendar system. |
| PrevMessageID | The MessageID of the previous message in the email thread (the message that was replied to or forwarded). |
| Title | Any value populated in the Title field of the source file metadata or item properties. |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |
| ProdVolume | Identifies production media deliverable. |
| AttachCount | Number of attached files. |
| NativeFile | "Yes" for documents produced in native format; otherwise, blank. |
| ForeignLanguage | Identifies original language of native document. |