IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | | |
|---|---|---|
| IN RE VEHICLE CARRIER SERVICES ANTITRUST LITIGATION | : : : | Master Docket No.: 13-cv-3306 (MDL No. 2471) |
| *This document relates to all indirect purchaser actions (the End-Payors complaint, the Auto-Dealers complaint, and the Truck Centers complaint)* | : : : : : : : | |

---

**CONSOLIDATED BRIEF OF DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS
THE INDIRECT PURCHASERS' COMPLAINTS**

---

BALLARD SPAHR LLP
– AND –
HOGAN LOVELLS US LLP

*Attorneys for the
WWL/EUKOR defendants*

BAKER & HOSTETLER LLP

*Attorneys for the
NYK defendants*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*Attorneys for the
K-Line defendants*

WILMER, CUTLER, PICKERING, HALE & DORR LLP

*Attorneys for the
CSAV defendants*

COZEN O'CONNOR PC

*Attorneys for the
Höegh defendants*

ARNOLD & PORTER LLP

*Attorneys for the
MOL defendants*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................... v

I.   PRELIMINARY STATEMENT ...................................... 1

II.  STATEMENT OF RELEVANT FACTS .............................. 2

III. ARGUMENT ................................................. 6

    A.    THE IPPs LACK CONSTITUTIONAL STANDING TO ASSERT THEIR CLAIMS ..... 7

    B.    THE IPPs HAVE NOT SUFFERED ANTITRUST INJURY AND LACK ANTITRUST STANDING TO ASSERT CLAIMS FOR ALLEGED "INDIRECT" PURCHASES OF VEHICLE CARRIER SERVICES ................................. 11

        1.    The IPPs' federal antitrust claims must be dismissed because they have not suffered actual or threatened antitrust injury ................. 12

            (a)    The IPPs are not consumers in the allegedly restrained market ........................ 13

            (b)    The injuries claimed by IPPs are not the means by which defendants allegedly sought to achieve anticompetitive ends .......... 19

        2.    The IPPs' state antitrust claims must be dismissed because they have not suffered antitrust injury ............................. 21

        3.    The IPPs' alleged injuries are too remote to confer antitrust standing under federal or state law ........................................ 22

            (a)    The AGC factors apply under the laws of each state in which the IPPs otherwise have standing to seek damages ................. 24

                (1)    The AGC factors apply to IPPs' claims under Nebraska's and Iowa's antitrust statutes ........................... 25

(2) The AGC factors apply to IPPs' claims under California's, Illinois', New Mexico's and New York's antitrust statutes .......................... 27

(3) The AGC factors also apply to IPPs' claims under other states' laws ...... 28

(4) An application of the AGC factors requires dismissal of IPPs antitrust claims ............................. 30

(i) The IPPs fail to allege a causal connection and intent by defendants to cause that harm ... 31

(ii) The IPPs' claimed injury is not direct, there are others with a more direct relationship to the actions complained of, and the IPPs' allegations show their claims are speculative ......... 31

(iii) The IPPs' claims create a real risk of duplicative recovery and will make any apportionment of damages needlessly complex ...... 35

C. THE IPPs LACK STANDING TO ASSERT A SUBSTANTIAL NUMBER OF THEIR STATE LAW CLAIMS ............................. 37

1. The IPPs cannot bring claims under the laws of states where no named plaintiff either resides or was injured ................................. 37

2. Six Truck Center plaintiffs lack standing to assert any state antitrust law claims ......... 44

D. THE UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED .............. 45

1. The End-Payors' claim for unjust enrichment fails ........................................ 45

2. The Auto Dealers and the Truck Centers fail to state claims for relief for unjust enrichment .. 48

(a)   Eighteen jurisdictions require a direct benefit conferred by IPPs or a substantial relationship between IPPs and a defendant . 49

(b)   IPPs cannot successfully assert unjust enrichment in states that do not allow recovery of remote injuries .............. 50

(c)   Tennessee requires that IPPs exhaust other remedies before a claim of unjust enrichment will lie ................................. 51

(d)   California does not recognize unjust enrichment ............................. 51

(e)   The Illinois Brick rule bars unjust enrichment claims in seven states ........ 52

E.   THE IPPs' STATE LAW CLAIMS ARE PREEMPTED BY THE FEDERAL SHIPPING ACT AND THE EXCLUSIVE JURISDICTION OF THE FEDERAL MARITIME COMMISSION ............................................ 52

F.   THE IPPs FAIL TO STATE CLAIMS UNDER CERTAIN STATE ANTITRUST AND CONSUMER PROTECTION ACTS ................................. 61

1.   State regulatory antitrust exemptions bar the IPPs' claims under the antitrust acts of Iowa, Michigan, Minnesota, Nevada, and New Hampshire, and the unfair trade practices act of Massachusetts ................................. 61

2.   The consumer protection acts of Montana and South Carolina and the Illinois antitrust act bar class action lawsuits ............................. 63

3.   The IPPs' complaints fail to comply with the requirements of the Massachusetts Consumer Protection Act. ............................. 64

(a)   The IPPs' fail to allege pre-suit service of a written demand letter as required by the Massachusetts Consumer Protection Act. .... 64

(b)   The Auto Dealers' and the Truck Centers' Massachusetts Consumer Protection Act claims must be dismissed. ................. 65

4.  The Auto Dealers and the Truck Centers lack standing to sue under the Vermont consumer protection act ................................. 67

5.  Price fixing and other alleged antitrust violations cannot sustain claims under the consumer protection acts of Arkansas, Hawaii, New York, or Rhode Island ......................... 68

6.  The IPPs fail to state claims under the North Carolina consumer protection act because they fail to allege a substantial in-state injury ... 70

7.  The Shipping Act bars IPPs' injunctive and damages claims. ............................... 70

    (a)  The Shipping Act bars injunctive claims under the Sherman and Clayton Acts. ....... 71

    (b)  The IPPs' damages claims likewise are barred by the Shipping Act. ........... 71

8.  The Tennessee antitrust act only applies to goods, and not services ....................... 72

9.  The Oregon and South Carolina antitrust laws also do not permit End-Payors' claims. ......... 73

G.  THE IPPs' RESPECTIVE COMPLAINTS FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF ....................................... 73

IV.  CONCLUSION ........................................... 75

V.  SIGNATURE BLOCKS ...................................... 76

## TABLE OF AUTHORITTIES

**Page(s)**

**Cases**

Abbott Labs., Inc. v. Segura,
      907 S.W. 2d 503 (Tex. 1995) ........................ 45 n.40

Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,
      190 F.3d 1051 (9th Cir. 1999) ....................... 19-20

Anheuser-Busch, Inc. v. Abrams,
      520 N.E. 2d 535 (N.Y. 1988) ...................... Exh. "D"

Apache Corp. v. MDU Res. Group, Inc.,
      603 N.W.2d 891 (N.D. 1999) ............................. 47

Ark. Carpenters' Health & Welfare Fund v.
      Philip Morris Inc.,
      75 F. Supp. 2d 936 (E.D. Ark. 1999) ................. 50-51

Associated General Contractors of Ca., Inc. v.
      Ca. State Council of Carpenters,
      459 U.S. 519, 103 S. Ct. 897,
      74 L. Ed. 2d 723 (1983) ............... 15, 20, 23, 23 n.14,
                                                   36, Exh. "B"

Baird Tree Company, Inc. v. City of Oak Ridge,
      2008 WL 2510581 (Tenn. Ct. App. June 24, 2008) .......... 73

Barton & Pittinos, Inc. v. SmithKline Beecham Corp.,
      118 F.3d 178 (3d Cir. 1997) ..................... 13 n.8, 14

Beckler v. Visa U.S.A., Inc.,
      2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2004) ..... Exh. "B"

Beckler v. Visa U.S.A., Inc.,
      2004 WL 2475100 (N.D. Dist. Ct. Sept. 21, 2004) .... Exh. "G"

Ben's Auto Body v. Teitelbaum,
      2008 WL 5224420 (D. N.H. Dec. 15, 2008) .............. 61-62

Black v. Kirwan,
      703 P.2d 58 (Cal. 1985) ......................... Exh. "D"

Blue Cross Blue Shield of Virginia v. McCreedy,
    457 U.S. 465, 102 S. Ct. 2540,
    73 L. Ed. 2d 149 (1982) ................................. 20

Boulware v. State of Nev., Dep't of Human Res.,
    960 F.2d 793 (9th Cir. 1992) ...................... Exh. "B"

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
    429 U.S. 477, 97 S. Ct. 690,
    50 L. Ed. 2d 701 (1977) .......... 12-13, Exh. "A", Exh. "B"

Cargill, Inc. v. Monfort of Colo., Inc.,
    479 U.S. 104, 479 S. Ct. 484,
    93 L. Ed. 2d 427 (1986) ................... 12, 24, Exh. "B"

Ciardi v. F. Hoffmann-La Roche, Ltd.,
    762 N.E.2d 303 (Mass. 2002) .......................... 65, 66

City of Edinburgh Council v. Pfizer, Inc.,
    754 F.3d 159 (3rd Cir. 2014) ...................... 59 n.54

Coca-Cola Co. v. Harmar Bottling Co.,
    218 S.W.3d 671 (Tex. 2006) ...................... 42 n.38

Concord Boat Corp. v. Brunswick Corp.,
    207 F.3d 1039 (8th Cir.2000) ..................... Exh. "B"

Conley Publishing Group, Ltd. v.
    Journal Communications, Inc.,
    665 N.W. 2d 885 (Wis. 2003) ..................... Exh. "F"

Cont'l Ins. Co. v. Bahnan,
    216 F.3d 150 (1st Cir. 2000) .......................... 66

Cornelison v. Visa U.S.A., Inc.,
    No. CIV 03-1350 (S.D. Cir. Ct.2004) ...... Exh. "B", Exh. "G"

Cottrell v. Good Wheels,
    2008 U.S. Dist. LEXIS 88505 (D.N.J. Oct. 31, 2008) .... 7 n.4

County of Cook v. Philip Morris, Inc.,
    817 N.E.2d 1039 (Ill. App. Ct. 2004) .............. Exh. "C"

D.R. Ward Constr. Co. v. Rohm & Haas Co.,
    470 F. Supp. 2d 485 (E.D. Pa. 2006) .................... 51

Daniel v. Am. Bd. of Emergency Med.,
      428 F.3d 408 (2d Cir. 2005) ........................ 32 n.25

Danvers Motor Co., Inc. v. Ford Motor Co.,
      432 F.3d 286 (3d Cir. 2005) ............................. 8

Daraee v. Microsoft Corp.,
      2000 WL 33187306 (Or. Cir. Ct. June 27, 2000) ........... 73

Davric Maine Corp. v. Rancourt,
      216 F.3d 143 (1st Cir. 2000) ..................... Exh. "F"

Dema v. Tenet Physician Services-Hilton Head, Inc.,
      678 S.E. 2d 430 (S.C. 2009) ............................ 63

Drs. Steuer & Latham, P.A. v. Nat'l Med. Enters.,
      672 F. Supp. 1489 (D.S.C. 1987) .................. Exh. "F"

Entrialgo v. Twin City Dodge, Inc.,
      333 N.E.2d 202 (Mass. 1975) ............................ 65

Denius v. Dunlap,
      330 F.3d 919 (7th Cir.2003) ....................... 35 n.27

Ellis v. Gallatin Steel Co.,
      390 F.3d 461 (6th Cir. 2004) ........................... 75

Erie R.R. Co. v. Tompkins,
      304 U.S. 64, 58 S. Ct. 817,
      82 L. Ed. 1188 (1938) .............................. 21-22

Ethypharm S.A. France v. Abbott Labs.,
      707 F.3d 223 (3d Cir. 2013) ............ 13 n.8, 21, 22, 23,
                                                   23-24, 30, 31

Flagship Theatres of Palm Desert, LLC v.
      Century Theatres, Inc.,
      198 Cal. App. 4th 1366 (Cal. Ct. App. 2011) ........ Exh. "A"

Franklin Cnty. Sheriff's Office v.
      St. Albans City Police Dep't,
      58 A.3d 207 (Vt. 2012) ............................ Exh. "A"

Freeman v. Burlington Broadcasters, Inc.,
      204 F.3d 311 (2d Cir. 2001) ....................... 54 n.46

_Fucile v. Visa U.S.A., Inc._,
   2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004) ..... Exh. "G"

_Futurevision Cable Sys., Inc. v. Multivision Cable TV Corp._,
   789 F. Supp. 760 (D. Miss. 1992),
   _aff'd_, 986 F.2d 1418 (5th Cir. 1993) .............. Exh. "F"

_Gade v. Nat'l Solid Wastes Mgmt. Ass'n_,
   505 U.S. 88, 112 S. Ct. 2374,
   120 L. Ed. 2d 73 (1992) ................................ 53

_Gammon v. Federated Milk Producers Ass'n, Inc._,
   360 P.2d 1018 (Utah 1961) .......................... Exh. "A"

_Gares v. Willingboro Twp._,
   90 F.3d 720 (3d Cir. 1996). ........................... 24

_Ghem, Inc. v. Mapco Petroleum, Inc._,
   850 S.W.2d 447 (Tenn. 1993) ....................... Exh. "A"

_Global Reinsurance Corp.--U.S. Branch v. Equitas Ltd._,
   82 A.D.3d 26 (N.Y. App. Div. 2011), _rev'd_,
   969 N.E.2d 187 (N.Y. 2012) ........................ Exh. "A"

_Gregory Marketing Corp. v. Wakefern Food Corp_,
   787 F.2d 92 (3d Cir. 1986) ............................ 14

_Griffin v. Dugger_,
   823 F.2d 1475 (11th Cir. 1987) ....................... 39

_Gunnells v. Healthplan Servs., Inc._,
   348 F.3d 417 (4th Cir. 2003) .......................... 63

_Hawaii v. Standard Oil Co. of Cal._,
   405 U.S. 251, 92 S. Ct. 885,
   31 L. Ed. 2d 184 (1972) ............................... 75

_Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc._,
   148 P.3d 1179 (Hawaii 2006) ...................... Exh. "A"

_Hedges v. Dixon County_,
   150 U.S. 182, 14 S. Ct. 71,
   37 L. Ed. 1044 (1893) ................................. 47

_Ho v. VISA U.S.A., Inc._,
   793 N.Y.S.2d 8 (N.Y. App. Div. 2005) .............. Exh. "C"

Illinois Brick Co. v. Illinois,
    431 U.S. 720, 97 S. Ct. 2061,
    52 L. Ed. 707 (1977) ................................. 52

In re Aftermarket Filters Antitrust Litig.,
    2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ................. 69

In re Auto. Refinishing Paint Antitrust Litig.,
    515 F. Supp. 2d 544 (E.D. Pa. 2007) ..................... 69

In re Auto Parts Antitrust Litig.,
    2013 WL 2456612 (E.D. Mich. June 6, 2013) ............... 17

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997) ...................... 17 n.10

In re Cathode Ray Tube (CRT) Antitrust Litig.,
    2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ......... Exh. "H"

In re Cathode Ray Tube (CRT) Antitrust Litig.,
    2014 WL 1088256 (N.D. Cal. Mar. 13, 2014) ............ 66-67

In re DDAVP Indirect Purchaser Antitrust Litig.,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012) ..................... 52

In re Digital Music Antitrust Litig.,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............. 52, 64, 69

In re Ditropan XL,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) .............. 46 n.41

In re Ductile Iron Pipe Fittings("DIPF") Antitrust Litig.,
    2013 U.S. Dist. LEXIS 142466
    (D.N.J. Oct. 2, 2013) ........... 10 n.7, 17, 40, 41, 42, 46

In re Dynamic Random Access Memory (DRAM)
    Antitrust Litig.,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .............. 42 n.38,
                                        63, 69-70, Exh. "H"

In re Enron Corp.,
    327 B.R. 526 (Bankr. S.D.N.Y. 2005) .... 54 n.49, 54 n.51, 56

In re Flash Memory Antitrust Litig.,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................... 70

In re Flonase Antitrust Litig.,
     692 F. Supp. 2d 524 (E.D. Pa. 2010) ........... 41 n.38, 46,
                                                        46 n.41, 47

In re Graphics Processing Units Antitrust Litig.,
     527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......... 41 n.38, 68

In re HSBC Bank, USA, N.A., Debit Card Overdraft
     Fee Litig., 2014 WL 868827 (E.D.N.Y. Mar. 5, 2014) .. 41 n.38

In re Intel Corp. Microprocessor Antitrust Litig.,
     496 F. Supp. 2d 404 (D. Del. 2007) ...................... 24

In re K-Dur,
     2008 WL 2660780 (D.N.J. Feb. 28, 2008) .................. 47

In re Magnesium Oxide Antitrust Litig.,
     2011 WL 5008090 (D.N.J. Oct. 20, 2011) ............... 42-43

In re Magnesium Oxide Antitrust Litig.,
     2012 WL 1150123 (D.N.J. April 5, 2012) .................. 34

In re Microsoft Corp. Antitrust Litig.,
     401 F. Supp. 2d 461 (D. Md. 2005) ......... 52, 73, Exh. "F"

In re N.J. Title Ins. Litig.,
     683 F.3d 451 (3rd Cir. 2012) ........................... 73

In re New Motor Vehicles Canadian Export Antitrust Litig.,
     350 F. Supp. 2d 160 (D. Me. 2004) ...................... 65

In re Niaspan Antitrust Litig.,
     2014 WL 4403848 (E.D. Pa. Sept. 8, 2014) ....... 39, 45 n.40

In re Nifedipine Antitrust Litig.,
     335 F. Supp. 2d 6 (D.D.C. 2004) ........................ 74

In re OSB Antitrust Litig.,
     2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) ........... 42 n.38

In re Packaged Ice Antitrust Litig.,
     779 F. Supp. 2d 642 (E.D. Mich. 2011) .................. 41

In re Pharm. Indus. Average Wholesale Price Litig.,
     230 F.R.D. 61 ...................... 63 (D. Mass. 2005)

In re Polyurethane Foam Antitrust Litig.,
      799 F. Supp. 2d 777 (N.D. Ohio 2011) ..................... 69

In re Processed Egg Prods. Antitrust Litig.,
      2012 U.S. Dist. LEXIS 37265 (E.D. Pa. Mar. 20, 2012) 41 n.38

In re Refrigerant Compressors Antitrust Litig.,
      2012 WL 2917365 (E.D. Mich. July 17, 2012) ......... 41 n.38,
                                                   46 n.41, 70

In re Refrigerant Compressors Antitrust Litig.,
      2013 WL 1431756 (E.D. Mich. 2013) ................... 18, 20,
                                         Exh. "B", Exh. "H"

In re Relafen Antitrust Litig.,
      225 F.R.D. 14 (D. Mass. 2004) ........................... 47

In re Schering Plough Corp. Intron/Temodar
      Consumer Class Action,
      678 F.3d 235 (3rd Cir. 2012) ............................ 40

In re Static Random Access Memory (SRAM)
      Antitrust Litig.,
      580 F. Supp. 2d 896 (N.D. Cal. 2008) ............... 45 n.40,
                                             46 n.41, 63, 68

In re Terazosin Hydrochloride Antitrust Litig.,
      160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................... 48

In re TFT-LCD (Flat Panel) Antitrust Litig.,
      586 F. Supp. 2d 1109 (N.D. Cal. 2008) ....... 41 n.38,46 n.41

In Re TFT-LCD (Flat Panel) Antitrust Litig.,
      599 F. Supp. 2d 1179 (N.D. Cal. 2009) ................... 52

In re TFT-LCD (Flat Panel) Antitrust Litig.,
      787 F. Supp. 2d 1036 (N.D. Cal. 2011) ................... 68

In re Wellbutrin XL Antitrust Litig.,
      260 F.R.D. 143 (E.D. Pa. 2009) ......... 39, 42, 44, 46 n.41

In re Wiring Device Antitrust Litig.,
      498 F. Supp. 79 (E.D.N.Y. 1980),
      aff'd, 846 F.2d 70 (1st Cir. 1988) ................ Exh. "F"

J. Truett Payne Co. v. Chrysler Motors,
    451 U.S. 557, 101 S. Ct. 1923,
    68 L. Ed. 2d 442 (1981) ............................ Exh. "B"

J.V.B. Enterprises, Inc. v. City of Marshall,
    1990 WL 163106 (Minn. App. Oct. 30, 1990) ............... 62

Jauquet Lumber Co., Inc. v. Kolbe & Kolbe Millwork Co., Inc.,
    476 N.W.2d 305 (Wis. Ct. App. 1991) ............... Exh. "B"

Johnson v. Microsoft Corp.,
    834 N.E. 2d 791 (Ohio 2005) ...................... 45 n.40

Kanne v. VISA U.S.A Inc.,
    723 N.W.2d 293 (Neb. 2006) .................. 15 n.9, 25, 26,
                           27, Exh. "A", Exh. "D"

Klein v. General Nutrition Cos. Inc.,
    186 F.3d 338 (3rd Cir. 1999) ............................ 40

Knowles v. Visa U.S.A. Inc.,
    2004 WL 2475284 (Me. Super. Ct.
    Oct. 20, 2004) ........................... Exh. "B", Exh. "G"

Leggett v. Duke Energy Corp.,
    308 S.W. 3d 843 (Tenn. 2010) ........................... 56

Levine v. Blue Shield of Cal.,
    189 Cal. App. 4th 1117 (Cal. App. Ct. 2010) ............. 51

Lewis v. Casey,
    518 U.S. 343, 116 S. Ct. 2174,
    135 L. Ed. 2d 606 (1996) ............................... 40

Lorenzo v. Qualcomm Inc.,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) .................. 33

Lorix v. Crompton Corp.,
    736 N.W.2d 619 (Minn. 2007) .............. 30 n.24, Exh. "A"

Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .............. 18

Lozano v. City of Hazleton,
    724 F.3d 297 (3rd Cir. 2013) ............... 53-54, 54 n.45

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S. Ct. 555,
    119 L. Ed. 2d 351 (1992) ............................. 7, 39

Luscher v. Bayer,
    2005 WL 6959406 (Ariz. Super. Ct.
    Sept. 14, 2005) ................................... Exh. "G"

Luxama v. Ironbound Express, Inc.,
    2013 U.S. Dist. LEXIS 90879 (D.N.J. June 27, 2013) ... 10 n.7

Madison Cablevision, Inc. v. City of Morganton,
    386 S.E.2d 200 (N.C. 1989) ........................ Exh. "F"

Major v. Microsoft Corp.,
    60 P.3d 511 (Okla. Civ. App. 2002) ................. 45 n.40

Marfut v. City of North Port, FL,
    2009 WL 790111 (M.D. Fla. Mar. 25, 2009) ........... 59 n.54

Marin County Bd. of Realtors, Inc. v. Palsson,
    549 P.2d 833 (Cal. 1976) .......................... Exh. "D"

Marshall v. Miller,
    276 S.E.2d 397 (N.C. 1981) ........................ Exh. "F"

McCullough v. Zimmer, Inc.,
    328 Fed. Appx. 225 (3d Cir. 2010) ..................... 14

McGuire v. BMW of N.A., LLC,
    2014 WL 2566132 (D.N.J. June 6, 2014) ................. 43

Mercy Mem'l Hosp. v. Porter,
    1999 WL 33326821 (Mich. Ct. App. Dec. 21, 1999) .... Exh. "B"

Meyer v. Qualcomm, Inc.,
    2009 US Dist LEXIS 16533 (S.D. Cal. 2009) ............. 33

Mid-West Paper Prods. Co. v. Cont'l Group, Inc.,
    596 F.2d 573 (3d Cir. 1979) ........................... 75

Montgomery v. New Piper Aircraft, Inc.,
    209 F.R.D. 221 (S.D. Fla. 2002) ................... 42 n.38

Mutual Pharm. Co., Inc. v. Bartlett,
    ___ U.S. ___, 133 S. Ct. 2466,
    186 L. Ed. 2d 607 (2013) ............................. 53

Nass-Romero v. VISA U.S.A. Inc.,
    279 P.3d 772, (N.M. Ct. App. 2012) ............. 16 n.9, 32,
                                              37, Exh. "C"

Nat'l ATM Council, Inc. v. Visa Inc.,
    922 F. Supp. 2d 73 (D.D.C. 2013) ..................... 8 n.6

Nevada v. Reliant Energy, Inc.,
    289 P.3d 1186 (Nev. 2012) ................... 54 n.50, 55-56

New England Surfaces v. E.I. DuPont De Nemours and Co.,
    460 F. Supp. 2d 153, 162 (D. Maine),
    aff'd, 546 F.3d 1 (1st Cir. 2008) ....................... 67

New York v. Daicel Chem. Indus. Ltd.,
    42 A.D. 3d 301 (N.Y. App. Div. 2007) ................ 51, 69

New York SMSA Ltd. P'ship v. Town of Clarkestown,
    612 F.3d 97 (2nd Cir. 2010) ........................ 54 n.46

Norfolk S. Ry. Co. v. Basell USA Inc.,
    512 F.3d 86 (3d Cir. 2008) ............................. 25

O'Brien v. Leegin Creative Leather Products, Inc.,
    277 P.3d 1062 (Kan. 2012) ........................ Exh. "A"

O'Regan v. Arbitration Forums, Inc.,
    121 F.3d 1060 (7th Cir. 1997) .................... Exh. "H"

O'Shea v. Littleton,
    414 U.S. 488, 94 S. Ct. 669,
    38 L. Ed. 2d 674 (1974) ............................... 40

O'Toole v. Northrop Grumman Corp.,
    499 F.3d 1218 (10th Cir.2007) ..................... 35 n.27

Owens Corning v. R.J. Reynolds Tobacco Co.,
    868 So. 2d 331 (Miss. 2004) ...................... Exh. "A"

Oxbow Carbon and Minerals LLC v. Union Pacific R.R. Co.,
    926 F. Supp. 2d 36 (D.D.C. 2013) ..................... 8 n.6

Peterson v. Visa U.S.A., Inc.,
    2005 WL 1403761 (D.C. Super. Ct.
    Apr. 22, 2005) ................... Exh. "B", Exh. "G"

Popp v. Cash Station, Inc.,
    613 N.E.2d 1150 (Ill. App. Ct. 1992) .............. Exh. "A"

Princeton Ins. Agency, Inc. v. Erie Ins. Co.,
    690 S.E.2d 587 (W.V. 2009) ...................... Exh. "A"

Productive Inventions v. Trico Prods.,
    224 F.2d 678 (2d Cir. 1955) .................... Exh. "A"

Qwest Corp. v. Minnesota Public Utilities Comm'n,
    684 F.3d 721 (8th Cir. 2012) ...................... 54 n.46

Robert's Hawaii Sch. Bus, Inc. v.
    Laupahoehoe Transp. Co., Inc.,
    982 P.2d 853 (Hawaii 1999) ...................... Exh. "A"

Rodi v. S. New England Sch. Of Law,
    389 F.3d 5 (1st Cir. 2004) .......................... 65

Romero v. Philip Morris Inc.,
    109 P.3d 768 (N.M. App. 2005) .................... Exh. "B"

Rose v. Vulcan Materials Co.,
    194 S.E.2d 521 (N.C. 1973) ...................... Exh. "F"

Schuykill Energy Res., Inc. v. Pa. Power & Light Co.,
    113 F.3d 405 (3d Cir. 1997) .......................... 14

Seawinds Ltd. v. Nedlloyd Lines, B.V.,
    80 B.R. 181 (N.D. Cal. 1997), aff'd,
    846 F.2d 586 (9th Cir. 1998) ........................ 57

Sheet Metal Workers Local 441 Health & Welfare Plan v.
    GlaxoSmithKline, PLC,
    263 F.R.D. 205 (E.D. Pa. 2009) ...................... 47

Silvas v. E*Trade Mortgage Corp.,
    514 F.3d 1001 (9th Cir. 2008) .................... 54 n.48

Simon v. E. Ky. Welfare Rights Org.,
    426 U.S. 26, 96 S. Ct. 1917,
    48 L. Ed. 2d 450 (1976) .......................... 7 n.4

Southard v. VISA U.S.A. Inc.,
    734 N.W.2d 192 (Iowa 2007) ......... 14-15, 25, 51, Exh. "A"

Spence v. ESAB Group, Inc.,
    623 F.3d 212 (3d Cir. 2010) ........... 22, 24-25, 28, 29-30

Sprewell v. Golden State Warriors,
    266 F.3d 979 (9th Cir.), amended by,
    275 F.3d 1187 (9th Cir. 2001) ......................... 35

Stark v. Visa U.S.A. Inc.,
    2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ..... Exh. "G"

Steamfitters Local Union No. 420 Welfare Fund v.
    Philip Morris, Inc.,
    171 F.3d 912 (3d Cir. 1999) ........................... 21

State v. Alpine Air Prods.,
    490 N.W. 2d 888 (Minn. App. 1992),
    aff'd, 500 N.W. 2d 788 (Minn. 1993) .............. Exh. "F"

Stifflear v. Bristol-Myers Squibb Co.,
    931 P.2d 471 (Colo. Ct. App. 1996) ................ 45 n.40

Strang v. Visa U.S.A., Inc.,
    2005 WL 1403769 (Wis. Cir. Feb. 8, 2005) ....... 18, Exh. "G"

Teague v. Bayer AG,
    671 S.E. 2d 550 (N.C. Ct. App. 2009) .............. Exh. "B"

Tee Time Arrangers, Inc. v. Vistoso Gold Partners, LLC,
    2008 WL 4149295 (Ariz. Ct. App. Feb. 28, 2008) ..... Exh. "B"

TI Investment Services, LLC v. Microsoft Corp.,
    2014 WL 2436174 (D.N.J. May 30, 2014) .............. 17 n.11

Top Serv. Body Shop, Inc. v. Allstate Ins. Co.,
    582 P.2d 1365 (Or. 1978) .......................... Exh. "A"

Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.,
    998 F.2d 1073 (1st Cir. 1993) ..................... Exh. "F"

U.S. v. Alabama,
    691 F.3d 1269 (11th Cir. 2012) .................... 54 n.45

U.S. v. Commonwealth of Kentucky,
    252 F.3d 816 (6th Cir. 2001) ...................... 54 n.47

U.S. v. Locke,
     529 U.S. 89, 120 S. Ct. 1135,
     146 L. Ed. 2d 69 (2000) ................................. 55

U.S. v. Manning,
     527 F.3d 828 (9th Cir. 2008) ...................... 54 n.47

U.S. Airways, Inc. v. O'Donnell,
     627 F.3d 1318 (10th Cir. 2010) ................... 54 n.44

Ventress v. Japan Airlines,
     747 F.3d 716 (9th Cir. 2014) .................... 54 n.44

Vinci v. Waste Mgmt. Inc.,
     36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) ........ Exh. "C"

Walker v. U-Haul of Mississippi,
     734 F.2d 1068 (5th Cir. 1984) .................... Exh. "F"

Warth v. Seldin,
     422 U.S. 490, 95 S. Ct.2197,
     45 L. Ed. 2d 343 (1975) ............................. 7 n.4

W. Penn Allegheny Health Sys., Inc. v. UPMC,
     627 F.3d 85 (3d Cir. 2010) ...................... 13, 14, 19

Wrobel v. Avery Dennison Corp.,
     2006 WL 7130617 (Ks. Dist. Ct. Feb. 1 2006) ........ Exh. "G"

Xi Chen Lauren v. PNC Bank, N.A.,
     296 F.R.D. 389 (W.D. Pa. 2014) ................... 41 n.38

Zenith Radio Corp. v. Hazeltine Research, Inc.,
     395 U.S. 100, 89 S. Ct. 1562,
     23 L. Ed. 2d 129 (1969) ............................. 73-74

## Constitutions and Statutes

U.S. Const. art. III, § 2 ................................. 7

U.S. Const. art. VI, cl. 2 ............................... 53

Clayton Act
     § 16 of the Clayton Act, 15 U.S.C. § 26 ................. 11
     § 4 of the Clayton Act, 15 U.S.C. § 14 ................. 26

§ 5(a) of the Clayton Act, 15 U.S.C. § 15(a) ........ 26 n.15
§ 6 of the Clayton Act, 15 U.S.C. § 16 ................... 73

Shipping Act of 1984
46 U.S.C. §§ 40101, et seq. ............................... 57
46 U.S.C. § 40301 (a)(1) and (6) .................... 57-58
46 U.S.C. § 41102(b) ................................... 58
46 U.S.C. § 41107(a) ................................... 58
46 U.S.C. §41302(a) ...................... 58, 58-59
46 U.S.C. §41305 ................................... 60
46 U.S.C. §41307(d) ................................. 70

Ariz. Rev. Stat. § 44-1408(B) ................... Exh. "E"

Ariz. Rev. Stat. § 44-1412 ..................... Exh. "F"

Ark. Code Ann. § 4-88-101 et seq. ............................ 68

Cal. Bus. & Prof. Code § 16750(a) ................ Exh. "E"

D.C. Code § 28-4508 .......................... Exh. "E"

D.C. Code § 28-4510 .......................... Exh. "F"

Hawaii Rev. Stat. § 480-1 ....................... 68-69

Hawaii Rev. Stat. § 480-3 ............ 68-69, Exh. "D"

Hawaii Rev. Stat. § 480-13 ................... Exh. "E"

740 Ill. Comp. Stat. § 10/7(2) ......... 64, Exh. "E"

740 Ill. Comp. Stat. § 10/11 ................ Exh. "D"

Iowa Code § 553.2 ........................... Exh. "D"

Iowa Code § 553.6(4) ............................ 62

Kan. Stat. Ann. § 50-161(b) ................. Exh. "E"

Kan. Stat. Ann. § 50-163(b) ................. Exh. "D"

Me. ST T. 10 § 1104 ......................... Exh. "E"

Mass. Gen. Laws, ch. 93A § 3 ..................... 62

Mass. Gen. Laws ch. 93A, § 9 ..................... 66

Mass. Gen. Laws ch. 93A, § 9(3) ............................. 64, 65

Mass. Gen. Laws Ch. 93A, § 11 ................................. 66

Mich. Comp. Laws Ann. § 445.774(5) ........................... 62

Mich. Comp. Laws Ann. § 445.778 ......................... Exh. "E"

Mich. Comp. Laws Ann. § 445.784(2) ................. 71, Exh. "D"

Minn. Stat. Ann. § 325D.55 ................................... 62

Mont. Code Ann. § 30-14-133(1) ............................... 63

Neb. Rev. Stat. § 59-821 ...................... 26 n.15, Exh. "E"

Neb. Rev. Stat. § 59-829 ...................... 26, Exh. "D"

Nev. Rev. Stat. § 598A.040(3)(a) ............................. 62

Nev. Rev. Stat. Ann. § 598A.050 ......................... Exh. "D"

N.H. Rev. Stat. Ann. § 356:8-a ............................... 61

N.H. Rev. Stat. Ann. § 356:11 ........................... Exh. "E"

N.H. Rev. Stat. Ann. § 356:14 ........................... Exh. "F"

N.M. Stat. Ann. § 57-1-3(A) ............................. Exh. "E"

N.M. Stat. Ann. § 57-1-15 ............................... Exh. "D"

N.Y. Gen. Bus. Law § 340(6) ............................. Exh. "E"

N.Y. Gen. Bus. Law § 349 ..................................... 69

N.C. Gen. Stat. Ann. § 75-1.1 et seq. ........................ 70

N.C. Gen. Stat. Ann. § 75-16 ........................... Exh. "E"

Or. Rev. Stat. § 646.780 ............................... Exh. "E"

Or. Rev. Stat. § 647.715(2) ............................. Exh. "F"

R.I. Gen. Laws § 6-13.1-1 .................................... 69

- xix -

S.D. Code Ann. § 37-1-22 .................................. Exh. "F"

S.C. Code Ann. § 39-5-140 ................................. Exh. "E"

S.C. Code Ann. § 39-5-140(a) .................................. 63

S.D. Codified Laws § 37-1-33 ............................. Exh. "E"

Tenn. Code Ann. § 47-25-101 ............................... 72-73

Utah Code § 76-10-3109 ................................... Exh. "E"

Utah Code § 76-10-3118 ................................... Exh. "F"

9 Vt. Stat. Ann. § 2451(a) ................................... 67

9 Vt. Stat. Ann. § 2453a(c) .............................. Exh. "F"

9 Vt. Stat. Ann. § 2461(b) ................................... 67

9 Vt. Stat. Ann. § 2465(b) ............................... Exh. "E"

W. Va. Code Ann. § 47-18-9 ............................... Exh. "E"

W. Va. Code § 47-18-16 ................................... Exh. "D"

Wis. Stat. § 133.18(1)(a) ................................ Exh. "E"

## Other Authorities

Comment to Mich. Comp. Laws Ann. § 445.774 ................. 71-72

Fed. R. Evid. 201(b) ...................................... 34 n.27

Federal Maritime Comm'n Press Releases ............. 59, Exh. "L"

H.R. Rep. 98-53(I) ................................... 57, Exh. "K"

U.S. Department of Commerce, Bureau of Economic Analysis,
    Tables 1-4, available at http://www.bea.gov/
    national/xls/gap_hist.xls ........................... 34 n.27

I.    **PRELIMINARY STATEMENT**.

Defendants Nippon Yusen Kabushiki Kaisha and NYK Line
North America Inc. (the "NYK defendants"); Kawasaki Kisen
Kaisha, Ltd. and "K" Line America, Inc. (the "K-Line
defendants"); Wallenius Wilhelmsen Logistics AS, Wallenius
Wilhelmsen Logistics America LLC, and EUKOR Car Carriers, Inc.
(the "WWL/EUKOR defendants"); Compañía Sud Americana de Vapores,
S.A. and CSAV Agency, LLC (the "CSAV defendants"); Höegh
Autoliners AS and Höegh Autoliners, Inc. (the "Höegh
defendants"), and Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk
Shipping (U.S.A.), Inc. and World Logistics Service (U.S.A.)
Inc. (the "MOL defendants"), (collectively, "defendants") move
to dismiss (a) the End-Payors' second consolidated amended class
action complaint ("the End-Payors complaint"), (b) the Auto
Dealers' consolidated second amended class action complaint
("the Auto Dealers complaint"),[1] and (c) the Truck Centers' class
action complaint ("the Truck Centers complaint").[2]  For a number

---

[1]    On October 6, 2014, the Auto Dealers filed a consolidated
second amended class action complaint; it differs from its
earlier filed consolidated class action complaint in three
respects:  a sentence was added to ¶ 7, and two new paragraphs -
- ¶¶ 50 and 142 -- were added.  Those changes are not material;
this motion addresses all of the Auto Dealers' claims.

[2]    The Truck Centers complaint -- captioned Rich Truck Centers
of Arizona, Inc., et al. v. Nippon Yusen Kabushiki Kaisha, et
al. -- was filed on July 16, 2014; it has not been entered on
the docket and it has not been served on all defendants.  By a
letter dated September 10, 2014 (Dkt. Entry 187), the listed

of reasons -- all of which are set forth at length below --
defendants respectfully submit that the complaints filed by the
self-claimed indirect purchaser plaintiffs -- the End-Payors,
the Auto Dealers and the Truck Centers (collectively, "the
IPPs") -- should be dismissed.

II.   **STATEMENT OF RELEVANT FACTS**.

      Defendants are ocean shipping companies engaged in the
transportation of large numbers of cars, trucks, and other
vehicles, including agricultural and construction equipment,
across the ocean using Roll On/Roll Off ("RO/RO") or specialized
car carrier vessels.   [End-Payors Compl. ¶¶ 2, 59-72; Auto
Dealers Compl. ¶¶ 2, 44-57; Truck Center Compl. ¶¶3, 45-57].   As
alleged in the complaints, "vehicle carrier services" refer to
the paid ocean transportation of new, assembled motor vehicles

---

defendants alerted the Court that, "[i]n order to avoid any
procedural stragglers, and for the administrative convenience of
the Court and the parties, the [listed defendants] intend to
move to dismiss the [Truck Centers'] complaint at the same time
and in accordance with the same schedule set forth in case
management order no. 4 for the motions to dismiss the [End-
Payors complaint and the Auto Dealers complaint]."  For that
reason, this motion also addresses the Truck Center complaint on
behalf of all defendants save for Höegh Autoliners, Inc., which
is not named in the Truck Centers complaint, but does not
address the sufficiency of service of the Truck Centers
complaint in respect of some of defendants, an issue which is
reserved.

by RO/RO or specialized vehicle carrier vessels [End Payor Compl. ¶ 2; Auto Dealers Compl. ¶ 2; Truck Center Compl. ¶ 3].

Defendants sell vehicle carrier services to original equipment manufacturers ("OEMs"), mostly large automotive, construction and agricultural manufacturers -- such as Honda, Volkswagen, Mitsubishi, Toyota, Nissan, and Subaru -- which purchase vehicle carrier services from defendants to transport vehicles manufactured by the OEMs outside of the United States to purchasers in the United States. [End-Payors Compl. ¶ 82; Auto Dealers Compl. ¶¶ 21, 23, 27, 33, 37, 39, 41; Truck Center Compl. ¶¶ 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43]. Thus, the OEMs are the direct purchasers of the vehicle carrier services furnished by defendants. [Ibid.].[3]

The Auto Dealers and the Truck Centers are automobile dealers and truck dealers, respectively, in the United States that allege they purchased automobiles or trucks from the OEMs that were transported to the United States in defendants' RO/RO or specialized vehicle carrier vessels. [Auto Dealers Compl. ¶¶ 21-43; Truck Center Compl. ¶¶ 21-44]. The End-Payors are individuals who allege they purchased or leased automobiles from

---

[3]   Contemporaneous with this application, defendants have moved to dismiss the separate complaint by the freight forwarders/direct plaintiffs asserting, among other things, that they were not, and never have been, direct purchasers of vehicle carrier services.

Auto Dealers in the United States.   [End-Payors Compl. ¶¶ 20-58].   Each of the IPPs alleges that they are "indirect purchasers" of vehicle carrier services because, purportedly, the cost paid by the OEMs for vehicle carrier services was passed on to them as part of the purchase or lease price they paid for the automobiles or trucks.   [End-Payors Compl. ¶¶ 10, 182-183; Auto Dealers Compl. ¶¶ 10, 172-176; Truck Center Compl. ¶¶ 10, 157-162].   The IPPs admit that they had no direct contact or interaction with defendants.   [End-Payors Compl. ¶ 191; Auto Dealers Compl. ¶ 185; Truck Center Compl. ¶ 170].

The IPPs allege that defendants entered into the following collusive agreements, overseas, to fix and increase the prices paid by the OEMs to defendants for vehicle carrier services in RO/RO or specialized vehicle carrier vessels:

(i)     coordination of price increases to the OEMs [End-Payors Compl. ¶¶ 125-130; Auto Dealers Compl. ¶¶ 113-118; Truck Center Compl. ¶ 108-118];

(ii)    coordination of responses to price reduction requests made by the OEMs [End-Payors Compl. ¶¶ 131-135; Auto Dealers Compl. ¶¶ 119-123; Truck Center Compl. ¶¶ 119-123];

(iii)   allocation of OEM customers and routes [End-Payor Compl.¶¶ 131-145; Auto Dealer Compl. ¶¶ 124-132; Truck Center Compl. ¶ 124-132]; and

(iv)    agreements to restrict capacity by means of agreed upon fleet reductions.   [End-Payors Compl. ¶¶ 146-148; Auto Dealers Compl. ¶¶ 133-140; Truck Center Compl. ¶¶ 133-135].

- 4 -

They allege that those anticompetitive agreements inflated the prices paid by the OEMs to defendants for RO/RO or specialized vehicle carrier vessel transportation [End-Payors Compl. ¶¶ 179-180; Auto Dealers Compl. ¶¶ 172-177; Truck Center Compl. ¶¶ 157-162]; that the OEMs passed on those overcharges to the Auto Dealers and Truck Centers as part of the purchase price of the vehicles [Auto Dealers Compl. ¶¶ 172, 176; Truck Center Compl. ¶¶ 157, 162]; and that the Auto Dealers in turn passed on some or all of the overcharges to the End-Payors in the sale or lease of the automobiles to the End-Payors. [End-Payors Compl. ¶¶ 182-187].

The End-Payors complaint, the Auto Dealers complaint and the Truck Centers complaint are identical in substance, and each contains the following four counts:

- <u>Count One</u> -- alleged violation of § 1 of the Sherman Act, 15 <u>U.S.C.</u> § 1, for entering into and engaging in a contract, combination, or conspiracy in unreasonable restraint of trade;
- <u>Count Two</u> -- alleged violations of certain state antitrust statutes, for engaging in a contract, combination or conspiracy in unreasonable restraint of trade;
- <u>Count Three</u> -- alleged violations of certain state consumer protection statutes, for engaging in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices; and,
- <u>Count Four</u> -- alleged unjust enrichment.

After this matter was consolidated by the Judicial Panel on Multi-District Litigation and transferred to this Court [Dkt. Entry 21], the Court issued its case management order no.

1 [Dkt. Entry 48], setting a case management conference for January 31, 2014.  Thereafter, the Court issued its case management orders no. 2 [Dkt. Entry 95], no. 3 [Dkt. Entry 107], and no. 4 [Dkt. Entry 156].  That latter order requires, in relevant part, that "on or before October 13, 2014, Defendants shall serve but not file any motions to dismiss Plaintiffs' Consolidated, Amended Class Action Complaints[.]"  [Ibid.]

This consolidated motion to dismiss followed.


## III. ARGUMENT.

Defendants respectfully submit that the IPPs' complaints must be dismissed for each of the following principal reasons:

- The IPPs lack constitutional standing to assert their claims;
- The IPPs have not suffered antitrust injury and lack antitrust standing to assert claims for alleged "indirect" purchases of vehicle carrier services;
- The IPPs lack standing to assert a substantial number of their state law claims;
- The unjust enrichment claims must be dismissed;
- The IPPs' state law claims are preempted by the federal Shipping Act of 1984 and the exclusive jurisdiction of the Federal Maritime Commission;
- The IPPs' fail to state claims under certain state antitrust and consumer protection acts; and,
- The IPPs' respective complaints fail to state a claim for injunctive relief.

A.   **THE IPPs LACK CONSTITUTIONAL STANDING TO ASSERT THEIR CLAIMS.**

The IPPs lack constitutional standing for a basic reason: they have not pled sufficiently particularized facts to support the existence of a concrete injury.

As a corollary of the "cases and controversies" constitutional requirement, a plaintiff is required to demonstrate standing by sufficiently pleading, among other things, an injury in fact, that is, an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 555, 2136, 119 L. Ed. 2d 351, ___ (1992). The injury in fact requirement applies equally to the named plaintiffs in putative class actions.[4] A plaintiff -- as the party seeking to invoke the jurisdiction of the court -- always bears the burden of establishing standing.[5]

---

[4]   "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20, 96 S. Ct. 1917, 1926 n.20, 48 L. Ed. 2d 450 (1976) (quoting Warth v. Seldin, 422 U.S. 490, 511, 95 S. Ct.2197, 2212, 45 L. Ed. 2d 343 (1975)).

[5]   See, e.g., Cottrell v. Good Wheels, 2008 U.S. Dist. LEXIS 88505, at *2 (D.N.J. Oct. 31, 2008).

None of the IPPs meets that burden.  Although they each allege a conspiracy involving defendants and others, they do not specify from what entity they purchased or leased vehicles, how that purchase is linked to defendants' sale of vehicle carrier services, or the form their harm took.  These shortcomings are fatal to the complaints.  Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 292 (3d Cir. 2005) (holding that "[t]o state an injury-in-fact sufficient to survive a motion to dismiss," plaintiffs must "plead that they suffered some concrete form of harm because of the [defendants' conduct]").  A closer examination of each of the complaints filed by the End-Payors, the Auto Dealers and the Truck Centers makes the point clearly.

**End-Payors.**  The End-Payors complaint fails to plead the most fundamental facts about the End-Payors' alleged injury.  The End-Payors' complaint alleges only that each of them "purchased Vehicle Carrier Services indirectly from one or more Defendants."  [End-Payors Compl. ¶¶ 20-58.]  The complaint offers no information whatsoever about the dates of any these transactions, the locations of the transactions, the makes and models of the automobiles involved, which defendants may have provided the associated vehicle carrier services, or any other fact supporting the otherwise naked allegation that the End-Payors purchased imported cars in the first place.  Nor does the

- 8 -

End-Payors complaint specify the prices actually paid or the prices they allege they would have paid absent the alleged conspiracy.  These are key facts that are crucial to establishing that their claimed injury was concrete and particularized.[6]  See also id. ¶ 91 (alleging that End-Payors "purchased Vehicle Carrier Services indirectly from one or more of the Defendants by virtue of their purchase or lease of a new, assembled motor vehicle during the Class Period" but similarly providing no additional detail about who, what, when, or where).

These problems are not cured by the untethered conclusion, asserted at several points in their complaint, that the End-Payors paid "supra-competitive" or "artificially inflated" prices for vehicle carrier services.  Id. at ¶¶ 10, 174.  Those bald assertions are insufficient to meet the

---

[6]    See Nat'l ATM Council, Inc. v. Visa Inc., 922 F. Supp. 2d 73, 89 (D.D.C. 2013) (dismissing complaint for failure to plead injury-in-fact where "none of the complaints does anything more than make the 'but for' claim . . . [t]hey do not explain what the ATM operators' costs might be or how they are tied to the pricing of the fees"); see also Oxbow Carbon and Minerals LLC v. Union Pacific R.R. Co., 926 F. Supp. 2d 36, 43 (D.D.C. 2013) ("[E]ach plaintiff must demonstrate that it has suffered injury in order to establish standing.  By omitting basic facts about each entity's business operations and conduct, plaintiffs have failed to meet the threshold requirement of Rule 8(a)(2) that the plain statement possess enough heft to show that the pleader is entitled to relief." (internal quotation and editing marks omitted)).

requirements that courts in this District consistently have imposed on antitrust plaintiffs in analogous circumstances.[7]

**Auto Dealers and Truck Centers**.  The remaining two complaints -- the Auto Dealers complaint and the Truck Centers complaint -- fare no better.  Both introduce their purported class representatives as dealers of automobiles or trucks and equipment who "purchased Vehicles shipped by one or more of the Defendants or their co-conspirators."  Auto Dealers Compl. ¶¶ 22, 24, 26; Truck Centers Compl. ¶¶ 22, 24, 26.  Once again, both complaints (a) fail to allege which of defendants may have been involved in providing the associated vehicle carrier services, and (b) fail to specify either the price actually paid or the price the Auto Dealers and the Truck Centers assert should have been paid absent the conspiracy.  Bare allegations about "artificially inflated prices," _e.g._, Auto Dealers Compl.

_____

[7]     See, e.g., In re Ductile Iron Pipe Fittings ("DIPF")
Antitrust Litig., 2013 U.S. Dist. LEXIS 142466, at *63 (D.N.J.
Oct. 2, 2013) (holding that assertion that plaintiffs,
generally, paid supra-competitive prices during the class period
did not constitute sufficient statement of injury-in-fact to
establish standing of an individual plaintiff, where individual
plaintiff asserted only that it had purchased a price-fixed
product manufactured by "one or more" defendants); Luxama v.
Ironbound Express, Inc., 2013 U.S. Dist. LEXIS 90879, at *29
(D.N.J. June 27, 2013) (Salas, J.) (holding that assertion that
defendants caused economic harm to plaintiffs by weakening their
bargaining power, without factual details about how the harm
occurred, did not establish injury for purposes of Article III
standing).

¶ 10; Truck Centers Compl. ¶ 10, are insufficient to rescue these complaints.

Having failed to plead particularized facts supporting the existence of a concrete injury, neither the End-Payors, nor the Auto Dealers, nor the Truck Centers have standing to pursue these purported class actions. The complaints should be dismissed.

**B.   THE IPPs HAVE NOT SUFFERED ANTITRUST INJURY AND LACK ANTITRUST STANDING TO ASSERT CLAIMS FOR ALLEGED "INDIRECT" PURCHASES OF VEHICLE CARRIER SERVICES.**

The IPPs claim to have purchased vehicle carrier services "indirectly" by purchasing cars or trucks. That is not enough as a matter of law. Indeed, the IPPs never purchased vehicle carrier services at all, and therefore have no basis to bring antitrust claims based on the purchase of those services by others. In short, the IPPs cannot assert such claims under federal or state antitrust law because (1) they did not suffer antitrust injury, and (2) their claims are too remote to confer antitrust standing.

In their respective complaints, the IPPs seek (a) injunctive relief for alleged violations of the Sherman Act under Section 16 of the Clayton Act, 15 U.S.C. § 26, and (b) damages under a litany of state antitrust statutes. Neither set of claims is viable.

- 11 -

There are two core limitations on the scope of antitrust liability and, thus, the availability of injunctive relief under § 16.  To maintain an antitrust action, all plaintiffs must establish that they:  (1) have suffered actual or threatened antitrust injury; and (2) are the proper plaintiffs to maintain an action with respect to the relevant market, or, in other words, possess antitrust standing.  See Cargill, Inc. v. Monfort of Colo., Inc., 479 U.S. 104, 110-11, 479 S. Ct. 484, 489, 93 L. Ed. 2d 427 (1986) (requiring that party seeking injunctive relief under § 16 show antitrust injury and antitrust standing).

These same two limitations -- antitrust injury and antitrust standing -- have been recognized by scores of state and federal courts applying state law, and restrict the scope of antitrust liability under most, if not all, state antitrust statutes.  In other words, if the IPPs lack either antitrust injury, or antitrust standing -- and they lack both -- then their complaints must be dismissed.

     **1.**    **The IPPs' federal antitrust claims must be dismissed because they have not suffered actual or threatened antitrust injury.**

To demonstrate antitrust injury at the pleading stage, a plaintiff must allege actual or threatened "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v.

Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S. Ct. 690, 697, 50 L. Ed. 2d 701 (1977).[8]   In this Circuit, only those who are "consumers and competitors in the restrained market and . . . those whose injuries are the means by which the defendants seek to achieve their anticompetitive ends" can demonstrate antitrust injury.   W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 102 (3d Cir. 2010).   The IPPs are neither competitors nor consumers -- not even indirect ones -- in the allegedly restrained market, and their claimed injuries are not the means by which defendants allegedly sought to achieve anticompetitive ends.

### (a)   The IPPs are not consumers in the allegedly restrained market.

The market allegedly restrained in this case is the market for vehicle carriers services, which the IPPs variously define as "the paid ocean transportation of Vehicles by RoRo[.]"   See, e.g., Auto Dealers Compl. ¶ 2.   The IPPs admit that they did not purchase ocean transportation:   they purchased cars and trucks.   Id. at ¶¶ 3, 21-42, 160-61; Truck Centers Compl. ¶¶ 2,

---

[8]   Antitrust injury is "'a necessary but insufficient condition'" to maintain an antitrust lawsuit under federal law. Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 233 (3d Cir. 2013) (quoting Barton & Pittinos, Inc. v. SmithKline Beecham Corp., 118 F.3d 178, 182 (3d Cir. 1997).   Antitrust injury is one element of the larger antitrust standing test; but where, as here, a plaintiff cannot demonstrate antitrust injury, the Court "need not [and should not] address the remaining [antitrust standing] factors."   Ibid.

21-44, 147-48; End-Payors Compl. ¶ 3.  Accordingly, they are neither customers nor competitors in the allegedly restrained market.

The IPPs' allegations that charges for services purchased by others were passed on to them do not make them market participants or indicate that they suffered antitrust injury.  Courts regularly hold that plaintiffs who claim injury but did not purchase the product or service as to which the antitrust laws were allegedly violated have not suffered antitrust injury.  See, e.g., W. Penn Allegheny Health Sys., Inc., supra, 627 F.3d at 102 (no antitrust injury to suppliers); McCullough v. Zimmer, Inc., 328 Fed. Appx. 225, 229 (3d Cir. 2010) (no antitrust injury to commission-based sales representative); Schuykill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 415 (3d Cir. 1997) (no antitrust injury to exclusive supplier); Barton & Pittinos, supra, 118 F.3d at 184 (no antitrust injury to advertiser or broker); Gregory Marketing Corp. v. Wakefern Food Corp, 787 F.2d 92, 96-98 (3d Cir. 1986) (no antitrust injury to broker).

Courts also have rejected similar attempts to bring antitrust claims based on allegations of non-market participants paying inflated charges.  For example, in Southard v. VISA U.S.A. Inc., 734 N.W.2d 192 (Iowa 2007), the plaintiffs allegedly paid higher prices for goods that incorporated

inflated fees passed on by merchants who themselves purportedly were overcharged for processing debit transactions over the defendants' Visa and MasterCard networks.  The Supreme Court of Iowa rejected those claims, pointing out that the plaintiffs "did not purchase, directly or indirectly, the product that [was] the subject of the anticompetitive activity by Visa and MasterCard-debt processing services." Id. at 196-97.  The court characterized the plaintiffs as "nonpurchasers" because "they simply bought merchandise from businesses that used the defendants' debt processing services." Id. at 197 (citation omitted).  It held that "the plaintiffs are neither consumers of the defendants' products nor competitors of the defendants" and, "[t]herefore, the plaintiffs are not 'participants in the relevant market,' and their injuries are not of the type to be compensated by antitrust laws." Id. at 199 (quoting Associated General Contractors of Ca., Inc. v. Ca. State Council of Carpenters, 459 U.S. 519, 538, 103 S. Ct. 897, 908, 74 L. Ed. 2d 723 (1983) ("AGC")).  "Clearly," it concluded, "the injuries alleged by the plaintiffs are not even indirect, as the plaintiffs are not in the chain of distribution." Ibid.[9]  So too here.

---

[9]    See also Kanne v. VISA U.S.A Inc., 723 N.W.2d 293, 289, 301 (Neb. 2006) (noting that "appellants did not purchase the debit card services, either directly or indirectly; rather, they claim to have paid higher prices for goods resulting from the

The IPPs allege instead -- and accurately -- that the OEMs purchased vehicle carrier services directly from defendants (Auto Dealers Compl. ¶¶ 9, 67, 76; Truck Centers Compl. ¶¶ 8, 67, 75; End-Payors Compl. ¶¶ 9, 82, 90). They each go on to claim that they supposedly paid for the ocean transportation sold by defendants to the automobile OEMs when purchasing or leasing cars. Auto Dealers Compl. ¶ 10; Truck Centers Compl. ¶ 10, 67; End-Payors Compl. ¶ 10. Based on that fiction, IPPs conclude that they too purchased vehicle carrier services from defendants, albeit "indirectly," because the price of the cars that they did buy or lease supposedly included the price of the ocean transportation paid for by the automobile OEMs. Auto Dealers Compl. ¶¶ 3, 21-42, 162, 163, 167, 172, 173; Truck

---

merchants' purchase of Visa's and MasterCard's debit card services" and holding that "appellants are not competitors in the allegedly affected market, which is the business of providing debit network processing services to merchants[] [n]or are appellants consumers of those services"); Nass-Romero v. VISA U.S.A. Inc., 279 P.3d 772, 778, 789 (N.M. Ct. App. 2012) (rejecting plaintiff's "claim that she is an indirect purchaser in the distribution scheme at hand" and stating that "her claim is distinct from and derivative of a distribution network for debit card services that involves Defendants, their member banks, and merchants"; "Plaintiff is neither a consumer nor competitor in the market allegedly being restrained by Defendants and does not appear in that chain of distribution; thus, she cannot be identified as a consumer of the services provided by Visa and MasterCard. Plaintiff, instead, is a consumer of goods sold by merchants who happen to be part of the affected market").

Centers Compl. ¶¶ 2, 67, 152, 188; End-Payors Compl. ¶¶ 3, 20-58, 91, 169, 170, 174, 179, 180.[10]

But, like the plaintiffs in the Visa/MasterCard cases whose claimed injury flowed from the purchase of goods at allegedly inflated prices and not from the purchase of the services subject to the anticompetitive restraint, the IPPs' claimed injury -- allegedly higher vehicle prices -- does not flow from the purchase of ocean transportation services subject to the alleged anticompetitive restraint.

In an effort to avoid this inevitable conclusion, the IPPs parrot allegations from cases involving purchases of a "finished product[] that incorporate[d] parts subject to an anticompetitive scheme." DIPF Antitrust Litig., supra, 2013 WL 5503308, at *17 (collecting cases, including In re Auto Parts Antitrust Litig., 2013 WL 2456612, at *15-16 (E.D. Mich. June 6, 2013)).[11] But -- unlike true component parts -- vehicle carrier

_____

[10]   The Auto Dealers' naked allegation that they were billed "in full" for vehicle carrier services, Auto Dealers Compl. ¶ 68, is nothing more than a slight variation of their general assertions that the costs of vehicle carrier services were supposedly passed on to them.  It does not convert the Auto Dealers into "purchasers" of vehicle carrier services.

[11]   The IPPs' allegations that vehicle carrier services "are identifiable, discrete services that remain essentially unchanged when incorporated into the cost" of automobiles and "follow a traceable chain" that "can be traced through the chain of [] distribution," Auto Dealers Compl. ¶ 175, are nothing more than "bald assertions" and "legal conclusions" that the "court need not credit." TI Investment Services, LLC v. Microsoft Corp., 2014 WL 2436174, at *3 (D.N.J. May 30, 2014) (quoting In

- 17 -

services that already have been sold and consumed by others are not discrete component parts that can be sold, incorporated into another product, and resold again as part of that product. Under the IPPs' "purchasing" theory, a buyer of a car also could claim to be an indirect purchaser of the electricity used to power the automotive plants for no other reason than that the OEM paid for the electricity and some element of that cost was incorporated into the ultimate price of a car. That reasoning is far too extreme; the IPPs can point to no case authority suggesting that the antitrust injury requirement should be construed so broadly. See In re Refrigerant Compressors Antitrust Litig., 2013 WL 1431756 at *10 (E.D. Mich. 2013) (rejecting notion that state antitrust laws could be construed to "grant standing to the purchaser of a used bicycle asserting that the purchase price of the twice-sold bicycle was inflated due to a price fixing conspiracy of a rubber manufacturer whose product was used to manufacture the tires of the bike") (quoting Strang v. Visa U.S.A., Inc., 2005 WL 1403769 at *3 (Wis. Cir. Feb. 8, 2005) (internal quotation marks omitted)) ; Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co., 2014 WL 4774611 at * 8 & n. 9 (N.D. Cal. Sept. 22, 2014) (rejecting, as "implausible" and "conclusory," plaintiffs' allegations that

re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

they "will be able to physically trace [chemical ingredient] manufactured by Defendants through the distribution chain" given "the manner in which [that chemical ingredient] is incorporated into finished consumer products[,]" and dismissing claims based on that theory).

Not a single OEM contracted for ocean transportation on behalf of any unknown plaintiff like the ones suing here. By the time the IPPs purchased or leased their vehicles, defendants already had provided the "ocean transportation" associated with those vehicles. Unlike component parts that are reused and resold to downstream purchasers in another form, the vehicle carrier services at issue here were consumed and completed once the vehicles were transported, and those services were never resold. The IPPs have not alleged -- because they cannot -- that they ever purchased ocean transportation, directly, indirectly or otherwise, from any defendant. That alone is enough to dismiss IPPs' claims.

      **(b)**   **The injuries claimed by the IPPs are not the means by which defendants allegedly sought to achieve anticompetitive ends.**

A narrow exception to the rule that antitrust injury is limited to market participants arises when a plaintiff's injury is "the means by which the defendants seek to achieve their anticompetitive ends." W. Penn Allegheny Health Sys., Inc., supra, 627 F.3d at 102; see also Am. Ad Mgmt., Inc. v.

- 19 -

Gen. Tel. Co. of Cal., 190 F.3d 1051, 1057, n.5 (9th Cir. 1999)
(stating that exception to market participant requirement is
"narrow").  Courts have described this exception as one in which
the plaintiffs' injury is "inextricably intertwined with the
injury the conspirators sought to inflict" in the restrained
market.  AGC, supra, 459 U.S. at 538, 103 S. Ct. at 909, 74 L.
Ed. 2d at ___.  A plaintiff comes within this limited exception
only if the defendant harmed the plaintiff as a means to achieve
anticompetitive ends in another market.  Compare, Blue Cross
Blue Shield of Virginia v. McCreedy, 457 U.S. 465, 479, 102 S.
Ct. 2540, 2548, 73 L. Ed. 2d 149 (1982) (holding that Blue Cross
subscriber could maintain antitrust action because "[d]enying
reimbursement to subscribers for the cost of treatment was the
very means by which it is alleged Blue Shield sought to achieve
its illegal ends"), with, In re Refrigerant Compressors
Antitrust Litig., supra, 2013 WL 1431756 at *12 (dismissing all
antitrust claims save for those under laws of two specific
states, holding that plaintiffs' "injury is at best, a result of
-- rather than a means to or cause of -- the injury sustained by
the participants in the . . . market" (citation and internal
quotation marks omitted)).

     The IPPs make no such allegations here.  Instead, they
allege that the market in which they purchased vehicles is
inextricably intertwined with the market for vehicle carrier

services.   Dealer Compl. ¶ 172; End-Payors Compl. ¶ 181; Truck
Center Compl. ¶ 160.   Under controlling law, this is
insufficient to plead antitrust injury.   See Ethypharm S.A.
France, supra, 707 F.3d at 237 n.21 (holding that plaintiffs'
injury must be "the essential means by which defendants' illegal
conduct brings about its ultimate injury to the marketplace");
Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris,
Inc., 171 F.3d 912, 930, 926 n.8 (3d Cir. 1999) (holding that
"simple invocation" of phrase "inextricably intertwined" will
"not allow a plaintiff to avoid the fundamental requirement for
antitrust standing that he or she have suffered an injury of the
type -- almost exclusively suffered by consumers or competitors
-- that the antitrust laws were intended to prevent").

Because the IPPs are neither consumers nor competitors
in the allegedly restrained market and their claimed injury is
not "inextricably intertwined" with injuries to market
participants, they have not suffered antitrust injury.   Their
Sherman Act claim must be dismissed.

**2.    The IPPs' state antitrust claims must be
dismissed because they have not suffered
antitrust injury.**

The IPPs' failure to satisfy the antitrust injury
requirement also is fatal to their state antitrust claims.
Because the Court is required to apply the substantive law of
the state whose law governs, Erie R.R. Co. v. Tompkins, 304 U.S.

64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938), the Court must apply the state supreme court precedent from each state that recognizes the antitrust injury requirement and, for the reasons earlier discussed, also dismiss each of those state antitrust claims.  Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010) ("When ascertaining [state] law, the decisions of the [state's] Supreme Court are the authoritative source." (citation omitted)).[12]

And, because "decisions of state intermediate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue" are instructive (id.), the Court should follow those decisions and dismiss each of those state antitrust claims too.[13]

3.    **The IPPs' alleged injuries are too remote to confer antitrust standing under federal or state law.**

The IPPs' federal and state antitrust claims also fail for a lack of "antitrust standing."  In Ethypharm S.A. France, supra, the U.S. Court of Appeals for the Third Circuit explained

---

[12]    For ease of reference, a chart setting forth the 14 state supreme courts that recognize the requirement of antitrust injury to plead an antitrust claim is attached hereto as **Exhibit "A"** and is made a part hereof by reference.

[13]    Again, for ease of reference, a chart setting forth the 11 state lower courts (or other authorities) that recognize the requirement of antitrust injury to plead an antitrust claim is attached hereto as **Exhibit "B"** and is made a part hereof by reference.

that "[f]or plaintiffs suing under federal antitrust laws, one
of the prudential limitations is the requirement of 'antitrust
standing.'" 707 F.3d at 232 (citation omitted). A lack of
antitrust standing "prevents a plaintiff from recovering under
the antitrust laws" where, as here, the claimed injuries are too
remote from the alleged violation to justify recovery.[14] Ibid.
(citation omitted). AGC, supra, articulated several factors to
be considered when deciding whether a plaintiff has antitrust
standing under the Clayton Act. 459 U.S. at 535-38, 103 S. Ct.
at 907-08, 74 L. Ed. 2d at ___. In Ethypharm S.A. France, the
Court of Appeals "organized those factors (the 'AGC factors')
into the following multifactor test:

> (1) the causal connection between the
> antitrust violation and the harm to the
> plaintiff and the intent by the defendant to
> cause that harm, with neither factor alone
> conferring standing; (2) whether the
> plaintiff's alleged injury is of the type
> for which the antitrust laws were intended
> to provide redress; (3) the directness of
> the injury, which addresses the concerns
> that liberal application of standing
> principles might produce speculative claims;
> (4) the existence of more direct victims of

---

[14]   Antitrust standing is distinct from constitutional
standing: "A plaintiff who satisfies the constitutional
requirement of injury in fact is not necessarily a proper party
to bring a private antitrust action." AGC, supra, 459 U.S. at
535 n.31, 103 S. Ct. at 907 n.31, 74 L. Ed. 2d at ___ n.31; see
also Ross v. Bank of America, N.A., 524 F.3d 217, 224-45 (2d
Cir. 2008) ("Antitrust standing demands a much more detailed
and focused inquiry into a plaintiff's antitrust claims than
constitutional standing.").

the alleged antitrust violation; and (5) the potential for duplicative recovery or complex apportionment of damages.

[Ethypharm S.A. France, supra, 707 F.3d at 232-33 (citation omitted).]

Federal law does not allow claims where a plaintiff alleges harm that is too remote to confer prudential standing. See Cargill, supra, 479 U.S. at 111 n.6, 107 S. Ct. at 490 n.6, 93 L. Ed. 2d at ___ n.6.  And, even though a particular state may permit indirect purchasers claims like the ones alleged here, the AGC factors still apply to the IPPs' state antitrust claims.  See, e.g., In re Intel Corp. Microprocessor Antitrust Litig., 496 F. Supp. 2d 404, 409 (D. Del. 2007) (holding that "it is appropriate to apply the AGC factors if not directly, at least as a guide, in evaluating Class Plaintiffs' state law antitrust claims").  An application of the AGC factors to the IPPs' claims show that they must be dismissed under both federal and state law.

> (a)  **The AGC factors apply under the laws of each state for which the IPPs otherwise have standing to seek damages.**

Again, a federal court sitting in diversity must apply state law as declared by the state's highest court.  Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996).  "When ascertaining state law, the decisions of the [state's] Supreme Court are the authoritative source." Spence, supra, 623 F.3d at

216 (citation omitted). "In the absence of a controlling decision by the [state's] Supreme Court, [the Court] must predict how [that state's Supreme Court] would rule if faced with the issue." Ibid. (citation omitted). And, "[i]n making such a prediction," the Court "'must look to decisions of state intermediate appellate courts, of federal courts interpreting the state's law, and of other state supreme courts that have addressed the issue,' as well as 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending to convincingly show how the highest court in the state would decide the issue at hand.'" Id. at 216-17 (quoting Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008) (internal quotation marks omitted)).

> **(1)   The AGC factors apply to the IPPs'
> claims under Nebraska's and Iowa's
> antitrust statutes.**

Based on the decisions of the Supreme Courts of Iowa and Nebraska, the IPPs' Iowa and Nebraska antitrust claims are subject to the AGC factors. See Kanne, supra, 723 N.W.2d at 300; Southard, supra, 734 N.W.2d at 198 (stating that "the Iowa legislature did not intend to allow every person tangentially affected by a violation of the statute to have a remedy in damages").

These cases also provide helpful guidance to determine whether the AGC factors would be applied in other states. For

example, in _Kanne_, _supra_, the Supreme Court of Nebraska held

that the _AGC_ factors apply to state antitrust claims because the

remedial provision of Nebraska's statute "mirrors the equally

broad wording of the federal antitrust remedial statute, § 4 of

the Clayton Act, pursuant to which courts uniformly impose

[antitrust] standing requirements on antitrust damages actions."

723 _N.W._2d at 300 (citations omitted).[15]  It also noted that

Nebraska's antitrust statute "mandates that when its provisions

are 'similar to the language of a federal antitrust law, the

courts of this state in construing such [provision] shall follow

the construction given to the federal law by the federal

courts.'"  _Id._ at 297 (quoting Neb. Rev. Stat. § 59-829).

        Every state antitrust statute at issue in this case

contains the same, or nearly the same, remedial provision as the

federal antitrust remedial statute, § 4 of the Clayton Act.

Moreover, most, if not all, state antitrust statutes -- either

by statutory directive or by judicial interpretation -- require

that courts follow to some degree federal judicial

interpretations of federal antitrust law.  This demonstrates

---

[15]    _Compare_ Neb. Rev. Stat. § 59-821 ("Any person who is
injured in his or her business or property by any other person
or persons by a violation of sections 59-801 to 59-831, whether
such injured person dealt directly or indirectly with the
defendant"), _with_ 15 _U.S.C._ § 15(a) ("any person who shall be
injured in his business or property by reason of anything
forbidden in the antitrust laws may sue") (emphasis supplied).

that the AGC factors should be applied to each of the IPPs'
state antitrust claims.

> **(2)  The AGC factors apply to the IPPs'
> claims under California's, Illinois's,
> New Mexico's, and New York's antitrust
> statutes.**

Intermediate appellate courts in California, Illinois,
New Mexico, and New York have applied the AGC factors to claims
brought under their state antitrust statutes.[16]  This Court
should do likewise.  Each of these states' antitrust statutes
contains a remedial provision that is equally as broad as that
found in § 4 of the Clayton Act, on which state courts have
relied to determine that the AGC factors apply.  See Kanne,
supra, 723 N.W.2d at 300.  Two of these state antitrust statutes
-- Illinois and New Mexico -- also contain provisions mandating
that their state antitrust statutes be construed in accordance
with federal antitrust law, and the highest courts of the other
two states -- California and New York -- direct that federal
antitrust law must guide a court's application of each state's
antitrust statute. [17]

---

[16]    A chart of each of these states' intermediate appellate
court decisions applying the AGC factors is attached hereto as
**Exhibit "C"** and is made a part hereof by reference.

[17]    A chart of each of the states with mandatory "harmonization
provisions" or in which its highest court has directed
construction of the antitrust statute consistent with federal
law is attached hereto as **Exhibit "D"** and is made a part hereof
by reference.

Because (1) intermediate appellate court decisions of California, Illinois, New Mexico, and New York have applied the AGC factors, (2) each state's antitrust statute contains a remedial provision that is equally as broad as the federal antitrust remedial statute found in § 4 of the Clayton Act, (3) Illinois's and New Mexico's antitrust statutes mandate construction in accordance with federal antitrust law, and (4) California's and New York's highest courts direct that courts should be guided by federal antitrust decisions, this Court should apply the AGC factors to the IPPs' California, Illinois, New Mexico, and New York antitrust claims.  Spence, supra, 623 F.3d at 216-17.

> (3) **The AGC factors also apply to the IPPs' claims under other states' laws.**

The AGC factors apply to the IPPs' claims under other state antitrust statutes for several reasons.  First, each of those states' antitrust statutes contain the same or similar remedial provision as § 4 of the Clayton Act, which courts have found instructive when deciding to apply the AGC factors.[18] Second, those same state antitrust statutes direct either that they "shall" be construed in accordance with the federal

---

[18] A chart of each of the state antitrust statutes that contain a remedial provision similar to Section 4 of the Clayton Act is attached hereto as **Exhibit "E"** and is made a part hereof by reference.

- 28 -

antitrust laws,[19] or that the federal antitrust laws and the interpretations thereof should be used as guides in interpreting those statutes.[20]  For the states that do not have antitrust statutes with such directives, cases applying each state's antitrust statutes have looked to federal antitrust law for guidance.[21]  And, finally, the AGC factors already have been applied by trial courts in many of those states,[22] or by federal courts interpreting state law,[23] to dismiss claims like the ones alleged here.

In this context, the Court's task has been well-defined:

> [it] must look to decisions of state intermediate appellate courts, of federal courts interpreting the state's law, and of other state supreme courts that have addressed the issue, as well as analogous decisions, considered dicta, scholarly works, and any other reliable data tending

---

[19]   Ibid.

[20]   A chart of each state that has a permissive "harmonization provisions" or in which its courts have held that federal antitrust decisions should guide interpretations of the state's antitrust statutes is attached hereto as **Exhibit "F"** and is made a part hereof by reference.

[21]   Ibid.

[22]   A chart of state trial courts applying the AGC factors is attached hereto as **Exhibit "G"** and is made a part hereof by reference.

[23]   A chart of each state in respect of which federal courts have applied the AGC (state supreme court or intermediate appellate court has not addressed the question) is attached hereto as **Exhibit "H"** and is made a part hereof by reference.

> to convincingly show how the highest court
> in the state would decide the issue at
> hand[.]
>
> [Spence, supra, 623 F.3d at 216-17 (citation
> and internal quotation marks omitted).]

And, if, as here, the AGC factors all point in one direction --

and they do -- the Court should apply the AGC factors and

dismiss the IPPs' state antitrust claims.[24]

### (4)   An application of the AGC factors requires dismissal of the IPPs' antitrust claims.

As noted earlier, the second AGC factor -- antitrust

injury -- weighs heavily against antitrust standing:  the IPPs

are not market participants and their claimed injuries did not

"flow" from defendants' alleged unlawful conduct.  Although

failure on this factor alone mandates dismissal of the IPPs'

claims, Ethypharm S.A. France, supra, 707 F.3d at 233, each of

the other factors weighs against standing as well.  The IPPs'

claimed injury -- allegedly paying artificially inflated prices

---

[24]   Even Minnesota -- the only state Supreme Court to reject
application of the AGC factors -- agrees that a plaintiff, like
the IPPs here, that "did not purchase, directly or indirectly,
any product or service provided by or manufactured with
components from (the defendants)" is "too remote and speculative
to afford standing." Lorix v. Crompton Corp., 736 N.W.2d 619,
632 (Minn. 2007) (also stating that "[w]hatever the precise
prudential limits on Minnesota antitrust standing, we do not
believe that the legislature intended to create 'consumer
standing' by allowing every person in the state to sue for an
antitrust violation simply by virtue of his or her status as a
consumer"). The IPPs' claim brought under Minnesota's antitrust
statute also should be dismissed.

for vehicles as a result of allegedly passing-on costs of ocean transportation services that the IPPs neither received nor purchased from any entity -- is simply too remote to confer antitrust standing.

> **(i)  The IPPs fail to allege a causal connection _and_ intent by the defendants to cause that harm.**

The first AGC factor requires that a plaintiff allege both a causal connection and intent by the defendants to cause the alleged harm. Ethypharm S.A. France, supra, 707 F.3d at 233. The IPPs allege an extremely tenuous connection between the alleged violation and their supposed injury, and, tellingly, allege nothing about defendants' intent. Nor could they. If in fact there was a conspiracy to fix the prices of vehicle carrier services, there is no plausible rationale to support the notion that defendants intended harm to the IPPs, who are several steps removed from the one and only purchaser of the Vehicle Carrier Services: the OEMs.

> **(ii)  The IPPs' claimed injury is not direct, there are others with a more direct relationship to the actions complained of, and the IPPs' allegations show their claims are speculative.**

The third and fourth AGC factors also weigh strongly against granting standing to the IPPs: their claimed injury is far from direct. In fact, they are neither direct nor indirect

- 31 -

purchasers of vehicle carrier services.  Instead, their claims of injury are "better characterized as remote or derivative." Nass-Romero, supra, 279 P.3d at 779 (denying standing when plaintiff failed to "show that she was indirectly harmed through the chain of distribution" for relevant product).  To the extent anyone could claim injury as a result of the alleged conduct, it is the OEMs.[25]

The IPPs' rhetoric aside, each of the IPPs is multiple layers removed from the ocean transportation services market. Based on the number of distribution points the cars and trucks passed through before ending up in the hands of an Auto Dealer, a Truck Center or an End-Payor, the IPPs are simply too far removed from the events of which they complain; in respect of new vehicles, it is the OEMs that bear the ocean transport cost. Cars, for example, can and are offloaded from a ship for transport by truck either to a showroom, or delivered by truck for loading onto a train for additional shipment and then offloaded to a truck again for delivery to the showroom floor. These intuitive facts make clear that the Auto Dealers and the Truck Centers are at least 2-to-3 layers removed from the ocean transportation services market, and the End-Payors are at least

---

[25]   The fact that automobile manufacturers have not yet sued does not affect the analysis.  See, e.g., Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 444 (2d Cir. 2005).

3-to-4 layers removed from that market.  Putting aside whether the IPPs properly should be called "indirect purchasers," courts readily reject claims where indirect purchasers are several layers removed from the allegedly restrained market.  See, e.g., Lorenzo v. Qualcomm Inc., 603 F. Supp. 2d 1291, 1301-02 (S.D. Cal. 2009) (holding that purchasers of cell phone products and services "three levels of the supply chain" removed from market in which alleged conduct occurred lack antitrust standing); Meyer v. Qualcomm, Inc., 2009 US Dist LEXIS 16533 (S.D. Cal. 2009) (same).

The IPPs' conclusory allegations that vehicle carrier services are "identifiable, discrete services" that are incorporated into the price of vehicles and are "traceable" does nothing to affect the outcome.  Auto Dealers Compl. 175; Truck Centers Compl. ¶ 161; End-Payors Compl. ¶¶ 185-87.  Not a single OEM resells ocean transportation services, and the fact remains that that these services are completely consumed by the OEMs before anyone buys or leases a vehicle.

Even if the cost of vehicle carrier services is built into the price of a vehicle, it reflects no more than a miniscule percentage of that price, and the alleged overcharge would be even smaller.[26]  And, allegations that such a charge was

---

[26]    By IPPs' own admission, the vehicle carrier services component of a vehicle's price is miniscule.  All three IPPs'

- 33 -

passed on do not confer antitrust standing.  See In re Magnesium Oxide Antitrust Litig., 2012 WL 1150123, at *9 (D.N.J. April 5, 2012) (dismissing state and federal claims for lack of antitrust standing when product purchased contained no more than 4% of the allegedly price-fixed ingredient, which was not enough to suggest that an increase in the price of that ingredient would have "significant foreseeable effect on the price of the purchased product").

In this context, the assertion that the price of ocean transportation services was incorporated into the price of new or leased vehicles in any meaningful way is rank speculation. This is best illustrated by the U.S. Department of Commerce's data illustrating that vehicles shipped via ocean transport compete with domestically produced automobiles and light trucks.[27]

---

complaints allege that, as of 2006, vehicle carrier services were $305.79 per vehicle. [End-Payors Compl. ¶ 157; Auto Dealers Compl. ¶ 150; Truck Centers Compl. ¶ 144]. Even if one assumes (1) a 100% pass on rate, (2) that the overcharge component is 10% of the vehicle carrier services ($30.58), and (3) an extremely low per-vehicle sales price of $20,000, the overcharge on the vehicle carrier services is only 0.15% -- that is, fifteen one-hundredths of a percent -- of the purchase price, and even that amount would have to be divided between the Auto Dealers and the End-Payors.

[27]   See U.S. Department of Commerce, Bureau of Economic Analysis, Tables 1-4, available at http://www.bea.gov/national/xls/gap_hist.xls.  The Court may take notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.

Anyone who has shopped for a car or truck understands that dealers are not free to charge a higher price for an imported vehicle simply because it was shipped across the ocean. One need only walk across the street or down the block to a competing dealer selling either domestically produced or imported cars or trucks, for example, to prove the point. Because the Court may take judicial notice of any fact that is a matter of common and general knowledge in its jurisdiction, it "need not ... accept as true" the IPPs' allegations that they paid for ocean transportation services when those allegations "contradict matters properly subject to judicial notice." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended by, 275 F.3d 1187 (9th Cir. 2001).

           **(iii)**    **The IPPs' claims create a real risk of duplicative recovery and will make any apportionment of damages needlessly complex.**

The final AGC factor -- the potential for duplicative recovery or complex apportionment of damages -- also weighs against standing. The groups of plaintiffs in this multi-

---

R. Evid. 201(b).  The Bureau of Economic Analysis is a source the accuracy of which reasonably cannot be questioned, and judicial notice may be taken of data found on a government agency website.  See O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir.2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); Denius v. Dunlap, 330 F.3d 919, 926-27 (7th Cir.2003) (taking judicial notice of information on website of government agency).

district litigation present the possibility of a total recovery that is at least 9 times compensatory damages.  The IPPs expressly have acknowledged that they have conflicting claims.[28] And, their inconsistent allegations show that there is more than a mere "potential" for duplicative recovery or complex apportionment of damages in this case.  For example, the End-Payors allege that the "OEMs and automobile dealers passed on the inflated charges" to them, End-Payors Compl. ¶ 180 (emphasis supplied), while the Auto Dealers allege that they instead "had to and did absorb a significant portion of the overcharges," Auto Dealers Compl. ¶ 180.

The prospect of sorting through competing regression analyses to determine whether any charges were passed on and, if so, how much, creates unnecessary, highly complex, and perhaps impossible apportionment issues.  See AGC, supra, 459 U.S. at 544, 103 S. Ct. at 912, 74 L. Ed. 2d at ___.  The IPPs' competing allegations exemplify the type of duplicative recovery and complex damages apportionment of which courts rightly are wary.  See id. at 543-44, 103 S. Ct. at 912, 74 L. Ed. 2d at ___ (emphasizing "the importance of avoiding either the risk of duplicative recoveries on the one hand, or the danger of complex

---

[28]   Dec. 10, 2013 from P. Pearlman, Esq. to the Court, at 3 [Dkt. Entry 33] (stating that "conflicts may arise regarding whether and how illegal overcharges were passed on from the Automobile Dealers to the End Payors and whether the pass-through defense is valid under the laws of the various states").

apportionment of damages on the other"); Nass-Romero, supra, 279 P.3d at 780 (noting that "the risk of duplicative recovery is apparent" when multiple groups of plaintiffs claim to same alleged overcharge).

For these reasons, the IPPs' federal and state antitrust claims should be dismissed for lack of antitrust standing.

**C.   The IPPs lack standing to assert a substantial number of their state law claims.**

**1.   The IPPs cannot bring claims under the laws of states where no named plaintiff either resides or was injured.**

Each set of the IPPs asserts claims under the laws of states (1) other than the named IPPs' home states and (2) in which the IPPs have not alleged any injury.  In so doing, the IPPs' pleadings run afoul of basic principles of standing. Because none of the IPPs alleges injury outside of his/its home state, they lack standing to assert claims under any laws other than those of their home states.  For each of the three complaints, the claims under the laws of jurisdictions other than their respective home states must be dismissed.

The standing defects affect the three complaints to varying degrees.[29]  The Truck Centers plaintiffs are located in

---

[29]   As an aid to the Court, defendants have charted in which states the various named IPPs are resident for purposes of

12 different jurisdictions,[30] only six of which allow indirect

purchasers to assert claims.[31]   Remarkably, they nonetheless

assert causes of action under the statutory laws of 28

jurisdictions.[32]   The Auto-Dealers plaintiffs are located in nine

different jurisdictions.[33]   They assert causes of action under

the statutory laws of 29 jurisdictions.[34] No doubt recognizing

the standing defects in other complaints, the End-Payors

plaintiffs are located in 30 jurisdictions.[35]   Still, they assert

---

standing; that chart is attached hereto as **Exhibit "I"** and is
made a part hereof by reference.

[30]   Their home states are:  Arizona, California, Colorado,
Florida, Georgia, Idaho, Kansas, North Carolina, Ohio, Oklahoma,
Texas, and Utah.  (Truck Centers Compl. ¶¶ 21, 23, 25, 27, 29,
31, 33, 35, 37, 39, 41, and 43.)

[31]   See Section C.2, infra.

[32]   Specifically, the Truck Center Plaintiffs assert claims
under the antitrust statutes of 22 states and the District of
Columbia, and the consumer protection statutes of 10 states
(five of which overlap with the antitrust claim jurisdictions).
(Truck Center Compl. Counts II and III.)

[33]   Their home states are:  California, D.C., Florida,
Michigan, Mississippi, New York, North Carolina, South Carolina,
and Tennessee.  (Auto-Dealers Compl. ¶¶ 21, 23, 25, 27, 29, 31,
33, 35, 37, 39, and 41.)

[34]   Specifically, the Auto-Dealer Plaintiffs assert claims
under the antitrust statutes of 24 states and the District of
Columbia, and the consumer protection statutes of 10 states (six
of which overlap with the antitrust claim jurisdictions).
(Auto-Dealers Compl. Counts II and III.)

[35]   Their home states are:  Arizona, Arkansas, California,
D.C., Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts,
Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska,
Nevada, New Hampshire, New Mexico, New York, North Carolina,

claims under the laws of two other jurisdictions, for a total of 32 jurisdictions.[36] Each set of the IPPs also asserts claims for unjust enrichment.[37]

Standing is a threshold inquiry in every case, "one for which '[t]he party invoking federal jurisdiction bears the burden of [proof].'" In re Niaspan Antitrust Litig., 2014 WL 4403848, at *16 (E.D. Pa. Sept. 8, 2014) (quoting Lujan, supra, 504 U.S. at 561, 112 S. Ct. at 2136, 119 L. Ed. 2d at 364). To assess standing, "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to that claim." In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 152 (E.D. Pa. 2009) (quoting Griffin v. Dugger, 823 F.2d 1475, 1483 (11th Cir. 1987)).

That the IPPs have pled each of their cases as putative class actions does not affect the inquiry. The law is

---

North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. (End-Payors Compl. ¶¶ 20—58.)

[36]   Specifically, the End-Payor Plaintiffs assert claims under the antitrust statutes of 24 states and the District of Columbia, and the consumer protection statutes of 14 states (seven of which overlap with the antitrust claim jurisdictions). (End-Payors Compl. Counts II and III.)

[37]   The Auto-Dealer Plaintiffs and the Truck Center Plaintiffs assert unjust enrichment claims under the laws of the same states whose statutory law they invoke. The End-Payor Plaintiffs, however, do not tether their unjust enrichment claim to any state, as discussed in Section I.C, infra.

clear:  "[A] class representative for a particular claim must himself have a cause of action on that claim." In re DIPF Antitrust Litig., supra, 2013 WL 5503308, at *19.  The United States Court of Appeals for the Third Circuit has rejected reliance on the standing of absent class members to assert claims, explaining that "'standing is not dispensed in gross.'" In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 245 (3rd Cir. 2012) (quoting Lewis v. Casey, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 2183 n.6, 135 L. Ed. 2d 606, 622 n.6 (1996)).  In other words, it is not sufficient that the "'injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Klein v. General Nutrition Cos. Inc., 186 F.3d 338, 345 (3rd Cir. 1999) (quoting Lewis, supra, 518 U.S. at 357, 116 S. Ct. at 2183, 135 L. Ed. 2d at 622). For this reason, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674, 682 (1974).

     At the pleadings stage, courts routinely dismiss indirect purchaser plaintiffs' blanket claims based on the unassailable premise that "named plaintiffs lack standing to

assert claims under the laws of the states in which they do not

reside or in which they suffered no injury." In re Packaged Ice

Antitrust Litig., 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011);

see also In re DIPF Antitrust Litig., supra, 2013 WL 5503308, at

*12 (dismissing state antitrust and consumer protection claims

brought under laws of states in which no named plaintiff

resides). The case law on this core proposition is overwhelming

and consistent.[38] The reason is plain: ignoring these bedrock

---

[38]   See, e.g., In re HSBC Bank, USA, N.A., Debit Card Overdraft
Fee Litig., 2014 WL 868827, at *11 (E.D.N.Y. Mar. 5, 2014)
(granting motion to dismiss thirteen state consumer protection
claims and holding "that the Plaintiffs may only assert a state
claim if a named plaintiff resides in, does business in, or has
some other connection to that state"); Xi Chen Lauren v. PNC
Bank, N.A., 296 F.R.D. 389, 391 (W.D. Pa. 2014) (granting motion
to dismiss unjust enrichment claims under forty-nine states'
laws because the named plaintiff "suffered an alleged injury
exclusively under Ohio law. Therefore, she does not have
standing to assert unjust enrichment claims under the law(s) of
any other state") (internal citations and quotations omitted);
In re Refrigerant Compressors Antitrust Litig. ("Refrigerant
Compressors I"), 2012 WL 2917365, at *5 (E.D. Mich. July 17,
2012) (dismissing "for lack of Constitutional standing" claims
in any state where plaintiff did not reside or purchase the
product); In re Processed Egg Prods. Antitrust Litig., 2012 U.S.
Dist. LEXIS 37265, at *24 n.11 (E.D. Pa. Mar. 20, 2012) ("There
is long-standing precedent to the effect that when a 'class
action' is introduced into the standing equation, the
requirement that a named plaintiff must have standing to bring
it is unaltered."); In re Flonase Antitrust Litig. ("Flonase
II"), 692 F. Supp. 2d 524, 534 (E.D. Pa. 2010) ("Named
plaintiffs must have case or controversy standing; the potential
standing problem in this case is not created by class
certification. Therefore class certification is not logically
antecedent to the standing problem."); In re TFT-LCD (Flat
Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1122, 1124-25
(N.D. Cal. 2008) (adopting In re Graphics Processing Units
Antitrust Litig., infra, and dismissing, by agreement, indirect

- 41 -

standing principles would "allow named plaintiffs in a proposed class action, with no injuries in relation to the law of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union." In re Wellbutrin XL Antitrust Litigation, supra, 260 F.R.D. at 154-56.

Courts in this District do not hesitate to dismiss claims like those asserted here by IPPs. See In re DIPF Antitrust Litigation, supra, at *11 (rejecting plaintiffs' plea to defer standing inquiry until class certification and concluding that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury"); In re Magnesium Oxide Antitrust Litig. ("Magnesium Oxide I"), 2011 WL 5008090 at * 10 (D.N.J.

---

purchaser plaintiffs' claims under state laws where no named plaintiff resided); In re Graphics Processing Units Antitrust Litig., 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (dismissing, with plaintiffs' agreement, claims under state laws where no named plaintiff resided); In re Dynamic Random Access Memory (DRAM) Antitrust Litig. ("DRAM I"), 516 F. Supp. 2d 1072, 1103 (N.D. Cal. 2007) (dismissing state law claims in states where no named plaintiff resided); In re OSB Antitrust Litig., 2007 WL 2253425, at *1 (E.D. Pa. Aug. 3, 2007) (stating that "lacking named representatives from Arizona, New Mexico, and South Dakota, [p]laintiffs do not have standing to maintain a class action in those states"); Montgomery v. New Piper Aircraft, Inc., 209 F.R.D. 221, 227 (S.D. Fla. 2002) (holding that plaintiffs who did not allege injury in Florida could not bring claim under Florida law); Coca-Cola Co. v. Harmar Bottling Co., 218 S.W.3d 671, 683-84 (Tex. 2006) (dismissing antitrust claims brought in Texas under Texas law for alleged antitrust violations in other states).

Oct. 20, 2011) (dismissing most claims for lack of standing, reasoning that if plaintiffs were allowed to proceed under all state statutes, antitrust plaintiff could "bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, without a good-faith basis[,]" and, in those circumstances, "the plaintiff would have to do no more than name the preserve on which he intends to hunt"); see also McGuire v. BMW of N.A., LLC, 2014 WL 2566132, at *5-6 (D.N.J. June 6, 2014) (granting motion to dismiss "breach of warranty claims 'under the laws of the states in which Class members purchased or leased their Class Vehicles'" because "Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury").

When this fundamental standing principle is applied here, the result is compelling:  the only states in which the IPPs potentially may assert state law competition claims -- antitrust, consumer protection, unjust enrichment -- are their home states.  That alone narrows the Truck Centers' claims to

six states,[39] the Auto-Dealers' claims to nine states, and the
End-Payors' claims to 30 states.

> **2.   Six Truck Center plaintiffs lack standing to
> assert any state antitrust law claims.**

Because indirect purchaser plaintiffs only have
standing to assert antitrust claims in their home states, it
necessarily follows that a plaintiff who does not assert a claim
under the laws of its home state has no standing at all. See,
e.g., In re Wellbutrin XL Antitrust Litig., supra, 260 F.R.D. at
158 ("Because plaintiff [] is located in Alabama, alleges to
have members residing only in Alabama, and because the
plaintiffs bring no claims under the laws of Alabama, plaintiff
[] will be dismissed from this case for lack of standing to
bring any of the surviving claims.").

There are no antitrust claims asserted under the laws
of the home states of six of the named plaintiffs in the Truck
Center complaint:  Rush Truck Centers of Colorado, Rush Truck
Centers of Georgia, Rush Truck Centers of Idaho, Rush Truck
Centers of Ohio, Rush Truck Centers of Oklahoma, and Rush Truck
Centers of Texas.  That is so because none of their home states

---

[39]   Although there are twelve Truck Center plaintiffs, the law
of the home states of six of them -- Colorado, Georgia, Idaho,
Ohio, Oklahoma, and Texas -- does not allow indirect purchaser
claims.

allows indirect purchasers to bring such claims.[40]  The Court

should dismiss these plaintiffs' state antitrust claims.

D.   THE UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED.

1.   The End-Payors' claim for unjust enrichment
fails.

The End-Payors assert a vague claim for "unjust

enrichment" without reference to any state's laws.  [End-Payors

Compl. Count IV.]  The common law theory of unjust enrichment

varies materially from state to state.  Hence, the sufficiency

of the End-Payors complaint cannot be evaluated without

tethering each such claim to a particular state's body of case

---

[40]   **Colorado:**  Stifflear v. Bristol-Myers Squibb Co., 931 P.2d
471, 476 (Colo. Ct. App. 1996) (holding that indirect purchasers
lack standing under Colorado Antitrust Act to assert claims for
money damages or injunctive relief for antitrust violation);
**Georgia:**  In re Niaspan Antitrust Litig., supra, 2014 WL
4403848, at *21 (noting that no authority exists permitting
indirect purchaser claims under Georgia law, among others);
**Idaho:**  In re Static Random Access Memory (SRAM) Antitrust
Litig., 580 F. Supp. 2d 896, 907 (N.D. Cal. 2008) (dismissing
indirect purchaser class action in light of holding of Idaho
Supreme Court that "indirect purchasers may not bring suit under
the Idaho Consumer Protection Act"); **Ohio:**  Johnson v.
Microsoft Corp., 834 N.E. 2d 791, 798 (Ohio 2005) (holding that
indirect purchaser lacks standing to bring claims under Ohio
antitrust law); **Oklahoma:**  Major v. Microsoft Corp., 60 P.3d
511, 517 (Okla. Civ. App. 2002) ("[Plaintiff] should not be
permitted under the law to avoid the United States Supreme
Court's policy choices expressed in Illinois Brick by recasting
his claims of anticompetitive conduct as a Consumer Protection
Act claim."); and **Texas:**  Abbott Labs., Inc. v. Segura, 907 S.W.
2d 503, 506 (Tex. 1995) (holding that indirect purchasers may
not bring claims under Texas Antitrust Act because "[a]ntitrust
suits would become even more complex and burdensome as the
courts attempted to determine the proper apportionment of pass-
on antitrust charges to each level of indirect purchasers").

- 45 -

law.  Absent the requisite reference to state law, the End-
Payors' unjust enrichment claims are insufficiently pled and
must be dismissed.  See, e.g., In re DIPF Antitrust Litig.,
supra, at *12 ("The Court . . . will therefore dismiss Indirect
Purchaser Plaintiffs' unjust enrichment claim under Rule
12(b)(6) for failure to specify the particular state law under
which Indirect Purchaser Plaintiffs intend to proceed.").[41]

　　　　In many, if not all of the states at issue, the
variations in the common law of unjust enrichment of necessity
would require the dismissal of the End-Payors' unjust enrichment
claims.  By way of example, unjust enrichment under the common
law of some of the home states of the named End-Payors requires
that a plaintiff directly "confer a benefit" on defendants,
which -- by definition -- indirect purchasers cannot do.  See,
e.g., In re Flonase, supra, 692 F. Supp. 2d at 544 (dismissing
unjust enrichment claims under Florida and North Carolina law as
indirect purchasers cannot satisfy "direct benefit"

---

[41]　　See also In re Refrigerant Compressors, supra, at *24
(recognizing that "state law requirements under unjust
enrichment law vary widely," and dismissing unjust enrichment
claims for failure to specify the "state or states' laws they
are asserting an unjust enrichment claim under"); In re
Wellbutrin XL, supra, 260 F.R.D. at 167 (dismissing unjust
enrichment claim for failure to specify particular state law);
In re Flonase, 610 F. Supp. 2d 409, 409 (E.D. Pa. 2009) (same);
In re Static Random Access Memory (SRAM), supra, 580 F. Supp. 2d
at 910 (same); In re Ditropan XL, 529 F. Supp. 2d 1098, 1107
(N.D. Cal. 2007) (same); In re TFT-LCD, supra, 586 F. Supp. 2d
at 1124-25 (same).

requirement); Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 263 F.R.D. 205, 216 (E.D. Pa. 2009) (same under New York law); In re Relafen Antitrust Litig., 225 F.R.D. 14, 28 (D. Mass. 2004) (same); Apache Corp. v. MDU Res. Group, Inc., 603 N.W.2d 891, 895 (N.D. 1999) (requiring that, under North Dakota law, defendant have received direct benefit from plaintiff).

The IPPs likewise cannot use an unjust enrichment claim as an end-run to pursue relief not otherwise available under state antitrust or consumer-protection laws. In re K-Dur, 2008 WL 2660780, at *5 (D.N.J. Feb. 28, 2008). That notion directly contravenes the legislative judgments expressed in the governing statutes, and violates the fundamental and long-standing principle that plaintiffs cannot use equity to expand statutorily defined rights. Hedges v. Dixon County, 150 U.S. 182, 192, 14 S. Ct. 71, 74, 37 L. Ed. 1044, 1048 (1893) (holding that, because "equity follows the law, or . . . wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation"). See also In re Flonase, supra, 692 F. Supp. 2d at 542 ("[W]here an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, [p]laintiffs should be prohibited from recovery under a claim for unjust enrichment.") In other words,

an unjust enrichment claim cannot be used in derogation of the antitrust and consumer-protection policy decisions of a state legislature.  The governing rule and its rationale are succinctly stated:

> [I]ndirect purchasers cannot recoup 'passed on' overcharges under the <u>Illinois Brick</u> rule or its state progeny.  <u>Illinois Brick</u> expressed concerns that indirect purchasers actions would lead to complex apportionment disputes among injured parties, undermine the efficient enforcement of antitrust laws, or expose defendants to the risk of multiple liability.      The end payors' unjust enrichment claim raises identical concerns. . . . .  State legislatures and courts that adopted the Illinois Brick rule against indirect purchaser antitrust suits did not intend to allow "an end run around the policies allowing only direct purchasers to recover.
>
> [<u>In re Terazosin Hydrochloride Antitrust Litig.</u>, 160 <u>F. Supp.</u> 2d 1365, 1380 (S.D. Fla. 2001) (citations omitted).]

An application of those principles to the Auto Dealers' and Truck Centers' unjust enrichment claims yields the same result.

### 2.    **The Auto Dealers and the Truck Centers fail to state claims for relief for unjust enrichment.**

The Auto Dealers and the Truck Centers - - in Count IV Of their respective complaints -- incorporate by general reference everything they pled in Counts II and III, and then assert they have unjust enrichment claims under the laws of "all (32) States listed in the Second and Third Counts."  (Auto

Dealers Compl. ¶ 257; Truck Centers Compl. ¶ 242).  As the following analysis demonstrates, the Auto Dealers and the Truck Centers have not and cannot satisfy the elements for a claim of unjust enrichment in any State.[42]

> **(a)    Eighteen jurisdictions require a direct benefit conferred by IPPs or a substantial relationship between IPPs and a defendant.**

The Auto Dealers and the Truck Centers have not and cannot plead an unjust enrichment claim under the laws of Florida, the District of Columbia, Hawaii, Kansas, Maine, Massachusetts, Michigan, Nebraska, Nevada, New Hampshire, New York, North Carolina, North Dakota, Rhode Island, South Carolina, South Dakota, Utah or Wisconsin because they allege only that they purchased the purportedly price-fixed service indirectly and do not -- and cannot -- allege they conferred a benefit <u>directly</u> on any of defendants, or that they otherwise had some direct, substantive relationship with defendants, or that defendants were aware of the benefit the Auto Dealers or the Truck Centers conferred.  In fact, they have pled that no

---

[42]    The arguments advanced here also apply to the End-Payors because they too admit that they had no direct relationship and did not deal directly with any of defendants.  [End-Payors Compl. ¶ 191].

such relationship exists.  [Auto Dealers Compl. ¶ 185; Truck Centers Compl. ¶ 170.][43]

The Auto Dealers and the Truck Centers have conceded that they cannot plead that they:  (1) conferred a direct benefit on any of defendants; or (2) had a substantial relationship with any of defendants; or (3) any of defendants knew of, appreciated or were aware of any benefit allegedly conferred by either the Auto Dealers or the Truck Centers. [Auto Dealers Compl. ¶ 185; Truck Centers Compl. ¶ 170].  All unjust enrichment claims should be dismissed for these eighteen states.

     **(b)**    **IPPs cannot successfully assert unjust enrichment in states that do not allow recovery of remote injuries.**

Courts in Arkansas, Iowa and New York recognize that the unjust enrichment theory is subject to the common-law rule that bars recovery for remote injuries.  The Auto Dealers and the Truck Centers are too remote to bring unjust enrichment claims.  See Arkansas -- Ark. Carpenters' Health & Welfare Fund v. Philip Morris Inc., 75 F. Supp. 2d 936, 946 (E.D. Ark. 1999);

_____

[43]  For ease of reference, a chart of each of those eighteen states that, for unjust enrichment purposes, require that a plaintiff plead either (a) the plaintiff conferred a benefit directly on a defendant, or (b) that the plaintiff otherwise had some direct, substantive relationship with a defendant, or (c) that a defendant was aware of the benefit the plaintiff conferred is attached hereto as **Exhibit "J"** and is made a part hereof by reference.

Iowa -- Southard, supra, 734 N.W. 2d at 199-200; New York -- New
York v. Daicel Chem. Indus. Ltd., 42 A.D. 3d 301, 304 (N.Y. App.
Div. 2007).

Therefore, the unjust enrichment claims under the
State laws of Arkansas, Iowa and New York should be dismissed.

        **(c)  Tennessee requires that IPPs exhaust other
remedies before a claim of unjust enrichment
will lie.**

In Tennessee, an indirect purchaser is required to
show that measures were taken to seek relief from intervening
links in the distribution chain and/or the futility of such
measures in order to sustain an indirect purchaser unjust
enrichment claim.  See D.R. Ward Constr. Co. v. Rohm & Haas Co.,
470 F. Supp. 2d 485, 509-510 (E.D. Pa. 2006) (holding that
plaintiffs' claim is premature because it failed to establish
exhaustion of measures to "seek relief from intervening links in
the chain of distribution of plastics additives and/or the
futility of such measures").

        **(d)  California does not recognize unjust
enrichment.**

California does not recognize unjust enrichment as a
cause of action.  Levine v. Blue Shield of Cal., 189 Cal. App.
4th 1117, 1138 (Cal. App. Ct. 2010); Fraley v. Facebook, Inc.
830 F. Supp. 2d 785, 814 (N.D. Cal. 2011).  Therefore, any
unjust enrichment claim under California law must be dismissed.

(e)   **The <u>Illinois Brick</u> rule bars unjust
      <u>enrichment claims in seven states.</u>**

<u>Illinois Brick Co. v. Illinois</u>, 431 <u>U.S.</u> 720, 97 <u>S.</u>
<u>Ct.</u> 2061, 52 <u>L. Ed.</u> 707 (1977), holds that only direct
purchasers may sue for damages under federal antitrust laws.
Courts in jurisdictions that follow <u>Illinois Brick</u> -- Arkansas,
Illinois, Missouri, Montana, Oregon, Rhode Island and South
Carolina -- have rejected efforts by indirect purchasers to use
unjust claims to avoid the direct purchaser requirement in such
States:  <u>See, e.g.</u>,  <u>Arkansas</u> -- <u>In Re TFT-LCD (Flat Panel)</u>
<u>Antitrust Litigation</u>, 599 <u>F. Supp.</u> 2d 1179, 1191-1192 (N.D. Cal.
2009); <u>Illinois</u> -- <u>In re Digital Music Antitrust Litig.</u>, 812 <u>F.</u>
<u>Supp.</u> 2d 390, 414-417 (S.D.N.Y. 2011); <u>Montana</u> - <u>Ibid.</u>; <u>South</u>
<u>Carolina</u> -- <u>In re Microsoft Corp. Antitrust Litig.</u>, 401 <u>F. Supp.</u>
2d 461, 464 (D. Md. 2005); <u>see also In re DDAVP Indirect</u>
<u>Purchaser Antitrust Litig.</u>, 903 <u>F. Supp.</u> 2d 198, 233 (S.D.N.Y.
2012).  Accordingly, the unjust enrichment claims in Arkansas,
Illinois, Missouri, Montana, Oregon, Rhode Island and South
Carolina should be dismissed.

E.   **THE IPP'S STATE LAW CLAIMS ARE PREEMPTED BY THE FEDERAL
     SHIPPING ACT AND THE EXCLUSIVE JURISDICTION OF THE
     FEDERAL MARITIME COMMISSION.**

The End-Payors, Auto Dealers and Truck Centers allege
claims invoking various state antitrust laws, state consumer
protection statutes, and unjust enrichment under various states'

common laws.  Those claims are preempted by the Shipping Act and must be dismissed.

It is a bedrock principle of federalism that the laws of the United States "shall be the supreme law of the Land . . . anything in the Constitution or Laws of any State to the Contrary notwithstanding[.]"  U.S. Const. art. VI, cl. 2.  That principle gives rise to the doctrine of preemption, which provides that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."  Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 108, 112 S. Ct. 2374, 2388, 120 L. Ed. 2d 73, ___ (1992).  There are two types of preemption:  express preemption and implied preemption.  Mutual Pharm. Co., Inc. v. Bartlett, ___ U.S. ___,___, 133 S. Ct. 2466, 2473, 186 L. Ed. 2d 607, ___ (2013).  One type of implied preemption is field preemption, which the Third Circuit has described as follows:

> Field pre-emption occurs "[w]hen Congress intends federal law to 'occupy the field.'"  Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000).  "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive … that Congress left no room for the States to supplement it' or where there is a 'federal interest … so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"  Arizona v. United States, ___ U.S. ___, 132 S. Ct. 2492, 2501, 183 L.

Ed. 2d 351 (2012) (internal quotation marks and citation omitted).

[Lozano v. City of Hazleton, 724 F.3d 297, 303 (3rd Cir. 2013).]

Field preemption has applied to preempt state law in a number of fields, including but not limited to the Federal Aviation Administration and the regulation of aviation safety,[44] immigration policy,[45] the Federal Communications Commission and telecommunications and radio broadcasting,[46] the regulation of radioactive waste,[47] the Office of Thrift Supervision and the regulation of thrifts,[48] the wholesale sale of electricity in interstate commerce,[49] the wholesale sale of natural gas;[50] and the wholesale sale of electric energy.[51]

---

[44] Ventress v. Japan Airlines, 747 F.3d 716 (9th Cir. 2014); U.S. Airways, Inc. v. O'Donnell, 627 F.3d 1318 (10th Cir. 2010).

[45] Lozano, supra; U.S. v. Alabama, 691 F.3d 1269 (11th Cir. 2012).

[46] Qwest Corp. v. Minnesota Public Utilities Comm'n, 684 F.3d 721 (8th Cir. 2012); New York SMSA Ltd. P'ship v. Town of Clarkestown, 612 F.3d 97 (2nd Cir. 2010); Freeman v. Burlington Broadcasters, Inc., 204 F.3d 311 (2d Cir. 2001).

[47] U.S. v. Manning, 527 F.3d 828 (9th Cir. 2008); U.S. v. Commonwealth of Kentucky, 252 F.3d 816 (6th Cir. 2001).

[48] Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008).

[49] In re Enron Corp., 327 B.R. 526 (Bankr. S.D.N.Y. 2005).

[50] Nevada v. Reliant Energy, Inc., 289 P.3d 1186 (Nev. 2012).

[51] In re Enron Corp., supra.

- 54 -

In particular, the field of national and international maritime commerce is a field "where the federal interest has been manifest since the beginning of the Republic[.]" <u>U.S. v. Locke</u>, 529 <u>U.S.</u> 89, 99, 120 <u>S. Ct.</u> 1135, 1143, 146 <u>L. Ed.</u> 2d 69 (2000).  It is well settled that in the field of

> international maritime commerce . . . there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers.  <u>Rather, we must ask whether the local laws in question are consistent with the federal statutory structure, which has as one of its objectives a uniformity of regulation for maritime commerce</u>.
>
> [<u>Id.</u> at 108, 120 <u>S. Ct.</u> at 1148, 146 <u>L. Ed.</u> 2d at ___ (emphasis supplied).]

Field preemption applies where Congress has enacted legislation to ensure uniformity in regulation and minimization of government involvement.  For example, in <u>Reliant Energy, Inc.</u>, supra, the Supreme Court of Nevada held that the federal Natural Gas Act and the jurisdiction under the Act in the Federal Energy Regulatory Commission ("FERC") (1) preempted the field of the wholesale sale of natural gas in interstate commerce and (2) precluded the State of Nevada and direct and indirect purchasers of natural gas from maintaining antitrust price fixing claims against natural gas suppliers under the Nevada Antitrust Act.  It explained that

> the conclusion that there is no preemption leads to the imposition on interstate

natural gas wholesalers (of) 50 different sets of state rules concerning anticompetitive behavior. <u>To allow intervention by the states would devastate two of the additional purposes of the federal statutory scheme: national uniformity and freedom from burdensome government intervention</u>. From a practical standpoint, if each state intervened in this field with different regulations, the result would be a maelstrom of competing regulations that would hinder FERC's oversight of the natural gas market.

[<u>Reliant Energy</u>, <u>supra</u>, 289 <u>P.</u>3d at 1193 (emphasis supplied).]

Likewise, in <u>Leggett v. Duke Energy Corp.</u>, 308 <u>S.W.</u> 3d 843 (Tenn. 2010), the Supreme Court of Tennessee affirmed the trial court's dismissal of price fixing claims -- under the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101 to 47-25-112 -- lodged by consumers who were indirect purchasers of natural gas against natural gas wholesalers. It explained that "the application of our state's antitrust law to the circumstances here would undermine two essential purposes of the federal legislation: uniformity and freedom from government interference." <u>Id.</u> at 871. <u>Accord</u> <u>In re Enron Corp.</u>, <u>supra</u>, 327 <u>B.R.</u> at 531 (holding that federal law regulated transmission and sale of electric energy as wholesale in interstate commerce, and that field preemption barred a <u>parens patrie</u> suit under the state antitrust and unfair competition laws).

- 56 -

Through the enactment of the Shipping Act of 1984,
Congress has occupied the field of international shipping.  46
U.S.C. §§ 40101, et seq. ("The Shipping Act").  It vests
exclusive jurisdiction in administering all of the provisions of
the Shipping Act in the Federal Maritime Commission ("FMC").
Seawinds Ltd. v. Nedlloyd Lines, B.V., 80 B.R. 181, 184-185
(N.D. Cal. 1997), aff'd, 846 F.2d 586 (9th Cir. 1998).  The
legislative history explains that that the Shipping Act

> accomplishes seven major purposes.  First,
> the FMC is provided exclusive jurisdiction
> in administering all the provisions of the
> Shipping Act as they relate to international
> liner shipping regulations.
>
>          .  .  .  .
>
> Seventh, the entire method of
> regulation is changed to minimize government
> involvement in shipping operations.  The
> primary role of the FMC would be to review
> conduct in order to protect carriers,
> shippers, and ports from unfair or
> discriminatory shipping practices.
>
> [H.R. Rep. 98-53(I) at p. 2].[52]

The Shipping Act authorizes ocean common carriers to
enter into agreements, which must be filed with the FMC,
pursuant to which the carriers are authorized, among other
things, to "discuss, fix, or regulate transportation rates,
including through rates," and "to control, regulate, or prevent

---

[52]   A true and correct copy of H.R. Rep. 98-53[I] is attached
hereto as **Exhibit "K"** and is made a part hereof by reference.

- 57 -

competition in international ocean transportation." 46 U.S.C. §
40301 (a)(1) and (6). Ocean carriers who enter into agreements
on rates or to control or prevent competition other than
pursuant to agreements on file with the FMC violate the Shipping
Act. 46 U.S.C. § 41102(b).

Under the Shipping Act, the FMC, on complaint or on
its own motion, may investigate "any conduct or agreement" that
the FMC believes may violate the Shipping Act. 46 U.S.C.
§41302(a). The FMC may impose civil penalties of up to $5,000
for each violation or up to $25,000 if the violation was
willfully and knowingly committed, with each day of a continuing
violation constituting a separate violation. 46 U.S.C. §
41107(a).

The FMC has an ongoing investigation into the same
conduct in the RO/RO or specialized vehicle carrier vessel
industry alleged in the IPPs' complaints, and the FMC has
entered into compromise agreements with four of the six
defendants herein, imposing an aggregate of $4,225,000 in civil
fines for violations of the Shipping Act. The FMC has stated in
connection with its compromise agreement with two of defendants
-- which were assessed substantial civil penalties -- that

> [t]he compromise agreements resolved
> allegations with K Line and NYK Line
> violated provisions of the Shipping Act,
> including section 10(a) of the Shipping Act,
> 46 U.S.C. § 41102(b), by acting in concert

with other ocean common carriers with
respect to the shipment of automobiles and
other motorized vehicles by RO/RO or
specialized car carrier vessels, where such
agreement(s) had not been filed with the
Commission or become effective under the
Shipping Act. The compromise agreements
also addressed related activities and
violations. Commission staff alleged that
these practices persisted over a period of
several years and involved numerous U.S.
trade lanes, including from and/or to the
Far East, Europe, the Middle East and South
America.

Chairman Mario Cordero stated: "These
penalties underscore the seriousness with
which the Commission views the carriers'
obligation to file with the Commission any
agreement with other carriers. . . . [T]he
Commission is charged by Congress to oversee
the parties' operations and conduct under
such agreements. Investigations by our
Bureau of Enforcement as to additional
carriers implicated in similar agreement
activities are continuing at this time."[53]

[(emphasis supplied).]

The FMC has made similar statements in connection with its

compromise agreements with two other defendants.[54]

In addition to the FMC's power to act on its own, the

Shipping Act also provides that any person injured may file a

---

[53]   A true and correct copy of that release is attached hereto
as **Exhibit "L"** and is made a part hereof by reference.

[54]   On a Rule 12(b)(6) motion to dismiss, the Court may
consider matters as to which the Court may take judicial notice,
including the imposition of fines by a Government agency. City
of Edinburgh Council v. Pfizer, Inc., 754 F.3d 159, 166 (3rd
Cir. 2014), Marfut v. City of North Port, FL, 2009 WL 790111 at
*4, n.2 (M.D. Fla. Mar. 25, 2009).

complaint with the FMC.  46 U.S.C. § 41302(a).  The FMC may order reparations to an injured party for actual damages and up to double damages for certain violations.  46 U.S.C. § 41305. In addition, the FMC is authorized to sue in a United States District Court to enjoin a violation.

The Shipping Act preempts the IPPs' state law claims. The congressional objectives of uniformity in the regulation of international ocean shipping and of minimizing government involvement in shipping operations were at the roots of the Shipping Act.  These objectives were attained by vesting in the FMC exclusive jurisdiction over anticompetitive or collusive agreements, and by granting to the FMC broad remedial powers as to the form of such reparations, injunctions and civil penalties.  The FMC has exercised its jurisdiction against defendants and has collected substantial civil penalties from four of defendants for the very conduct alleged in the IPPs' complaints.

Now that the FMC has acted, the IPPs seek to pile on and subject international ocean shipping to the regulation of 26 different state antitrust acts, 24 state unfair competition acts, and the common law of at least 26 different states. Applying the patchwork of these myriad state statutes and common law to the unitary field of international ocean shipping would undermine the exclusive jurisdiction of the FMC, destroy the

legislatively intended uniformity of regulation of international ocean, and destroy the minimization of government involvement in international ocean shipping, each one of which was a major Congressional objective in enacting the Shipping Act.  The conclusion is inescapable:  all of the IPPs' state law claims should be dismissed on the basis of field preemption.

F.    THE IPPs FAIL TO STATE CLAIMS UNDER CERTAIN STATE ANTITRUST AND CONSUMER PROTECTION ACTS.

1.    State regulatory antitrust exemptions bar the IPPs' claims under the antitrust acts of Iowa, Michigan, Minnesota, Nevada, and New Hampshire, and the unfair trade practices act of Massachusetts.

The conduct of international ocean shipping to and from the United States is regulated by the FMC under the Shipping Act.  This federal regulation bars the IPPs' claims under the regulatory exemptions set forth in the antitrust acts of Iowa, Michigan, Minnesota, Nevada, and New Hampshire, and under the unfair trade practices act of Massachusetts.

The New Hampshire antitrust act exempts from its application any "[a]ctivities of and arrangements between persons" which are "regulated by a regulatory body acting under a federal or state statutory scheme or otherwise actively supervised by a regulatory agency."  N.H. Rev. Stat. Ann. § 356:8-a (emphasis supplied).  In Ben's Auto Body v. Teitelbaum, 2008 WL 5224420 (D. N.H. Dec. 15, 2008), a claim under the New

Hampshire antitrust act lodged against the employees of an insurance company was dismissed because "[p]lainly, the activities of the defendants and their employer, AAA Insurance, are supervised and regulated by the New Hampshire Insurance Commissioner." Id. at *5.

Likewise, the Minnesota antitrust act contains an exemption to "actions or arrangements otherwise permitted, or regulated by any regulatory body or officer acting under statutory authority of this state or the United States." Minn. Stat. Ann. § 325D.55 (emphasis supplied). In J.V.B. Enterprises, Inc. v. City of Marshall, 1990 WL 163106 (Minn. App. Oct. 30, 1990), summary judgment was entered against a claim brought under the Minnesota antitrust act arising from the denial of a liquor license because the conduct was regulated by the city. Id. at *1. Materially the same regulatory exemptions are contained in the Iowa antitrust act, Iowa Code § 553.6(4); the Michigan antitrust act, Mich. Comp. Laws Ann. § 445.774(5); the Nevada antitrust act, Nev. Rev. Stat. § 598A.040(3)(a) and (c); and the Massachusetts unfair trade practices act, Mass. Gen. Laws, ch. 93A § 3.

The IPPs' claims clearly fall within the regulatory exemptions of these acts; those claims must be dismissed.

2.   **The consumer protection acts of Montana and South Carolina and the Illinois antitrust act bar class action lawsuits.**

The IPPs' class action claims are barred by the consumer protection acts of Montana and South Carolina, and by the Illinois antitrust act:

**Montana:**   The Montana Consumer Protection Act provides that consumers "may bring an individual but not a class action." Mont. Code Ann. § 30-14-133(1).   In In re DRAM Antitrust Litig., supra, 516 F. Supp. 2d at 1103-1104, indirect purchasers were barred from maintaining a class action under the Montana consumer protection act.   Accord In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 84 (D. Mass. 2005); In re SRAM Antitrust Litig., supra.

**South Carolina:**   The South Carolina Unfair Trade Practices Act provides that persons "may bring an action individually, but not in a representative capacity, to recover actual damages." S.C. Code Ann. § 39-5-140(a).   Here, too, indirect purchasers cannot maintain a class action under the South Carolina Unfair Trade Practices Act.   In re DRAM Antitrust Litig., supra, 516 F. Supp. 2d at 1103-1104; see also Dema v. Tenet Physician Services-Hilton Head, Inc., 678 S.E. 2d 430 (S.C. 2009) (holding that class actions are forbidden under S.C. unfair trade practices act); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417 (4th Cir. 2003) (same).

- 63 -

**Illinois:**  The Illinois antitrust act similarly does not allow an indirect purchaser plaintiff to maintain an antitrust claim as a class action.  740 Ill. Comp. Stat. § 10/7(2); In re Digital Music Antitrust Litig., supra, 812 F. Supp. 2d at 415-16 (dismissing putative class action under Illinois antitrust law).

### 3. The IPPs' complaints fail to comply with the requirements of the Massachusetts Consumer Protection Act.

#### (a) The IPPs' fail to allege pre-suit service of a written demand letter as required by the Massachusetts Consumer Protection Act.

The Massachusetts Consumer Protection Act ("MaCPA") explicitly requires that, at least 30 days before filing an action under that act, the plaintiff must send any prospective defendant "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."[55]  Mass. Gen. Laws ch. 93A, § 9(3).  The purposes that undergird the requirement of a demand letter are salutary and reasonable:  to encourage settlement and to limit the damages the plaintiff can recover to

---

[55]    Some, but not all, defendants have received notice letters purportedly issued pursuant to the MaCPA; they were deficient and, hence, ineffective as a matter of law.  That said, at issue is the sufficiency of the complaints, and no group of IPPs -- neither the End-Payors, nor the Auto Dealers, nor the Truck Centers -- alleges compliance with this statutorily required pre-condition for recovery.

any reasonable settlement offer that was tendered in response to the demand letter and rejected by the plaintiff.  Ibid.

"The statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit,'" which "must be alleged in the plaintiff's complaint." Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975)).  In In re New Motor Vehicles Canadian Export Antitrust Litig., 350 F. Supp. 2d 160 (D. Me. 2004), the claims of indirect purchasers of motor vehicles under the MaCPA were dismissed for failure to allege that the plaintiff furnished the required demand letter to the defendants.  Id. at 188-189.

> **(b)** **The Auto Dealers' and the Truck Centers' Massachusetts Consumer Protection Act claims must be dismissed.**

In common with most other states, the Massachusetts Antitrust Act, Mass. Gen. Laws Ch. 93, must be construed in accordance with judicial interpretation of comparable federal antitrust statues; as a result claims by indirect purchasers under the Massachusetts Antitrust Act are barred under in Illinois Brick.  Ciardi v. F. Hoffmann-La Roche, Ltd., 762 N.E.2d 303, 308 (Mass. 2002).

Rather than asserting claims under the Massachusetts Antitrust Act, the IPPs assert claims under the MaCPA.  The Auto Dealers and the Truck Centers, however, are businesses; their

claims arise under section 11 of the MaCPA, which has not been extended to indirect purchasers.  Their claims must be dismissed.

An entity engaged "in the conduct of trade or commerce" may bring a claim under section 11 of the MaCPA. Mass. Gen. Laws Ch. 93A, § 11.  Any person "other than a person entitled to bring action" under § 11 may bring a claim under § 9 of the MaCPA.  Mass. Gen. Laws Ch. 93A, § 9.  "By their terms . . . the two sections of chapter 93A that create private rights of action are mutually exclusive . . . section 11 affords no relief to consumers and, conversely, section 9 affords no relief to persons engaged in trade or commerce."  Cont'l Ins. Co. v. Bahnan, 216 F.3d 150, 156 (1st Cir. 2000).

Under section 11, "the court shall . . . be guided in its interpretation of unfair methods of competition by . . . the Massachusetts Antitrust Act."  Mass. Gen. Laws Ch. 93A, § 11. Under that paradigm, "the Illinois Brick approach is taken under the Massachusetts Antitrust Act and [section 11]."  Ciardi, supra, 762 N.E. 2d at 321; In re Auto. Parts Antitrust Litig., 12-MD-02311, 2013 WL 2456612, at *29 (E.D. Mich. June 6, 2013) (dismissing auto dealer claims under MaCPA); see also In re Cathode Ray Tube (CRT) Antitrust Litig., 2014 WL 1088256, at *3 (N.D. Cal. Mar. 13, 2014) ("[A] corporation engaged in commerce

- 66 -

whose suit is based on indirect purchases will not have standing under Section 11.").

The Auto Dealers and the Truck Centers are dealerships engaged in the trade of vehicle sales, (Auto Dealer Compl. ¶¶ 21-43; Truck Center Compl. ¶¶ 21-43), and explicitly assert claims under section 11, (Auto Dealer Compl. ¶ 252(b) and (f); Truck Center Compl. ¶ 234(b) and (f)). Because the Auto Dealers' and the Truck Centers' claims arise under section 11, and because they are indirect purchasers, their claims are barred under Illinois Brick.

> ### 4. The Auto Dealers and the Truck Centers lack standing to sue under the Vermont consumer protection act.

The Vermont consumer protection act only authorizes the institution of private damages suits by "consumers." 9 Vt. Stat. Ann. § 2461(b). It defines "consumers" as

> any person who purchases . . . goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or . . . for the use or benefit of his or her business or in connection with the operation of his or her business.
>
> [9 Vt. Stat. Ann. § 2451(a).]

Persons who or businesses that purchase goods or services for resale have no standing to sue under Vermont's act. New England Surfaces v. E.I. DuPont De Nemours and Co., 460 F. Supp. 2d 153, 162 (D. Maine), aff'd, 546 F.3d 1 (1st Cir. 2008).

It goes without saying that, by definition, the Auto Dealers and the Truck Centers lack standing to sue under the Vermont Act.

5.  **Price fixing and other alleged antitrust violations cannot be the basis for claims under the consumer protection acts of Arkansas, Hawaii, New York, or Rhode Island.**

The Arkansas consumer protection statute, Ark. Code Ann. § 4-88-101 et seq., prohibits "unconscionable, false or "deceptive acts or practices" in business, commerce or trade. Ark Code Ann. § 4-88-107(a)(10). In In re TFT-LCD (Flat Panel) Antitrust Litigation, 586 F. Supp. 2d 1109 (N.D. Cal. 2008), the Court dismissed the price fixing claims of indirect purchasers of thin film transistor liquid crystal display (TFT-LCD) panels and products under the Arkansas act; it reasoned that the conduct prohibited under the Arkansas act required misleading and deceptive conduct, which was not present in a price fixing conspiracy, and the Arkansas act did not impose any duty to disclose existence of a price fixing agreement. Id. at 1125. Accord In re TFT-LCD (Flat Panel) Antitrust Litig., 787 F. Supp. 2d 1036, 1041-1042 (N.D. Cal. 2011); In re SRAM Antitrust Litig., supra; In re Graphics Processing Units Antitrust Litig., supra, 527 F. Supp. 2d at 1011.

The Hawaii unfair trade practices act prohibits below cost pricing with the intent to destroy competition and price

discrimination.  Haw. Rev. Stat. §§ 480-1,480-3.  In In re
Polyurethane Foam Antitrust Litigation, 799 F. Supp. 2d 777, 787
(N.D. Ohio 2011), the Court dismissed the indirect purchaser
plaintiffs' price fixing claim under the Hawaii act because it
did not apply to price fixing.

The New York consumer protection act, N.Y. Gen. Bus.
Law § 349, prohibits deceptive acts or practices in business.
In New York v. Daicel Chemical Industries, Ltd., 42 A.D. 3d 301
(N.Y. App. Div. 2007), a § 349 claim instituted on behalf of
indirect purchasers of food additives based on a price fixing
conspiracy was dismissed because it did not involve the
requisite consumer deception.  Accord In re Aftermarket Filters
Antitrust Litig., 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010)
(price fixing conspiracy does not constitute deceptive conduct
under N.Y. Gen. Bus. Law § 349); In re Auto. Refinishing Paint
Antitrust Litig., 515 F. Supp. 2d 544 (E.D. Pa. 2007); In re
Digital Music Antitrust Litig., supra, 812 F. Supp. 2d at 410
("Anticompetitive conduct that is not premised on consumer
deception is not within the ambit of the statute.").

The Rhode Island consumer protection act defines
"unfair methods of competition and unfair or deceptive acts or
practices" to mean any one or more of 19 specific prohibited
practices, R.I. Gen. Laws § 6-13.1-1.  In In re DRAM Antitrust
Litig., supra, the Court dismissed the claims of indirect

purchasers under the Rhode Island act based on alleged price fixing because the price fixing and conspiracy did not fall within the enumerated 19 types of conduct prescribed by the Act. 516 F. Supp. 2d at 1116.  Accord In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1161 (N.D. Cal. 2009).

> **6.   The IPPs fail to state claims under the North Carolina consumer protection act because they fail to allege a substantial in-state injury.**

The North Carolina Consumer Protection Act, N.C. Gen. Stat. Ann. § 75-1.1 et seq., creates jurisdiction only over a limited category of claims:  where the effect of the defendants' conduct is a "substantial" in-state injury and not merely an "incidental" in-state injury.  In re Refrigerant Compressors Antitrust Litig., supra.  In In re Refrigerant Compressors, the Court dismissed the claims -- asserted under the North Carolina Consumer Protection Act -- of indirect purchasers of compressors alleging a world-wide conspiracy to fix the prices and to allocate customers and markets for compressors; it did so because any effect of the world-wide conspiracy in North Carolina was merely an incidental in-state injury.

> **7.   The Shipping Act bars the IPPs' injunctive and damages claims.**

Federal law precludes private damages or injunction actions under the federal antitrust laws for conduct which violates the Shipping Act, 46 U.S.C. § 40307(d).

- 70 -

### (a)   The Shipping Act bars injunctive claims under the Sherman and Clayton Acts.

For the reasons advanced in defendants' brief in support of their motion to dismiss the complaint of the direct purchasers/freight forwarders, which is incorporated by reference, to the extent that Count One of the IPPs' respective complaints seek an injunction under the Sherman and Clayton Acts, that relief is unavailable; it is barred by federal law and the request must be dismissed.

### (b)   The IPPs' damages claims likewise are barred by the Shipping Act.

By the same token, state harmonization statutes and precedent require that the state antitrust acts claimed in Count Two of each of the IPPs' separate complaints must be or should be construed to likewise preclude private damages actions. For example, Section 14(2) of the Michigan Antitrust Act provides:

> (2) It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes. . . .

[Mich. Comp. Laws Ann. § 445.784(2).]

The Michigan Comment to its antitrust act provides:

> The numerous exclusions and exemptions to the federal antitrust laws, as they may exist or be interpreted at any time, are to be read into this Act by reason of the Supremacy Clause and Section 14(2) of this Act. Thus, it is not necessary to attempt

- 71 -

to list every exemption, *e.g.*, professional baseball, state action, or to delineate their scope.

[Comment to Mich. Comp. Laws Ann. § 445.774.]

Defendants earlier provided tables listing those states with state antitrust act harmonization provisions or case law requiring or stating that the antitrust acts of the relevant states should be harmonized with the federal antitrust laws and precedent.[56] For those reasons, the federal exclusion precluding private antitrust damages and injunction actions for conduct prohibited by the Shipping Act should be applied to these state antitrust acts.

### 8. The Tennessee antitrust act only applies to goods, and not to services.

The Tennessee Antitrust Act provides:

**Trusts, etc., lessening competition or controlling prices unlawful and void.** All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of <u>articles</u> imported into this state, or in the manufacture or sale <u>of articles</u> of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any

---

56    <u>See</u> **Exhibits "D"** and **"F"**, <u>supra</u>.

<u>such product or article</u>, are declared to be against public policy, unlawful, and void.

[Tenn. Code Ann. § 47-25-101 (emphasis supplied).]

That statute applies only to goods, and not to services. <u>Baird Tree Company, Inc. v. City of Oak Ridge</u>, 2008 WL 2510581 (Tenn. Ct. App. June 24, 2008). Because the IPPs' claims purport to pertain to vehicle carrier <u>services</u>, they fail to state a claim under the Tennessee Antitrust Act.

### 9.   The Oregon and South Carolina antitrust laws also do not permit End-Payors' claims.

The End-Payors' claims under the antitrust laws of Oregon and South Carolina should be dismissed because neither state permits indirect purchasers to sue for damages. <u>See In Re Microsoft Antitrust Litigation</u>, <u>supra</u>, 401 <u>F. Supp.</u> 2d at 463; <u>Daraee v. Microsoft Corp</u>., 2000 WL 33187306, at *1 (Or. Cir. Ct. June 27, 2000).

### G.   THE IPPs' RESPECTIVE COMPLAINTS FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF.

In Count One of their respective complaints, the IPPs seek an injunction under the Clayton Act, 15 <u>U.S.C.</u> § 26. The Third Circuit has held that

[t]o establish standing under Section 16, Appellants must "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur."

[In re N.J. Title Ins. Litig., 683 F.3d 451, 460 (3rd Cir. 2012) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969)).]

A complaint for injunctive relief under the Clayton Act should be dismissed where "plaintiffs have provided no factual basis for their claim that there is a continuing violation on the part of defendants." In re Nifedipine Antitrust Litiga., 335 F. Supp. 2d 6, 17-18 (D.D.C. 2004).

The IPPs' allegations fail to establish the significant threat required to justify an injunction. They allege that, on September 6, 2012, worldwide antitrust authorities conducted coordinated dawn raids on the defendants' premises in connection with the vehicle carrier services alleged in the complaints [End-Payors Compl. ¶ 6; Auto Dealers Compl. ¶ 6; Truck Centers Compl. ¶ 4]; and that the dawn raids have resulted in fines and surcharge payment orders against several of defendants of at least $241.9 million dollars. [End-Payors Compl. ¶¶ 7-8; Auto Dealers Compl. ¶¶ 7-8; Truck Centers Compl. ¶¶ 5, 7]. Crucially, no anticompetitive activity is alleged after the 2012 dawn raids. [End-Payors Compl. ¶ 145; Auto Dealers Compl. ¶ 132; Truck Centers Compl. ¶ 132].

The IPPs' separate complaints also refer to proceedings by the Japan Fair Trade Commission ("JFTC") in which a cease and desist order was entered against several of

defendants prohibiting the continuation of the conduct alleged before the JFTC and requiring those defendants to establish effective antitrust compliance and training programs. [End-Payors Compl. ¶ 8; Auto Dealers Compl. ¶ 8; Truck Centers Compl. ¶ 7]. In like circumstances, it has been adjudged error for a trial court to find a threat of impending harm when a consent decree already had been entered. See Ellis v. Gallatin Steel Co., 390 F.3d 461, 476 (6th Cir. 2004); see also Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251, 261, 92 S. Ct. 885, 89-91, 31 L. Ed. 2d 184, 192 (1972); Mid-West Paper Prods. Co. v. Cont'l Group, Inc., 596 F.2d 573, 594 n.83 (3d Cir. 1979) ("[I]f a defendant is already enjoined from engaging in the illegal activities, it would be wasteful to require it to defend another suit seeking to enjoin the same activities once again[.]").

There is no credible threat of anticompetitive activity here; the IPPs' requests for injunctive relief must be denied.


## IV.   CONCLUSION.

The IPPs' complaints are deficient in several fundamental respects:

1.   the IPPs lack constitutional standing to assert their claims;

2.   the IPPs have not suffered antitrust injury and lack antitrust standing to assert claims for

alleged "indirect" purchasers of vehicle carrier services;

3.    the IPPs lack standing to assert a substantial number of their state law claims;

4.    The unjust enrichment claims must be dismissed;

5.    the IPPs' state law claims are preempted by the federal Shipping Act and the exclusive jurisdiction of the Federal Maritime Commission;

6.    The IPPs fails to state claims under certain state antitrust and consumer protection acts; and,

7.    The IPPs' respective complaints fail to state a claim for injunctive relief.

None of these deficiencies is susceptible to a cure and, individually or in the aggregate, these deficiencies require that the complaints be dismissed.

**WHEREFORE**, for the foregoing authority, arguments and reasons, defendants respectfully pray that the Court dismiss the complaints filed by the Auto Dealers, the Truck Centers and the End-Payors.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Respectfully submitted,

**DATED:**   October 13, 2014

Roberto A. Rivera-Soto
Stephen J. Kastenberg
Jason A. Leckerman
**BALLARD SPAHR LLP**
**A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP**
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002-1163
Telephone:  (856) 761-3400
riverasotor@ballardspahr.com
kastenberg@ballardspahr.com
leckermanj@ballardspahr.com

Benjamin Holt
**HOGAN LOVELLS US LLP**
Columbia Square
555 Thirteenth St., N.W.
Washington, D.C. 20004
Telephone:  (202) 637-5600
benjamin.holt@hoganlovells.com

*Attorneys for defendants*
*Wallenius Wilhelmsen Logistics AS,*
*Wallenius Wilhelmsen Logistics*
*America LLC, and EUKOR Car*
*Carriers, Inc.*

/s/ John R. Fornaciari
John R. Fornaciari
Erik J. Raven-Hansen
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C. 20036
Telephone:  202-861-1612
jfornaciari@bakerlaw.com
eravenhansen@bakerlaw.com

*Attorneys for defendants*
*Nippon Yusen Kabushiki Kaisha and*
*NYK Line North America Inc.*

- 77 -

/s/ Melissa A. Maxman
Melissa A. Maxman
COZEN O'CONNOR PC
1627 I Street, NW - Suite 1100
Washington, D.C. 20006
Telephone: 202-912-4873
mmaxman@cozen.com

Kevin M. Kelly
COZEN O'CONNOR PC
1900 Market Street
Philadelphia, PA 19103
Telephone: 215-665-5570
kmkelly@cozen.com

*Counsel for defendants*
*Höegh Autoliners AS and*
*Höegh Autoliners, Inc.*


/s/ Mark W. Nelson
Mark W. Nelson
Jeremy C. Calsyn
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: 202-974-1500
mnelson@cgsh.com
jcalsyn@cgsh.com

*Counsel for defendants*
*Kawasaki Kisen Kaisha, Ltd. and*
*"K" Line America, Inc.*


/s/ James L. Cooper
James L. Cooper
Anne P. Davis
Danielle M. Garten
Adam M. Pergament
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
james.cooper@aporter.com
anne.davis@aporter.com
danielle.garten@aporter.com

adam.pergament@aporter.com

*Attorneys for Defendants Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk Shipping (U.S.A.), Inc., and World Logistics Service (U.S.A.) Inc.*

/s/ Steven F. Cherry
Steven F. Cherry
Todd F. Braunstein
John A. Hare
WILMER, CUTLER, PICKERING, HALE & DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Steven.Cherry@wilmerhale.com
Todd.Braunstein@wilmerhale.com
John.Hare@wilmerhale.com

*Attorneys for Defendants Compañía Sud Americana de Vapores, S.A. and CSAV Agency, LLC*

## CERTIFICATE OF SERVICE

I certify that, in accordance with the Court's directions and on the date listed below, I caused true and correct copies of defendants' notice of motion to dismiss the indirect purchasers' complaints, the consolidated brief of defendants in support of their motion to dismiss the indirect purchasers' complaints, the exhibits thereto, and a proposed form of order to be served electronically addressed to:

Hollis Salzman
Meegan Hollywood
ROBINS, KAPLAN, MILLER & CIRESI, LLP
601 Lexington Avenue - Suite 3400
New York, New York 19922
hsalzman@rkmc.com
mfhollywood@rkmc.com

Terrell W. Oxford
Warren T. Burns
Daiel H. Charest
Omar Ochoa
SUSMAN GODFREY LLP
901 Main Street - Suite 5100
Dallas, Texas 75202-3775
toxford@sussmangodfrey.com
wburns@sussmangodfrey.com
dcharest@sussmangodfrey.com
oochoa@sussmangodfrey.com

Joseph W. Cotchett
Steven N. Williams
COTCHETT, PITRE & McCARTHY, LLP
Ssan Francisco Airport Office Center
840 Malcolm Road - Suite 200
Burlingame, California 29010
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

*Interim lead co-counsel for the End-Payors*

James E. Cecchi
Lindsay H. Taylor
**Carella Byrne Cecchi Olstein Brody & Agnello, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
JCecchi@carellabyrne.com
LTaylor@carellabyrne.com

*Interim liaison counsel for the End-Payors*

\* \* \* \* \*

Jonathan W. Cuneo
Joel Davidow
Katherine Van Dyck
Daniel Cohen
**Cuneo Gilbert & LaDuca, LLP**
507 "C" Street, NE
Washington, DC 20002
JonC@cuneolaw.com
Joel@cuneolaw.com
kvandyck@cuneolaw.com
danielc@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
Sterling Starns
**Barrett Law Group, P.A.**
404 Court Square
P.O. Box 927
Lexington, Mississippi 39095
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
bherrington@barrettlawgroup.com
sstarns@barrettlawgroup.com

Shawn M. Raiter
**Larson • King, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, Minnesota 55101
sraiter@larsonking.com

*Interim lead co-counsel for the Auto Dealers*

- 2 -

Peter S. Pearlman
COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
Park 80 Plaza West – One
250 Pehle Avenue – Suite 401
Saddle Brook, New Jersey 07663
psp@njlawfirm.com

*Interim liaison counsel for the Auto Dealers*

\* \* \* \* \*

Eric R. Breslin
DUANE MORRIS LLP
One Riverfront Plaza Suite 1800
1037 Raymond Boulevard
Newark, New Jersey 07102
ebreslin@duanemorris.com

*Interim lead counsel for the Truck Centers*

**DATED:**     October 13, 2014     _____
Roberto A. Rivera-Soto