## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br>Vehicle Carrier Services<br>Antitrust Litigation<br><br>_____<br><br>*This Document Relates to*<br>*All Direct Purchaser Actions* | Master Docket No.: 13-cv-3306<br>(MDL No. 2471) |

## DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO HÖEGH DEFENDANTS' MOTION TO DISMISS THE DIRECT PURCHASERS' COMPLAINT

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ ii

I.    Facts ............................................................................................................2

II.   Argument .....................................................................................................2

     A.    DPPs' Claims Against Höegh Are Not Barred by the Statute of
          Limitations ...................................................................................2

     B.    DPPs Sufficiently Allege Höegh's Participation in the
          Conspiracy ...................................................................................8

          1.    Legal Standard ................................................................9

          2.    DPPs' Allegations Are Sufficient to Suggest that Höegh
                Participated in the Conspiracy ..................................11

     C.    DPPs Have Provided Sufficient Notice to Höegh .............................17

III.   Conclusion .................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*In re Aftermarket Filters Antitrust Litig.*,
No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ........................9, 10

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*,
No. 2:05-cv-04376, 2014 WL 3695329 (D.N.J. July 24, 2014)...........................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................9

*In re Aspartame Antitrust Litig.*,
No. 2:06-CV-1732, 2007 WL 5215231 (E.D. Pa. Jan. 18, 2007) ...............4, 6, 7

*BanxCorp v. Bankrate Inc.*,
No. 07- 3398, 2012 WL 3133786 (D.N.J. July 30, 2012) ...................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................9, 10, 17

*Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*,
641 F. Supp. 271 (E.D. Pa. 1986) .........................................................................4

*In re Blood Reagents Antitrust Litig.*,
756 F. Supp. 2d 623 (E.D. Pa. 2010)...................................................................13

*In re Catfish Antitrust Litig.*,
826 F. Supp. 1019 (N.D. Miss. 1993)....................................................................4

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962)............................................................................................10, 13

*In re Craftmatic Sec. Litig.*,
890 F.2d 628 (3d Cir. 1989) ..............................................................................3, 7

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) .............................................................................16

*In re Electr. Carbon Prods. Antitrust Litig.*,
333 F. Supp. 2d 303 (D.N.J. 2004)......................................................................6, 8

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ...........................................................................15, 16

*In re Fine Paper Antitrust Litig.*,
685 F.2d 810 (3d Cir. 1982) ...................................................................................10

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................................12

*Hinds Cnty. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) .....................................................................4

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ...................................................................10, 14, 16

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002) .....................................................................................2

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
998 F.2d 1144 (3d Cir.1993) ...........................................................................2, 3, 7

*In re Magnesium Oxide Antitrust Litig.*,
No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ..........................*passim*

*Meijer, Inc. v. 3M*,
No. 04-5871, 2005 U.S. Dist. LEXIS 13995 (E.D. Pa. July 13, 2005) ...............7

*In re Mercedes-Benz Anti-Trust Litig.*,
157 F. Supp. 2d 355 (D.N.J. 2001) .............................................................*passim*

*New York v. Hendrickson Bros.*,
840 F.2d 1065 (2d Cir. 1988) ...................................................................................4

*In re Nine West Shoes Antitrust Litig.*,
80 F. Supp. 2d 181 (S.D.N.Y. 2000) .......................................................................8

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-md-2143, 2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3,
2011) .........................................................................................................................15

*In re OSB Antitrust Litig.*,
No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ....................................12

*In re Packaged Ice Antitrust Litig.*,
    723 F. Supp. 2d 987 (E.D. Mich. 2010) ...........................................................16

*Pennsylvania v. Milk Indus. Mgmt. Corp.*,
    812 F. Supp. 500 (E.D. Pa. 1992) .......................................................................4

*In re Polyurethane Foam Antitrust Litig.*,
    799 F. Supp. 2d 777 (N.D. Ohio 2011) .............................................................17

*Precision Associates v. Panalpina World Transport (Holding) Ltd.*,
    No. 08-CV-42, 2011 U.S. Dist. LEXIS 51330 (E.D.N.Y. Jan. 4, 2011)............15

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    566 F. Supp. 2d 363 (M.D. Pa. 2008).................................................................13

*In re Processed Egg Products Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011).................................................................13

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ..............................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008).............................................................19

*In re Vitamins Antitrust Litig.*,
    320 F. Supp. 2d 1 (D.D.C. 2004).......................................................................11

STATUTES

Fed. R. Civ. P. 9 ..........................................................................................................3, 7

Fed. R. Civ. P. 12 ............................................................................................................9

Sherman Antitrust Act, 15 U.S.C. § 1 ..............................................................*passim*

Defendants Höegh Autoliners AS and Höegh Autoliners, Inc. (collectively, "Höegh")[1] argue that the Court should dismiss Direct Purchaser Plaintiffs' ("DPPs") Consolidated Amended Class Action Complaint ("CAC").  Höegh contends that DPPs' claims are barred by the statute of limitations; that DPPs do not sufficiently allege Höegh's participation in a conspiracy with the remaining Defendants;[2] and that DPPs have failed to provide notice of the alleged misconduct to the individual Höegh defendants.  *See* Suppl. Br. of Höegh Defendants in Supp. of Their Mot. to Dismiss the Direct Purchasers' Compl., Oct. 13, 2014 ("Höegh Br.").  Höegh is incorrect.  DPP have plausibly alleged Höegh's membership in a conspiracy involving all Defendants, including by alleging meetings and agreements involving Höegh and all the other Defendants.  DPPs also sufficiently allege that the statute of limitations should be tolled as to all Defendants, including Höegh.  And DPPs have provided adequate notice to the Höegh defendants, including allegations of specific Höegh employees involved in the conspiratorial activity.  Höegh's motion should be denied.

---

[1] DPPs initially also named Höegh Autoliners Holdings AS, Autotrans AS, and Alliance Navigation LLC as part of the Höegh group of defendants, but agreed to dismiss these entities without prejudice.  *See* Dkt. No. 169.

[2] DPPs utilize the abbreviations contained in the CAC when discussing the other Defendants.  *See* CAC ¶¶ 16-21.

## I.   <u>FACTS</u>

DPPs respectfully refer the Court to the factual recitation in Direct Purchaser Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motion to Dismiss the Direct Purchasers' Complaint.

## II.   <u>ARGUMENT</u>

### A.   DPPs' Claims Against Höegh Are Not Barred by the Statute of Limitations

DPPs' claims against Höegh are not barred by the statute of limitations. DPPs have sufficiently invoked fraudulent concealment, which tolls the statute of limitations against Höegh and the other Defendants.  DPPs adequately allege that the conspiracy was inherently self-concealing and also that Höegh's co-conspirators engaged in affirmative acts of concealment.  Even if the Court finds this invocation unpersuasive, DPPs adequately allege continuing participation by Höegh during the limitations period.

While the Sherman Act contains a four year statute of limitations, "it is well established that the doctrine of fraudulent concealment tolls the limitation period when a plaintiff's cause of action has been obscured by the defendant's conduct." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002).  DPPs may toll the statute of limitations against Höegh by showing "(1) an affirmative act of concealment; (2) which misleads or relaxes the plaintiff's inquiry, who (3) exercised due diligence in investigating his cause of action."  *In re Lower Lake*

*Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1178-79 (3d Cir.1993) (citation omitted); *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *20 (D.N.J. Oct. 20, 2011) (citing *Lower Lake Erie*).  Courts also articulate this standard as requiring a plaintiff to "show 'active misleading' by defendants and 'reasonable diligence' by plaintiffs in perceiving the injury to their rights."  *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 368 (D.N.J. 2001).  While some particularity in pleading is required, Federal Rule of Civil Procedure 9(b) does not require plaintiffs to plead facts that, by the nature of the alleged fraud, are within the defendants' control.  *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989) ("[C]ourts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.").  "[T]he doctrine must remain true to its equitable roots and its overarching rationale, that 'sophisticated defrauders' not be permitted to profit by their own misconduct and an inflexible application of the statute of limitation."  *Mercedes-Benz*, 157 F. Supp. 2d at 368 (citing *Craftmatic*, 890 F.2d at 645).

Plaintiffs may satisfy the "active misleading" prong by "show[ing] one or more affirmative acts of concealment, but those acts may be part and parcel to, or in furtherance of, the conspiracy." *Magnesium Oxide*, 2011 WL 5008090, at *21. Plaintiffs also need not allege affirmative acts of concealment by each defendant, because an alleged affirmative act of concealment by one co-conspirator is

chargeable to all co-conspirators. *Mercedes-Benz*, 157 F. Supp. 2d at 372.  Even without alleging any affirmative acts of concealment, plaintiffs may also satisfy this prong by alleging facts sufficient to show that the conspiracy is "inherently self-concealing." *See*, *e.g.*, *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732, 2007 WL 5215231, at *5 (E.D. Pa. Jan. 18, 2007); *Mercedes–Benz*, 157 F. Supp. 2d at 371; *Pennsylvania v. Milk Indus. Mgmt. Corp.*, 812 F. Supp. 500 (E.D. Pa. 1992); *Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*, 641 F. Supp. 271, 273-74 (E.D. Pa. 1986).  Courts have repeatedly found that antitrust conspiracies are inherently self-concealing.  *See*, *e.g.*, *Mercedes–Benz*, 157 F. Supp. 2d at 372 ("Regardless of whether concealment is an essential element of price-fixing, secrecy is its natural lair."); *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009); *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1084 (2d Cir. 1988); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1030 (N.D. Miss. 1993).

DPPs have satisfied the "active misleading" prong.  First, Defendants' conspiracy was self-concealing.  As DPPs pleaded in their complaint, conspiracies like the one here are inherently self-concealing.  *See* CAC ¶ 84.[3]  If a conspiracy is

---

[3] For the reasons explain in Section II.B.2, even if the Court finds that DPPs cannot recover damages from price fixing and allocation of customers and markets, allegations regarding such conduct are still relevant to demonstrating the single

to be successful at restricting supply or fixing prices or allocating customers, the participants must ensure that customers do not discover the existence of the conspiracy. Defendants could not have escaped scrutiny by their customers or competition authorities if their agreement to restrain trade had been known. Indeed, government regulators apparently were not aware of Defendants' misconduct until a leniency applicant came forward. The self-concealing nature of Defendants' conspiracy eliminates the need for DPPs to allege active concealment.

Second and independently, Plaintiffs have, nevertheless, pleaded acts of active concealment by Defendants. Defendants affirmatively concealed their conspiracy by repeatedly and falsely claiming that the Vehicle Carrier Services market was competitive, creating the illusion that prices were rising because of increased demand and tight supply—an affirmative effort to shield the truth that prices were rising as a result of Defendants' conspiracy. *See* CAC ¶ 88 (alleging 27 different statements by Defendants designed to mislead theirs customers regarding the competitive nature of the market for Vehicle Carrier Services). Höegh is incorrect that DPPs must allege specific acts of active concealment by Höegh because the many alleged acts of active concealment by Höegh's co-

---

conspiracy DPPs have alleged and thus to resolving Defendants' motions to dismiss.

conspirators are also chargeable to Höegh.[4]  Höegh does not even address these many alleged acts of active concealment, and—tellingly—no other Defendant has argued that DPPs have insufficiently invoked fraudulent concealment.  In addition, Höegh's alleged participation in the conspiracy—meals and other intimate meetings with executives of other Defendants, *see* CAC ¶¶ 58, 59, 62, 64—was by its nature designed to conceal Höegh's activity.  *See*, *e.g.*, *In re Electr. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 316 (D.N.J. 2004) (covert meetings and communications relevant to fraudulent concealment analysis); *Magnesium Oxide*, 2011 WL 5008090, at *21 (affirmative acts of concealment "may be part and parcel to, or in furtherance of, the conspiracy").

Moreover, to require, before discovery, extensive detail about every act of concealment would undermine the equitable tolling doctrine entirely.  *See Mercedes-Benz*, 157 F. Supp. 2d at 368-73 (explaining the long history and continued viability of doctrine of self-concealing antitrust conspiracy and its relationship to pleading requirements); *Aspartame*, 2007 WL 5215231, at *3-6. Thus, "[a]t this stage of the case, plaintiffs are required to provide sufficient facts to show that the claims against defendants are not baseless and that further

---

[4] As explained in more detail below, DPPs have sufficiently pleaded that Höegh was part of Defendants' conspiracy, including multiple specific examples of Höegh's participation in the conspiracy.

information is exclusively within the defendants' control." *Id*. at *3 (citing *Craftmatic*, 890 F.2d at 646).  DPPs have done so here.[5]

Even if these allegations were insufficient to establish fraudulent concealment—and DPPs respectfully submit that they are not—Höegh cannot escape this litigation.  The "Supreme Court has considered and rejected the argument that, in the context of a defendant's continuing violation of the Sherman Act, the statute of limitations runs from the violation's earliest impact on a plaintiff." *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1171 (3d Cir. 1993).  Every time a customer purchases a product at an artificially inflated price an antitrust violation occurs and a cause of action accrues, regardless of when the conspiracy was commenced. *Meijer, Inc. v. 3M*, No. 04-5871, 2005 U.S. Dist. LEXIS 13995, at *8-9 (E.D. Pa. July 13, 2005).  Thus, as long as *any* of DPPs' purchases occurred within the statute of limitations, the timeliness of this action does not rest upon DPPs' fraudulent concealment allegations.  As even Höegh acknowledges, *see* Höegh Br. at 9, DPPs allege that Höegh's involvement in the conspiracy continued into the four years before the filing of the CAC.  *See* CAC ¶ 62(f) (discussing an agreement between executives of MOL and Höegh in

---

[5] DPPs' allegations in this case are far more detailed than numerous other complaints that have withstood motions to dismiss. *See*, *e.g.*, *Mercedes-Benz*, 157 F. Supp. 2d at 372 (listing cases where relatively generic allegations of fraudulent concealment were found sufficient to withstand scrutiny under Fed. R. Civ. P. 9(b)).

November 2011 to fix rates for Vehicle Carrier Services from New York to West Africa).  Höegh improperly tries to characterize this meeting as though it reflected a single conspiracy; as discussed in the following section, such dismemberment of the conspiracy allegations is contrary to the law.  *See*, *e.g.*, *Magnesium Oxide*, 2011 WL 5008090, at \*11.  Accordingly, even if DPPs' fraudulent concealment allegations were insufficient to toll the statute of limitations, Höegh cannot escape the litigation, and would still be liable for damages resulting from purchases within the statute of limitations.[6]

### B.   DPPs Sufficiently Allege Höegh's Participation in the Conspiracy

DPPs sufficiently allege that Höegh, along with the other Defendants, participated in a single, unified conspiracy to restrict supply and otherwise restrain competition for Vehicle Carrier Services for shipments to and from the United States.  DPPs also allege specific instances of agreement and coordination involving Höegh and the other Defendants.  These allegations are sufficient to state a plausible claim for relief against Höegh.

---

[6] Hoegh does not challenge that DPPs sufficiently pleaded ignorance of Defendants' antitrust violation, reasonable diligence in perceiving the injury to their rights.  DPPs have sufficiently pleaded that they were unaware of Defendants' conspiracy and would have no reason to suspect it prior to September 6, 2012, when the global investigation of Defendants' misconduct was first publicly reported.  *See* CAC ¶¶ 83-87; *see also*, *e.g.*, *Electr. Carbon Prods.*, 333 F. Supp. 2d at 317-18 (finding plaintiffs' allegations of due diligence sufficient); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) (same).

### 1.   Legal Standard

To withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *BanxCorp v. Bankrate Inc.*, No. 07- 3398, 2012 WL 3133786, at *3 (D.N.J. July 30, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss, "the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the nonmoving party." *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, No. 2:05-cv-04376, 2014 WL 3695329, at *9 (D.N.J. July 24, 2014).  The alleged facts, when taken as true, only need "to suggest that an agreement was made." *Twombly*, 550 U.S. at 556 .

A complaint does not need to contain "detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.  Only after an opportunity for meaningful discovery, which has not happened here, will a plaintiff need to "identify the people who acted on behalf of the various defendants" in the conspiracy.  *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *4 (N.D. Ill. Nov. 5, 2009).  A plaintiff "cannot be

expected to know or allege such details at this early stage in the case; [and] neither *Twombly* nor any case decided under that holding suggests otherwise." *Id.*; *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010) (holding that *Twombly* does not require a plaintiff to identify the specific time, place, or person related to each conspiracy allegation). The complaint must also be considered as a whole: it is well-settled that "[t]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982) ("a seriatim examination of [ ] claims against each [ ] conspiracy defendant[ ] as if they were separate lawsuits . . . overlook[s] the conspiracy itself").

In the Sherman Act § 1 context, a plaintiff "must set forth allegations suggesting that [a defendant] maintained 'unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme' with [other defendants]" to engage in the alleged anticompetitive conduct—here, a single conspiracy to suppress and eliminate competition for international Vehicle Carrier Services to and from the United States. *Magnesium Oxide*, 2011 WL 5008090, at *17 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010)). However, plaintiffs need not allege that any

10

defendant "knew of or participated in every transaction in furtherance of or related to the alleged conspiracy." *Id*. Plaintiffs also need not allege evidence of a formal agreement. *In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 15 (D.D.C. 2004).

### 2. DPPs' Allegations Are Sufficient to Suggest that Höegh Participated in the Conspiracy

DPPs allege that all the Defendants, including Höegh, conspired by restricting supply and otherwise lessening competition for Vehicle Carrier Services for shipments to and from the United States. *See* CAC ¶ 1. DPPs specifically allege that Höegh participated with all other Defendants in violating § 1 of the Sherman Antitrust Act by engaging in the following activities:

- **Capacity Reductions:** From the late 1990s through 2002, executives from Höegh, MOL, "K" Line, NYK Line, and WWL met twice a year—once in Japan and once in Europe—to discuss and agree on vessel scrapping and building plans and to exchange data. CAC ¶ 58. In addition, executives from all Defendants, including Höegh, were part of discussions and agreements in 2008-2009 to reduce RoRo fleets. DPPs allege specific Defendant employees involved in these agreements, including Mr. Hagman of Höegh, as well quantified the fleet reductions resulting from Defendants agreements. *Id.* ¶ 59.

- **Agreements Not to Compete:** DPPs similarly allege multiple examples of Defendants agreeing not to compete for routes or customers from 2001 through at least 2012. DPPs allege examples of specific instances of agreements not to compete involving overlapping agreements between multiple Defendants, including one example involving Höegh and MOL on one route and another involving Höegh, MOL, and WWL and regarding a specific customer's business on another route. *Id.* ¶ 64.

These detailed allegations directly contradict Höegh's claim that DPPs'
"non-conclusory allegations against the Höegh Defendants are limited to three
discrete, bilateral agreements with a single carrier, defendant MOL."  Höegh Br.
at 10.  Indeed, elsewhere in its own brief, Höegh references many of these
allegations, and Höegh provides no argument or analysis as to why any specific
allegations are conclusory.  *See* Höegh Br. at 4-5.  Even had DPPs pleaded less
detail about Höegh's involvement in the conspiracy, antitrust conspiracy
allegations need not be detailed defendant by defendant.  Rather, the "plaintiff
must allege that each individual defendant joined the conspiracy and played some
role in it."  *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5 (E.D.
Pa. Aug. 3, 2007) (citations omitted); *see also In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133, 1142 n.7 (N.D. Cal. 2009) (holding for pleading purposes,
allegations of antitrust conspiracy need not be detailed on a "'defendant by
defendant' basis").  Likewise, the fact that DPPs pleaded meetings in furtherance
of the conspiracy in which Höegh did not take place does not undercut DPPs'
allegations of Höegh's participation in the conspiracy.  *See Mercedes-Benz*, 157 F.
Supp. 2d at 375 ("That a particular defendant may or may not have joined in a
specific overt act in furtherance of the conspiracy . . . does not affect its status as a
conspirator.").

In addition to ignoring many of DPPs' allegations, including allegations of Höegh's fleet-reduction agreements with all Defendants, Höegh attempts to limit the import of those examples it does deem worthy of addressing by implying they are separate conspiracies, to be examined individually.  *See* Höegh Br. at 13-15. But such an approach is contrary to well-settled law.

> To evaluate the articulated allegations as to an individual defendant in the context of a multi-defendant, multi-faceted conspiracy, the conspiracy must not be "compartmentalized."  The "character and effect of [the] conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."

*In re Processed Egg Products Antitrust Litig.*, 821 F. Supp. 2d 709, 718 (E.D. Pa. 2011) (quoting *Cont'l Ore Co.,* 370 U.S. at 699); *see also In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 373 (M.D. Pa. 2008) (rejecting "dismemberment" approach for assessing the sufficiency of a complaint); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 630-31 (E.D. Pa. 2010) (refusing to allow defendants to dismember the plaintiffs' complaint; choosing instead to view the allegations in the complaint as a whole).  Examples of Höegh's specific supply restriction and other misconduct, particularly in the context of the conduct of all the Defendants that is alleged in the CAC, is sufficient at this stage to plausibly suggest Höegh's involvement in a single conspiracy with the rest of the Defendants.

Even if the Court finds that DPPs cannot recover damages from price fixing and allocation of customers and markets, allegations regarding such conduct are still relevant to demonstrating the single conspiracy DPPs have alleged and thus to resolving Defendants' motions to dismiss. Defendants do not contend that the alleged price fixing and allocation was legal; to the contrary, they argue that it is prohibited by the Shipping Act. *See* Consolidated Br. of Defs. in Supp. of Their Mot. to Dismiss the Direct Purchasers' Compl., at 8-11. Ignoring this alleged illegal conduct would both run contrary to the well-settled law that complaints are not to be dismembered, *see supra*, and permit Höegh and the other Defendants to escape the consequences of their illegal scheme due solely to the details of the regulatory structure.

In contesting the sufficiency of DPPs' allegations, Höegh relies primarily on cases involving parallel conduct in hub-and-spoke conspiracies, where various defendants enter into separate agreements with a common defendant, but where the defendants have no connection with one another. *See* Höegh Br. at 11-13. Such cases are inapplicable where, as here, DPPs have alleged an agreement between *all* Defendants. *See*, *e.g.*, *Ins. Brokerage*, 618 F.3d at 323. The cited cases also lack the detailed allegations present here, including allegations of agreements entered into by all Defendants, specific agreements involving overlapping Defendants, and

14

details regarding timeframe, location, and participants for many meetings where agreements were reached.

For example, in *Precision Associates v. Panalpina World Transport (Holding) Ltd.*, No. 08-CV-42, 2011 U.S. Dist. LEXIS 51330 (E.D.N.Y. Jan. 4, 2011), plaintiffs' allegation of a global conspiracy—one involving 65 different defendants—was premised on certain parallel factors that multiple local conspiracies had in common, such as lack of proper antitrust compliance procedures.  *Id.* at *95-96.  The court rejected the global conspiracy claim; 13 of the defendants named in the global conspiracy were not even identified in the underlying local conspiracies, and plaintiffs had offered nothing more in support of the global conspiracy than alleged parallel conduct.  *Id.*  Here, in contrast, DPPs allege the overlapping involvement of all defendants in multiple meetings and agreements.  Similarly, in *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3, 2011), plaintiffs alleged only three examples of bid-rigging, and the examples involved "only a small subset of defendants."  *Id.* at *38.  Here, DPPs allege that Defendants reduced capacity by more than 35 percent, and that Höegh was deeply involved in the agreements resulting in that reduction.  And in *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007), plaintiffs alleged no specific instances of anticompetitive conduct, relying simply on the bald assertion that defendants met and agreed to fix prices

without any detail whatsoever.  *Id.* at 50-51.  In contrast, DPPs here allege time frames, locations, and participants for multiple meetings between Defendants that resulted in anticompetitive agreements.[7]

DPPs also allege that in early September 2012 the Japan Fair Trade Commission, the European Commission, and the DOJ carried out raids and unannounced inspections at Defendants' offices, including Höegh, EUKOR, NYK Line, MOL, "K" Line, and WWL.  CAC ¶ 68.  Höegh seeks to minimize the import of these raids because while some Defendants have already pleaded guilty,[8] Höegh has not yet been charged or paid a fine.  *See* Höegh Br. at 5-6.  When an illegal agreement has been confirmed by confessions of alleged conspirators, the

---

[7] *See also Ins. Brokerage*, 618 F.3d at 327-28 (Höegh Br. at 11; plaintiffs' allegations based on parallel conduct and a hub-and-spoke conspiracy); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-05 (4th Cir. 2002) (Höegh Br. at 12; alleging a hub and spoke conspiracy, but no allegations of agreements between the defendants on the "rim" of the wheel).

[8] Defendant CSAV pleaded guilty in February 2014 to violating Section 1 of the Sherman Act.  CAC ¶ 69.  Defendant "K" Line recently entered into a plea agreement with the U.S. Department of Justice on September 26, 2014, for participating in a combination and conspiracy, with its participation starting from at least as early as February 1997 and continuing until at least September 2012, to suppress and eliminate competition by allocating customers and routes, rigging bids, and fixing prices for international ocean shipping services for roll-on, roll-off cargo, such as cars and trucks to and from the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  A court may take judicial notice of a plea agreement.  *See In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 998-99 (E.D. Mich. 2010).

alleged conspiracy is certainly plausible.  *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 798-99 (N.D. Ohio 2011).

In sum, DPPs have adequately pleaded Höegh's participation in the conspiracy.  DPPs sufficiently allege that Höegh participated in the conspiracy, including allegations of agreements involving all Defendants regarding fleet reductions.  *See supra*.  DPPs also allege that governmental agencies raided and inspected Höegh's offices regarding the same unlawful conduct DPPs' allege.  *See supra*.  DPPs have pleaded sufficient facts to raise a reasonable expectation that discovery will reveal evidence of Defendants', including Höegh's, illegal agreement.  *See Twombly*, 550. U.S. at 556.

### C.     DPPs Have Provided Sufficient Notice to Höegh

As an initial matter, Höegh is incorrect that DPPs have failed to provide notice to either Höegh defendant.  DPPs allege the involvement of specific Höegh employees in the conspiracy, and these allegations provide sufficient notice to the employer of those individuals.  DPPs allege that Mr. Hagman of Höegh was involved in discussions and agreements regarding vessel scrapping and layups with executives from MOL, NYK, WWL, and "K" Line.  *See* CAC ¶ 59(e).  DPPs also allege that Mr. Ervik of Höegh agreed that Höegh would not compete with MOL in its attempt to obtain certain Thailand to Europe business in exchange for MOL not competing for Höegh's business on routes from the United States to Africa and the

Middle East.  *See* CAC ¶ 64(c).  It appears that both of these individuals are or have been employed by Höegh Autoliners AS.  Mr. Hagman was named chief executive officer of "Höegh Autoliners" in 2008, based in Oslo, Norway.[9]  Mr. Ervik has been employed by Hoegh Autoliners AS since 1984, and is currently Head of Short Sea and Logistics, also in Oslo, Norway.[10]

The lack of complete clarity regarding which Höegh entity employed Mr. Hagman and employs Mr. Ervik highlights why, at this stage in the litigation, DPPs allegations are sufficient to put both Höegh defendants on notice.  As indicated by its website, the various Höegh entities have a complicated structure involving a parent holding company (Höegh Autoliners Holdings AS), a management company for "day-to-day management of the group" (Höegh Autoliners Management AS), a "fully integrated Ro/Ro entity" (Höegh Autoliners AS), multiple subsidiaries "supporting" Höegh Autoliners AS, a ship management company (Höegh Fleet Services AS), and a ship owning company (Höegh

---

[9] *See* http://www.hoeghautoliners.com/ikbViewer/page/hainternet/news/ article?p_document_id=23324 (last visited Dec. 11, 2014) (Ex. A).

[10] *See* http://www.hoeghautoliners.com/ikbViewer/page/hainternet/about_us/ company?p_dimension_id=56627 (last visited Dec. 11, 2014) (Ex. B); https://www.linkedin.com/pub/%C3%B8yvind-ervik/20/167/8ab (last visited Dec. 11, 2014) (Ex. C) (indicating Mr. Ervik's employer is "Höegh Autoliners AS" in Oslo).

Autoliners Shipping AS).[11]  Yet the Höegh entities also describe themselves as a

single enterprise, "a global company with branch offices in about 20 locations."[12]

The "regional headquarters" for "Region Americas" is based in Jacksonville,

Florida[13] – presumably Defendant Höegh Autoliners, Inc., which has its principal

place of business in Jacksonville.  *See* CAC ¶ 22.  Because the Höegh entities hold

themselves out as a single company, Plaintiffs pleading is sufficient to put both

Höegh Autoliners AS and Höegh Autoliners, Inc. on notice.

Alternatively, DPPs request that the Court grant them leave to amend to

more specifically plead how each Höegh Defendant participated in the alleged

conspiracy.  *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d

1109, 1117 (N.D. Cal. 2008).

## III.   <u>CONCLUSION</u>

The Direct Purchaser Plaintiffs sufficiently allege that Defendants—

including Höegh—are liable for damages resulting from their agreement to restrict

supply for Vehicle Carrier Services.  When viewed as a whole, DPPs' CAC sets

forth plausible allegations that Defendants, including Höegh, entered unlawful

---

[11] *See* http://www.hoeghautoliners.com/ikbViewer/page/hainternet/about_us/
company?p_dimension_id=57270 (last visited Dec. 11, 2014) (Ex. D); *see also*
CAC ¶ 22.

[12] *See* http://www.hoeghautoliners.com/ikbViewer/page/hainternet/
regions?p_dimension_id=56673 (last visited Dec. 11, 2014) (Ex. E).

[13] *See* http://www.hoeghautoliners.com/ikbViewer/page/hainternet/
region_americas?p_dimension_id=56674 (last visited Dec. 11, 2014) (Ex. F).

agreements that violate the Sherman Antitrust Act.  DPPs also sufficiently allege

that the statute of limitations should be tolled as to all Defendants, including

Höegh.  Accordingly, the Court should deny Höegh's motion.  Alternatively, DPPs

respectfully request the Court grant leave to amend.

Dated: December 12, 2014                     Respectfully submitted,

                                             /s/ *Lewis H. Goldfarb*
                                             Lewis H. Goldfarb (LG5470)
                                             McELROY, DEUTSCH,
                                             MULVANEY & CARPENTER, LLP
                                             1300 Mount Kemble Avenue
                                             P.O. Box 2075
                                             Morristown, New Jersey 07962
                                             Telephone: (973) 241-4224
                                             lgoldfarb@mdmc-law.com

                                             *Direct Purchaser Liaison Counsel*

*/s/ Kit Pierson*
Kit Pierson
Christopher J. Cormier
David A. Young
COHEN        MILSTEIN      SELLERS
& TOLL PLLC
1100 New York Ave NW
Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
kpierson@cohenmilstein.com
ccormier@cohenmilstein.com
dyoung@cohenmilstein.com

*/s/ Steven A. Kanner*
Steven A. Kanner
Michael J. Freed
Michael E. Moskovitz
FREED KANNER
LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
mfreed@fklmlaw.com
mmoskovitz@fklmlaw.com

*/s/ Robert N. Kaplan*
Robert N. Kaplan
Richard J. Kilsheimer
Gregory K. Arenson
Lauren I. Dubick
Damien H. Weinstein
KAPLAN FOX &
KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
rkilsheimer@kaplanfox.com
garenson@kaplanfox.com
ldubick@kaplanfox.com
dweinstein@kaplanfox.com

*Direct Purchaser Interim Co-Lead Counsel*

21

Solomon B. Cera
C. Andrew Dirksen
GOLD BENNETT CERA & SIDENER
LLP
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
scera@gbcslaw.com
cdirksen@gbcslaw.com

Joseph C. Kohn
Douglas A. Abrahams
William E. Hoese
KOHN SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
jkohn@kohnswift.com
dabrahams@kohnswift.com
whoese@kohnswift.com

Lee Albert
Gregory B. Linkh
GLANCY BINKOW & GOLDBERG,
LLC
122 East 42nd Street – Suite 2920
New York, NY 10168
Telephone: (212) 682-5340
lalbert@glancylaw.com
glinkh@glancylaw.com

Gregory P. Hansel
Randall B. Weill
Michael Kaplan
Jonathan G. Mermin
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU &
PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
mkaplan@preti.com
jmermin@preti.com
msmith@preti.com

Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen
Rachel E. Kopp
SPECTOR ROSEMAN KODROFF
& WILLIS, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkw-law.com
jcorrigan@srkw-law.com
jcohen@srkw-law.com
rkopp@srkw-law.com

W. Joseph Bruckner
Heidi M. Silton
LOCKRIDGE GRINDAL NAUEN
P.L.L.P.
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Telephone: (612) 339-6900
wbruckner@locklaw.com
hmsilton@locklaw.com

Vincent J. Esades
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN  55403
Telephone: (612) 338-4605
Fax: (612) 338-4692
VEsades@heinsmills.com
Joseph J. DePalma
Katrina Carroll
Steven J. Greenfogel
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
(973) 623-3000
jdepalma@litedepalma.com
kcarroll@litedepalma.com
sgreenfogel@litedepalma.com

Edward D. Greenberg
David K. Monroe
GKG LAW, P.C.
Canal Square, 1054 Thirty-First
Street, N.W., Suite 200
Washington, D.C. 20007-4492
Telephone: (202) 342-5200
egreenberg@gkglaw.com
dmonroe@gkglaw.com

Benjamin Bianco
Gregory A. Frank
FRANK & BIANCO LLP
275 Madison Avenue, Suite 705
New York, NY 10016
Telephone: (212) 682-1853
bbianco@frankandbianco.com
gfrank@frankandbianco.com

*Additional Direct Purchaser Counsel*