**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE**

|  |  |
|---|---|
| **IN RE VEHICLE CARRIER SERVICES ANTITRUST LITIGATION** : | **Master Docket No.: 13-cv-3306 (MDL No. 2471)** |
| *This document relates to All Direct Purchaser Actions* : | |

---

**SUPPLEMENTAL BRIEF OF HÖEGH DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS
THE DIRECT PURCHASERS' COMPLAINT**

---

Melissa H. Maxman
**COZEN O'CONNOR PC**
1627 I Street, NW - Suite 1100
Washington, D.C. 20006
Telephone:  202-912-4873

Kevin M. Kelly
**COZEN O'CONNOR PC**
1900 Market Street
Philadelphia, PA 19103
Telephone:  215-665-5570

*Counsel for defendants
Höegh Autoliners AS and
Höegh Autoliners, Inc.*

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT.................................1

II.  SUPPLEMENTAL STATEMENT OF FACTS.......................3

III. ARGUMENT..............................................6

    A.  All Allegations Pled Against the Höegh Defendants Are Barred by the Statute of Limitations ...................6

    B.  The CAC Fails to Allege Facts Sufficient to Demonstrate That the Höegh Defendants Were Part of a Cartel..........................................10

    C.  Plaintiffs Have Failed to Provide Notice of the Alleged Conduct of Any of the Höegh Defendants.................15

IV.  CONCLUSION...........................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arnold Chevrolet LLC v. Tribune Co.*,
  418 F. Supp. 2d 172 (E.D.N.Y. 2006) .........................18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 553 (2007) ............................10, 14, 16, 19

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) .........................7

*Continental-Wirt Electronics Corp. v. Lancaster Glass Corp.*,
  459 F.2d 768 (3d Cir. 1972) ..................................6

*Davis v. Grusemeyer*,
  996 F.2d 617 (3d. Cir. 1993) .................................7

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) .............................10, 12

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ..............................12, 14

*Hinds County, Miss. v. Wachovia Bank N.A.*,
  620 F. Supp. 2d 499 (S.D.N.Y. 2009) ..................6, 8, 19

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) .................................11

*Mathews v. Kidder, Peabody & Co.*,
  260 F.3d 239 (3d Cir. 2001) ..................................7

*Mitchael v. Intracorp, Inc.*,
  179 F.3d 847 (10th Cir. 1999) ...............................17

*In re Nine West Shoes Antitrust Litig.*,
  80 F. Supp. 2d 181 (S.D.N.Y. 2000) ..........................9

*In re Optical Disk Drive Antitrust Litig.*,
  2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3, 2011) .......................................................11

*Oreck Corp. v. Whirlpool Corp.*,
  639 F.2d 75 (2d Cir. 1980) ..................................14

*In re Penn.Title Ins. Antitrust Litig.*,
  648 F. Supp. 2d 663 (E.D. Pa. 2009) .........................17

*Precision Assocs., Inc. v. Panalpina World Transport
  (Holding) Ltd.*,
  2011 U.S. Dist LEXIS 51330
  (E.D.N.Y. Jan. 4, 2011) ........................11, 14, 16, 17

*Precision Assocs. v. Panalpina World Transp. (Holding)
  Ltd.*,
  2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13,
  2012) ................................................14, 16

*RSM Prod. Co. v. Petroleos De Venezuela Societa
  Anonima (PDVSA)*,
  338 F. Supp. 2d 1208 (D. Colo. 2004) ...................16, 18

*Shrey v. Foresman*,
  505 Fed. Appx. 112 (3d Cir. 2012) ............................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..............11, 15, 17

*United National Records, Inc. v. MCA, Inc.*,
  616 F. Supp. 1429 (N.D. Ill. 1985) .........................18

*United States v. Bestfoods*,
  524 U.S. 52 (1998) .........................................16

*United States v. Sargent Electric Co.*,
  785 F.2d 1123 (3d Cir. 1986) ...............................11

*United States v. Squillacote*,
  221 F.3d 542 (4th Cir. 2000) ...............................10

*Yucyco, Ltd. v. Republic of Slovenia*,
  984 F. Supp. 209 (S.D.N.Y. 1997) ...........................17

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) .......................................6, 8

**Statutes**

15 U.S.C. § 15b...........................................2, 6

Federal Rule of Civil Procedure 8.......................16, 19

Federal Rule of Civil Procedure 9(b)........................8

I.    **PRELIMINARY STATEMENT**

Defendants Höegh Autoliners AS and Höegh Autoliners, Inc. (collectively "the Höegh Defendants") join in the arguments set forth in the consolidated brief in support of all defendants' motion to dismiss the direct purchaser consolidated action complaint.  In addition to those arguments, the Höegh Defendants submit this supplemental brief supporting dismissal of all claims against them.

Over one year after the filing of its initial complaint, and literally on the eve of the expiration of the Court's deadline to name additional parties, the Consolidated Amended Class Action Complaint ("CAC") included the Höegh Defendants as purported members of a "continuous and wide-ranging conspiracy to restrain competition for the sale of Vehicle Carrier Services."  CAC ¶ 52.  As demonstrated by the insubstantiality of its own allegations, the CAC fails to allege sufficient facts to support its claim that the Höegh Defendants participated in such a cartel, and shockingly ignores substantial evidence--of which plaintiffs are well aware--to the contrary.

As the CAC acknowledges, the catalyst for this lawsuit is the publicly reported investigation by multiple global antitrust and competition authorities of the vehicle carrier services market.  Yet these investigations have not resulted in any charges against the Höegh Defendants.  Indeed, after conducting

a one and one-half year investigation of all of the named defendants--three of whom, MOL, NYK, and "K" Line, are headquartered in Japan--the Japan Fair Trade Commission earlier this year imposed cease and desist orders and fines against several of the defendants in this action, but imposed no such penalties on the Höegh Defendants.

A careful reading of the CAC makes clear why the Höegh Defendants were omitted from this lawsuit for so long.  The Höegh Defendants barely appear in the CAC.  Not only does the CAC fail to allege a single act committed by either of the Höegh Defendants--which the CAC lumps together under the collective shorthand "HAL"--but even the Höegh Defendants collectively are scarcely mentioned in the CAC.[1]  With the exception of a vague allegation of meetings that ended in 2002, the CAC alleges a bare five meetings or conversations involving the Höegh Defendants, only one of which is alleged to have occurred during the four-year statute of limitations period governing civil antitrust actions.  15 U.S.C. § 15b.

That meeting allegedly consisted of a discussion with only *one* other competitor (MOL) that involved rates on a single

---

[1] The CAC, as filed, lumps together Höegh Autoliners Holdings AS, Höegh Autoliners AS, Autotrans AS, Höegh Autoliners, Inc., and Alliance Navigation LLC under the collective shorthand "HAL." However, subsequent to filing the CAC, plaintiffs agreed to dismiss Höegh Autoliners Holdings AS, Autotrans AS, and Alliance Navigation LLC in exchange for the Höegh Defendants' accepting service of the CAC.  *See* Stipulation, ECF No. 176.

shipping route from New York to West Africa.  The CAC alleges no
facts that would connect this discussion--or the Höegh
Defendants' alleged handful of pre-limitations period
discussions with the same company (MOL)--with the multi-
defendant, worldwide conspiracy plaintiffs allege elsewhere.
Simply put, and as plaintiffs must be aware, if there were a
cartel, the Höegh Defendants were not members of it.

Finally, while plaintiffs--as noted in defendants'
consolidated brief--have alleged no facts that would support
their standing to bring this lawsuit, this is particularly true
with respect to the Höegh Defendants.  Plaintiffs allege no
causal link between any of the sporadic incidents allegedly
involving the Höegh Defendants and injury plaintiffs claim to
have suffered.

II.  **SUPPLEMENTAL STATEMENT OF FACTS**

As previously noted, the CAC's mentions of the Höegh
Defendants are scant and stand in stark contrast to the multiple
and more specific allegations made against the other defendants.
After identifying the Höegh Defendants, stating the location of
their principal places of business, and alleging that they are
both subsidiaries of Höegh Autoliners Holdings AS (CAC ¶ 22),
plaintiffs treat the Höegh Defendants as a single entity for the
remainder of the CAC.  Plaintiffs do not allege that each of the
Höegh Defendants, or that either of them, sold products or

services in or into a relevant market; instead, plaintiffs flatly assert that both of the Höegh Defendants "directly or through their wholly-owned and controlled subsidiaries, provided, marketed, and sold Vehicle Carrier Shipments to and from the United States . . . ." *Id.*

Moreover, while plaintiffs enumerate various trade associations and industry meetings that allegedly provided "opportunities" for defendants to conspire, the Höegh Defendants are not alleged to have attended any of these meetings.  CAC ¶¶ 40-46.  Instead, the alleged involvement of the Höegh Defendants is limited to the following:

▪   From the late 1990s through 2002, the Höegh Defendants met with other defendants twice a year "to discuss and agree on vessel scrapping and building plans and to exchange data."  CAC ¶ 58.  The group also allegedly "discussed Vehicle Carrier Services pricing" for certain routes, although there is no allegation that the parties to these meetings reached any agreement regarding pricing. *Id.*  The CAC makes clear that these discussions of "vessel scrapping and building" ended in 2002, and that the other claimed instances where information allegedly was exchanged with the Höegh Defendants ended in 2003--more than ten years before plaintiffs filed suit. *Id.*  The CAC contains no allegation that any of these acts injured plaintiffs during

the four years prior to the naming of the Höegh Defendants in this action.

- Between 2001 and 2003--again, more than ten years before plaintiffs sued the Höegh Defendants--the Höegh Defendants allegedly agreed with MOL not to compete against MOL for certain routes.  CAC ¶ 64.

- The Höegh Defendants "reached understandings" with MOL concerning fleet reductions between late 2008 and early 2009-- more than five years before plaintiffs sued the Höegh Defendants.  CAC ¶ 59.  As a result of these "understandings," the Höegh Defendants scrapped approximately 10 vessels.  *Id.*

- In or around 2009, the Höegh Defendants allegedly "agreed" to layup vessels.  *Id.*

- In November 2011, the Höegh Defendants allegedly agreed with MOL on rates from New York to West Africa.  CAC ¶ 62.  This is the only allegation against the Höegh Defendants during the four years preceding the addition of Höegh Defendants as defendants in this action, and the only allegation of any rate or pricing agreement involving the Höegh Defendants.

The CAC also alleges that the U.S. Department of Justice and the Japan Fair Trade Commission have brought various charges and imposed penalties against some of the other defendants.  CAC ¶¶ 68-71.  Notably, no such charges or penalties are alleged to have been brought against or imposed on the Höegh Defendants.

Furthermore, when, as previously noted, the Japan Fair Trade Commission issued cease and desist orders against four companies in March 2014, the Höegh Defendants conspicuously were not included.  CAC ¶ 71.

Finally, in support of plaintiffs' claim that defendants fraudulently concealed the alleged conspiracy, the CAC cites a number of generalized public statements allegedly made by various other defendants about the competitiveness of the vehicle shipping business.  CAC ¶ 88.  Plaintiffs do not--and cannot--make any allegation that the Höegh Defendants either made any of these statements, or otherwise took any action to fraudulently conceal the alleged cartel.  *Id.*

## III.  ARGUMENT

### A.    ALL ALLEGATIONS PLED AGAINST THE HÖEGH DEFENDANTS ARE BARRED BY THE STATUTE OF LIMITATIONS

A private antitrust action must be brought within four years of its accrual.  *See* 15 U.S.C. § 15b; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321 (1971).  An action accrues, and the statute of limitations begins to run, when the plaintiff is harmed by alleged acts of the defendant.  *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 519 (S.D.N.Y. 2009); *Continental-Wirt Electronics Corp. v. Lancaster Glass Corp.*, 459 F.2d 768, 770 (3d Cir. 1972).

The Höegh Defendants were not named as defendants in this action until the CAC was filed on June 2, 2014.  While the CAC

generally asserts that the alleged conspiracy was fraudulently concealed, the CAC alleges no act on the part of the Höegh Defendants that would constitute fraudulent concealment. Moreover, the CAC contains no allegation that the Höegh Defendants, during the four years prior to the filing of the CAC, committed an overt act in furtherance of the alleged global, multi-defendant conspiracy.  Consequently, plaintiffs' claims against the Höegh Defendants are time-barred, at least as to the global conspiracy alleged in the CAC.

### 1.   Plaintiffs Fail to Adequately Plead Fraudulent Concealment by the Höegh Defendants

Fraudulent concealment is an "equitable doctrine [that] is read into every federal statute of limitations," including the Clayton Act.  *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d. Cir. 1993).  The plaintiff, however, must prove that "active misleading" by the defendant prevented the plaintiff from recognizing the validity of its claim within the limitations period, and that the plaintiff's ignorance is not attributable to its lack of "reasonable due diligence in attempting to undercover the relevant facts." *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001) (quoting *Forbes v. Eagleson*, 228 F.3d 471, 468-88 (3d Cir. 2000)); *Shrey v. Foresman*, 505 Fed. Appx. 112 (3d Cir. 2012).  In meeting this burden, plaintiffs may not "rely on bald allegations of fraudulent concealment to shield their claims from dismissal as

untimely." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 227 (E.D.N.Y. 2003). Fraudulent concealment is subject to the heightened pleading requirements of Rule 9(b) and must be pled with particularity. *Hinds County*, 620 F. Supp. 2d at 520.

As noted, plaintiffs fail to allege that the Höegh Defendants took any action to fraudulently conceal the alleged antitrust violations. While plaintiffs do allege that certain other defendants made public statements generally discussing the competitiveness of the vehicle carrier services industry, CAC ¶ 88, the CAC does not allege a single act of fraudulent concealment by the Höegh Defendants. Therefore, plaintiffs' claim of fraudulent concealment does not toll the statute of limitations with respect to the Höegh Defendants.

### 2. Plaintiffs Fail to Adequately Allege an Overt Act in Furtherance of the Conspiracy By the Höegh Defendants Within the Limitations Period

A suit may be brought more than four years after the statute of limitations begins to run if the defendant commits an overt act in furtherance of the antitrust conspiracy. *Zenith*, 401 U.S. at 338. However, the CAC does not adequately allege that the Höegh Defendants committed any overt act in furtherance of the alleged conspiracy within the four-year federal statute of limitations applicable to the Höegh Defendants--i.e., on or after June 2, 2010.

8

The only instance in which the Höegh Defendants are described as having done anything during the limitations period is the alleged "dinner" in November 2011 at which executives of the Höegh Defendants and MOL purportedly agreed on rates for vehicle carrier services for a single route:  New York to West Africa.  CAC ¶ 130.  There is no allegation that there was any previous agreement between the Höegh Defendants and MOL regarding that route, much less that the alleged agreement was connected in any way to the global, multi-defendant conspiracy alleged elsewhere in the CAC, or that the alleged agreement could possibly have affected rates for other routes.  Absent facts sufficient to plausibly allege that the alleged 2011 limited agreement between the Höegh Defendants and MOL was made in furtherance of--or in any way linked to the broader conspiracy alleged elsewhere in the CAC--any claims against the Höegh Defendants as to the global conspiracy are time-barred.

Moreover, the "commission of a 'separate new overt act' will not permit the plaintiff to recover for the injury caused by old overt acts that do not fall within the limitations period." *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000).  A plaintiff can proceed with a claim based on overt acts that occurred within the statute of limitations, but the plaintiff can recover damages based only on those acts and not on any previous acts. *In re Nine West Shoes*

*Antitrust Litig.*, 80 F. Supp. 2d at 192.  Thus, at a minimum, all claims arising out of routes other than the New York-West Africa route, or out of any alleged overcharges for the New York-West Africa route occurring prior to November 2011, should be dismissed as time-barred.

   **B.   THE CAC FAILS TO ALLEGE FACTS SUFFICIENT TO DEMONSTRATE THAT THE HÖEGH DEFENDANTS WERE PART OF A CARTEL**

   The CAC alleges that the Höegh Defendants joined with all other named defendants to form a "continuous and wide-ranging conspiracy to restrain competition for the sale of Vehicle Carrier Services."  CAC ¶ 52.  Yet plaintiffs' non-conclusory allegations against the Höegh Defendants are limited to three discrete, bilateral agreements with a single carrier, defendant MOL, all but one of which occurred outside the limitations period.  Under established precedent, these alleged facts are simply insufficient to support plaintiffs' core claim that the Höegh Defendants participated in a global cartel involving defendants other than MOL.

   To prove a Section 1 violation, a plaintiff must show that the defendant entered into an agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 553 (2007).  To adequately plead an overarching conspiracy, plaintiffs must allege facts to show that one overall agreement was made by all conspirators.  *See,*

10

*e.g., Dickson v. Microsoft Corp.*, 309 F.3d 193, 204 n.12 (4th Cir. 2002) ("A single conspiracy exists where there is one overall agreement, or one general business venture.") (quoting *United States v. Squillacote*, 221 F.3d 542, 574 (4th Cir. 2000)). Specifically, the complaint must allege "an agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (quoting *In re Elec. Carbon Prods. Antitrust Litig.,* 333 F. Supp. 2d 303, 311-12 (D.N.J. 2004)).

The Third Circuit has continuously held that where various defendants enter into separate agreements with a common defendant, but defendants have not formed additional agreements with each other, a single overarching conspiracy does not exist. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010); *United States v. Sargent Electric Co.,* 785 F.2d 1123, 1140 (3d Cir. 1986) (separate conspiracies to rig bids were not also a single conspiracy merely because a core group of defendants conspired with different subgroups of defendants to eliminate competitive bidding). Allegations of narrow, isolated agreements between pairs of conspirators are insufficient. *See, e.g., Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.,* 2011 U.S. Dist LEXIS 51330 at *27 (E.D.N.Y. Jan. 4, 2011) (holding individual agreements were not sufficiently connected to each other to form one global

conspiracy); *In re Optical Disk Drive Antitrust Litig.*, 2011
U.S. Dist. LEXIS 101763 at *9 (N.D. Cal. Aug. 3, 2011) (holding
that allegations of isolated occurrences of bid rigging were "a
far cry from establishing plausibility for a broad six year
continuing agreement among all defendants").

In *Dickson*, the Fourth Circuit held that the plaintiffs
failed to allege a single conspiracy among Microsoft and various
computer manufacturers, despite common involvement of Microsoft
with each computer manufacturer. *Dickson*, 309 F.3d at 203.
Similarly, in *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d
Cir. 2007), the Second Circuit upheld the dismissal of an
antitrust claim where the plaintiffs alleged "basically every
type of conspiratorial activity that one could imagine" but
provided "an insufficient factual basis for their assertions of
a worldwide conspiracy" due to the lack of an overarching
agreement by defendants. *Id.* at 50-52.

Here, plaintiffs utterly fail to plead facts that establish
the Höegh Defendants' participation in the overarching cartel
alleged in the CAC. While plaintiffs make general allegations
about defendants' "opportunities for conspiratorial
communication," identifying trade associations and industry
organizations where "Defendants" had "opportunities to meet
under the auspices of legitimate business," the CAC contains no
allegations that the Höegh Defendants belonged to any of these

organizations--or that they were involved in any discussions or agreements as a result of such "opportunities." CAC ¶¶ 39-51. Moreover, while plaintiffs allege that the Höegh Defendants were among those defendants whose offices were inspected by the Japan Fair Trade Commission, CAC ¶ 68, the Höegh Defendants are conspicuously excluded from plaintiffs' list of defendants who were subsequently issued cease and desist orders and fines from the JFTC. CAC ¶ 71. And there is no allegation that the Höegh Defendants were investigated by any other competition authority, including the United States government.

Plaintiffs do make three specific allegations of agreements involving the Höegh Defendants: (i) the Höegh Defendants allegedly agreed not to compete with MOL for certain routes between approximately 2001 and 2003 (CAC ¶ 64); (ii) the Höegh Defendants allegedly reduced capacity in 2009 as a result of "understandings" with MOL and others (CAC ¶ 59); and (iii) the Höegh Defendants allegedly agreed with MOL on New York-West Africa pricing in November 2011 (CAC ¶ 62). Only the last of these alleged events occurred within the limitations period, and none of these allegations even remotely suggests the Höegh Defendants' participation in a global conspiracy with all defendants—let alone a connection between any of these discussions and any harm to plaintiffs.

13

Plaintiffs also vaguely allege that the Höegh Defendants "met" with other defendants no later than 2002 "to discuss and agree on vessel scrapping and building plans and to exchange data" (CAC ¶ 58).  The CAC contains no allegation, however, as to any agreements purportedly reached at these alleged meetings, which also would have occurred well outside the limitations period.  Plaintiffs' conclusory and entirely speculative statements are patently insufficient to survive a motion to dismiss, as allegations that "allude to nothing more than Defendants' participation in meetings, conversations, and communications and state that the defendants reached agreement during these meetings as to their anticompetitive practices" do not satisfy *Twombly* for the purposes of alleging participation in an anticompetitive cartel.  *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,* 2011 U.S. Dist. LEXIS 51330 at *53 (E.D.N.Y. Jan. 4, 2011), *adopted by Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,* 2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012) (quoting *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund,* 596 F. Supp. 2d 630, 640 (E.D.N.Y. 2009)) (internal quotation omitted); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 51 & n. 5 (2d Cir. 2007) (allegations that defendants "participated in meetings . . . to discuss pricing and market divisions" insufficient to state a cause of action); *Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75,

79 (2d Cir. 1980) ("A mere showing of close relations or frequent meetings between the alleged conspirators, however, will not sustain a plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement.").

To survive a motion to dismiss, plaintiffs must allege "an agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008). Here, at most, the CAC alleges that the Höegh Defendants agreed with MOL to allocate transportation of vehicles on three routes, United States-Middle East, Thailand-Europe, and the United States-Africa, without any facts suggesting that plaintiffs were harmed as a result thereof and one of which (Thailand-Europe) is not even conceivably connected to plaintiffs' business. Allegations that MOL had agreements with other defendants as well as the Höegh Defendants simply do not support an inference that the Höegh Defendants themselves entered into an agreement with any defendant other than MOL. Plaintiffs' attempt to connect the Höegh Defendants to the wide-ranging cartel alleged is manifestly inadequate.

### C.   PLAINTIFFS HAVE FAILED TO PROVIDE NOTICE OF THE ALLEGED CONDUCT OF ANY OF THE HÖEGH DEFENDANTS

The CAC improperly directs its allegations to both Höegh Defendants collectively, without even attempting to establish the alleged conduct or participation of each defendant--or

indeed of either defendant.  Plaintiffs' generalized treatment of the Höegh Defendants impermissibly ignores the legal tenet of corporate separateness and the requirements of Federal Rule of Civil Procedure 8.  Plaintiffs' group pleading method only leaves "open the possibility that [plaintiffs] might later establish some 'set of [undisclosed] facts' to support recovery" as to any particular defendant.  *Twombly,* 550 U.S. at 561.

It is a long-held principle that "the mere fact that there exists a parent-subsidiary relationship between two corporations" does not make one corporation liable for the actions of its affiliate.  *United States v. Bestfoods*, 524 U.S. 52, 61 (1998) (quoting 1 W. Fletcher, *Cyclopedia of Law and Private Corporations* § 33, p. 568 (rev. ed. 1990)).  Each company is an independent entity that cannot be liable for antitrust violations alleged against another member of the same corporate family.  *See, e.g., RSM Prod. Co. v. Petroleos De Venezuela Societa Anonima (PDVSA)*, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004) (dismissing Sherman Act claims against a subsidiary corporation because the complaint did not allege that the subsidiary itself had violated the Sherman Act).  Where a complaint names multiple defendants, even where those defendants are subsidiaries of a common parent corporation, Federal Rule of Civil Procedure 8(a) "requires that the plaintiffs indicate clearly the defendants against whom relief is sought, and the

basis upon which relief is sought against the particular defendants." *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,* No. 08-CV-42JGVVP, 2011 U.S. Dist. LEXIS 51330 at *53 (E.D.N.Y. Jan. 4, 2011), *adopted by Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,* No. 08-CV-42JGVVP, 2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012) (citing *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) (internal quotations omitted)).

To satisfy pleading requirements for claims linking related corporate entities in a Sherman Act conspiracy, plaintiffs must allege "evidence that [all subsidiaries] were involved in the challenged conduct," such that the complaint sets forth "facts establishing the [subsidiaries'] direct and independent participation in the alleged conspiracy." *Mitchael v. Intracorp, Inc.,* 179 F.3d 847, 857 (10th Cir. 1999); *In re Penn.Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009). Complaints failing to plead facts showing informed assent or approval of anticompetitive activity by *each* defendant fail to give adequate notice to *any* defendant of specific Sherman Act violations. *See Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, 2011 U.S. Dist. LEXIS 51330 at *69-74 (granting motion to dismiss in antitrust case for grouping multiple subsidiaries without providing allegation of direct or independent participation); *In re TFT-LCD (Flat Panel)*

*Antitrust Litig.*, 586 F. Supp. 2d 1109. 1117 (N.D. Cal. 2008)
("general allegations as to all defendants . . . or to a single
corporate entity such as 'Hitachi' is insufficient to put
specific defendants on notice of the claims against them"); *In
re Penn. Title*, 648 F. Supp. 2d at 687 ("plaintiffs cannot rely
merely on the parents' ownership interest in their respective
subsidiaries to sustain a § 1 claim against parent defendants");
*Arnold Chevrolet LLC v. Tribune Co.,* 418 F. Supp. 2d 172, 178
(E.D.N.Y. 2006) ("absent allegations of anticompetitive conduct
by the parent, there is no basis for holding a parent liable for
the alleged antitrust violation of its subsidiary"); *RSM Prod.
Corp.,* 338 F. Supp. 2d at 1216 (granting motion to dismiss an
antitrust case because a complaint that alleged a company "is a
wholly owned subsidiary of [parent], without more, does not
subject [the subsidiary] to liability on any basis"); *United
National Records, Inc. v. MCA, Inc.,* 616 F. Supp. 1429, 1430-33
(N.D. Ill. 1985) (granting summary judgment as to antitrust
claims against parent for acts of its former subsidiary because
plaintiff did not show that the corporate veil should be pierced
or that the parent had independently violated antitrust laws).

In the CAC, plaintiffs' allegations against each Höegh
Defendant are limited to stating the location of its principal
place of business and identifying its relationship to the
corporate family.  CAC ¶ 22.  Plaintiffs then allege that both

of the Höegh Defendants, "directly *or through their wholly-owned and controlled subsidiaries*, provided, marketed, or sold Vehicle Carrier Services for shipments to and from the United States, including in this District." *Id.* (emphasis added).  Plaintiffs thus fail to allege that either Höegh Defendant even sold the relevant product in the relevant market.

From that point forward, the CAC, without any basis, strips each Höegh Defendant of its separate corporate identity. Plaintiffs do not allege that either Höegh Defendant did anything, lawful or unlawful.  They allege only that the collective "HAL" engaged in certain conduct, under the apparent rationale that if one of two companies is alleged to have done something, it is perfectly appropriate to hale both into court to defend a complex antitrust action.

Plaintiffs' approach thus fails to meet the basic Rule 8 notice requirement that, at a minimum, a complaint must provide each defendant with "fair notice" of the claims against it. *See Twombly*, 550 U.S. 544, 555-56 (2007).  It also fails to meet the basic requirement that a Section 1 complaint allege sufficient facts to plausibly suggest an unlawful agreement as to each defendant.  *Id.* at 557; *see also Hinds County,* 620 F. Supp. 2d at 512-13 (dismissing antitrust claims against 21 defendants because complaint made no specific allegations against them).

This pleading deficiency alone merits dismissal of the Höegh
Defendants.

**IV.   <u>CONCLUSION</u>**

The Höegh Defendants did not participate in the alleged
cartel.  Plaintiffs do not change this fact by dropping the
occasional, sporadic reference to the Höegh Defendants in the
midst of more substantive, detailed allegations against the
other defendants.  And only one of those references alleges that
the Höegh Defendants did anything within the limitations period,
a bilateral meeting with no alleged connection to the cartel.
Plaintiffs also fail to provide either of the Höegh Defendants,
as a separate legal entity, with notice of the claims against
it.

For all of these reasons, the Höegh Defendants respectfully
request that plaintiffs' claims against them be dismissed with
prejudice.

Respectfully submitted,

**DATED:**    October 13, 2014    /s/ Melissa H. Maxman
                                  Melissa H. Maxman
                                  **COZEN O'CONNOR PC**
                                  1627 I Street, NW - Suite 1100
                                  Washington, D.C. 20006
                                  Telephone:  202-912-4873
                                  mmaxman@cozen.com

*Counsel for defendants*         Kevin M. Kelly
*Höegh Autoliners AS and*        **COZEN O'CONNOR PC**
*Höegh Autoliners, Inc.*         1900 Market Street
                                 Philadelphia, PA 19103
                                 Telephone:  215-665-5570
                                 kmkelly@cozen.com