IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

|  |  |
|---|---|
| IN RE VEHICLE CARRIER SERVICES ANTITRUST LITIGATION | Master Docket No.: 13-cv-3306 (MDL No. 2471) |
| *This document relates to the indirect purchaser actions (the End-Payors complaint, the Auto-Dealers complaint, and the Truck Centers complaint)* | |

SUPPLEMENTAL BRIEF OF HÖEGH DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS
THE INDIRECT PURCHASERS' COMPLAINTS

Melissa H. Maxman
COZEN O'CONNOR PC
1627 I Street, NW - Suite 1100
Washington, D.C. 20006
Telephone: 202-912-4873

Kevin M. Kelly
COZEN O'CONNOR PC
1900 Market Street
Philadelphia, PA 19103
Telephone: 215-665-5570

*Counsel for defendants
Höegh Autoliners AS and
Höegh Autoliners, Inc.*

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT.......................................1

II.  SUPPLEMENTAL STATEMENT OF FACTS............................3

III. ARGUMENT..................................................5

      A.   All Allegations Pled Against the Höegh Defendants
           Are Barred by the Statute of Limitations..............5

           1.   The IPPs Fail to Adequately Plead Fraudulent
                Concealment by the Höegh Defendants.............7

           2.   The IPPs Fail to Adequately Allege an Overt
                Act in Furtherance of the Conspiracy By the
                Höegh Defendants Within Any Applicable
                Limitations Period..............................9

      B.   The IPPs Fail to Allege Facts Sufficient to
           Demonstrate That the Höegh Defendants Were Part
           of a Cartel..........................................11

IV.  CONCLUSION...............................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 553 (2007) ......................................11, 15

*In re Ciprofloxacin Hydrochloride Antitrust Litig.,*
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..........................8

*Continental-Wirt Electronics Corp. v. Lancaster Glass
  Corp.,*
  459 F.2d 768 (3d Cir. 1972) ..................................7

*Davis v. Grusemeyer,*
  996 F.2d 617 (3d. Cir. 1993) .................................8

*Dickson v. Microsoft Corp.,*
  309 F.3d 193 (4th Cir. 2002) ............................11, 13

*In re Elevator Antitrust Litig.,*
  502 F.3d 47 (2d Cir. 2007) ..............................13, 15

*Hinds County, Miss. v. Wachovia Bank N.A.,*
  620 F. Supp. 2d 499 (S.D.N.Y. 2009) ......................7, 8

*In re Ins. Brokerage Antitrust Litig.,*
  618 F.3d 300 (3d Cir. 2010) .................................12

*State ex rel. Leech v. Levi Straus & Co.,*
  1980-2 Trade Cas. (CCH) 63,558 (Tenn. Ch. 1980) ..............6

*Mathews v. Kidder, Peabody & Co.,*
  260 F.3d 239 (3d Cir. 2001) ..................................8

*In re Nine West Shoes Antitrust Litig.,*
  80 F. Supp. 2d 181 (S.D.N.Y. 2000) ..........................10

*O'Brien v. Leegin Creative Leather Prods., Inc.,*
  277 P.3d 1062 (Kan. 2012) ....................................6

*In re Optical Disk Drive Antitrust Litig.,*
  2011 U.S. Dist. LEXIS 101763 (N.D. Cal. Aug. 3,
  2011) .......................................................12

*Oreck Corp. v. Whirlpool Corp.*,
  639 F.2d 75 (2d Cir. 1980) ...................................15

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
  2011 U.S. Dist LEXIS 51330 (E.D.N.Y. Jan. 4, 2011) ......12, 15

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
  2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012) ...........................................15

*Shrey v. Foresman*,
  505 Fed. Appx. 112 (3d Cir. 2012) ...........................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................12, 16

*United States v. Sargent Electric Co.*,
  785 F.2d 1123 (3d Cir. 1986) ...............................12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) .......................................5, 9

**Statutes**

15 U.S.C. § 15b..................................................5

Ariz. Rev. Stat. Ann. §§ 34-254(C), 44-1410....................5

Ark. Code Ann. § 16-56-115.....................................7

Cal. Bus. & Prof. Code § 16750.1...............................6

D.C. Code § 23-113(a)(5).......................................6

Fla. Stat. § 542.235(1)........................................6

Haw. Rev. Stat. § 480-24.......................................6

740 Ill. Comp. Stat. 10/7(2)...................................6

Iowa Code § 553.16(1)..........................................6

Mass. Gen. Laws Ann. ch. 93, § 13..............................6

Me. Rev. Stat. Ann. Tit. 14, § 752.............................7

Mich. Comp. Laws Ann. § 445.781(2).............................6

Minn. Stat. § 325D.64........................................6

Miss. Code Ann. § 15-1-49....................................6

Mo. Rev. Stat. § 416.131.2...................................6

Mont. Code Ann. § 27-2-231...................................7

N.C. Gen. Stat. § 75-16.2....................................6

N.D. Cent. Code § 51-08.1-10(2)..............................6

N.H. Rev. Stat. Ann. § 356.12................................6

N.M. Stat. Ann. § 57-1-12....................................6

N.Y. Gen. Bus. Law § 340(5)..................................6

Neb. Rev. Stat. § 59-1612....................................6

Nev. Rev. Stat. § 598A.040(4)................................6

Or. Rev. Stat. § 646.800(2)..................................6

S.C. Code Ann. §§ 15-3-530, 39-5-150.........................6

S.D. Codified Laws § 37-1-14.4...............................6

Utah Code Ann. § 76-10-3117(2)...............................6

Vt. Stat. Ann. tit. 12, § 511................................7

W. Va. Code § 47-18-11.......................................6

Wis. Stat. Ann. § 133.18.....................................7

**Other Authorities**

Federal Rule of Civil Procedure 9(b).........................8

I.    **PRELIMINARY STATEMENT**

Defendants Höegh Autoliners AS ("Höegh") and Höegh Autoliners, Inc. ("Höegh Inc.") (the "Höegh Defendants") join in the arguments set forth in the consolidated brief in support of all defendants' motion to dismiss the indirect purchasers' ("IPPs") complaints.  In addition to those arguments, the Höegh Defendants submit this supplemental brief supporting dismissal of all claims alleged against them in (i) the End Payors' second consolidated amended class action complaint (the "End Payors complaint"); (ii) the Auto Dealers' consolidated second amended class action complaint (the "Auto Dealers complaint"); and (iii) the Truck Centers' class action complaint (the "Truck Centers complaint")[1].

The IPPs improperly name the Höegh Defendants as purported members of a global price fixing and market allocation conspiracy in the Vehicle Carrier Services.  In doing so, the IPPs fail to allege sufficient facts to support their claims that the Höegh Defendants participated in such a cartel, and shockingly ignore substantial evidence--of which the IPPs are well aware--to the contrary.

As the IPPs acknowledge, the catalyst for this lawsuit is the publicly reported investigation by multiple global antitrust

---

[1]  Höegh Inc. is not named as a defendant in the Truck Centers complaint.  With respect to the Truck Centers complaint, this supplemental brief is filed on behalf of Höegh only.

and competition authorities of the vehicle carrier services market.  Yet these investigations have not resulted in any charges against the Höegh Defendants.  Indeed, after conducting a one and one-half year investigation of all of the named defendants--three of whom, MOL, NYK, and "K" Line, are headquartered in Japan--the Japan Fair Trade Commission earlier this year imposed cease and desist orders and fines against several of the defendants in this action, but imposed no such penalties on either of the Höegh Defendants.

The Höegh Defendants barely appear in the IPPs' complaints. Höegh Inc. is not mentioned in any of the complaints, other than in allegations that identify Höegh Inc. and characterize it as Höegh's U.S. agent.  As to Höegh--with the exception of vague allegations of meetings that ended in 2002--the IPPs allege a bare four meetings or conversations involving Höegh, only one of which is alleged to have occurred during the applicable statute of limitations periods.

That meeting allegedly consisted of a discussion with only *one* other competitor (MOL) that involved rates on a single shipping route from New York to West Africa.  The IPPs allege no facts that would connect this discussion--or Höegh's alleged handful of pre-limitations period discussions--with the multi-defendant, worldwide conspiracy the IPPs allege elsewhere.

2

Simply put, and as the IPPs must be aware, if there were a cartel, then Höegh was not a member of it.

## II.  SUPPLEMENTAL STATEMENT OF FACTS

As previously noted, the IPPs' mentions of the Höegh Defendants are scant and stand in stark contrast to the multiple and more specific allegations made against the other defendants. While the IPPs enumerate various trade associations and industry meetings that allegedly provided "opportunities" for defendants to conspire, neither of the Höegh Defendants is alleged to have attended any of these meetings.  End Payors Complaint ¶¶ 110-116; Auto Dealers Complaint ¶¶ 94-103; Truck Centers Complaint ¶¶ 93-98.  Instead, the Höegh Defendants' alleged involvement is limited to the following:

- ▪ From the late 1990s through 2002, Höegh and other defendants participated twice a year in meetings at which fleet reductions were "discussed."  End Payors Complaint ¶ 147; Auto Dealers Complaint ¶ 134; Truck Centers Complaint ¶ 134.  The IPPs do not allege that any agreement was reached at these meetings.  These alleged meetings ended in 2002--more than a decade before the IPPs filed suit.  *Id.*

- ▪ Between 2002 and 2003--again, more than ten years before the IPPs sued the Höegh Defendants--Höegh allegedly agreed with MOL not to compete against MOL for certain routes.

End Payors Complaint ¶ 138; Auto Dealers Complaint ¶ 126; Truck Centers Complaint ¶ 126.

▪    In or around 2008 or 2009, after the Vehicle Carrier Services market experienced a drop in demand, Höegh and WWL "spoke about the need for fleet reductions."  End Payors Complaint ¶ 148; Auto Dealers Complaint ¶ 135; Truck Centers Complaint ¶ 135.  Höegh subsequently engaged in cold layups. End Payors Complaint ¶ 148; Auto Dealers Complaint ¶ 140; Truck Centers Complaint ¶ 135.  The IPPs do not allege that they were injured as a result of Höegh's cold layups, either within or before any applicable limitations period.

▪    In November 2011, Höegh allegedly "discussed pricing" with MOL regarding routes from New York to West Africa.  End Payors Complaint ¶ 130; Auto Dealers Complaint ¶ 118; Truck Centers Complaint ¶ 118.  This is the only allegation against Höegh during any of the applicable limitations periods.  The IPPs do not allege that any agreement was reached at this meeting.

The IPPs also allege that the U.S. Department of Justice, the Japan Fair Trade Commission, and other international competition authorities have investigated, brought various charges against, and/or imposed penalties against some of the other defendants.  End Payors Complaint ¶¶ 149-155; Auto Dealers Complaint ¶¶ 141-148; Truck Centers Complaint ¶¶ 136-142.  The

End Payors and Auto Dealers further allege various acts of prior collusion by certain defendants in other markets.  End Payors Complaint ¶¶ 161-168; Auto Dealers Complaint ¶¶ 154-161.  These allegations about competition authority enforcement and prior collusion do not include a single mention of either of the Höegh Defendants.

Finally, the IPPs make a general allegation that defendants fraudulently concealed the alleged conspiracy, including citations to a number of generalized public statements allegedly made by various other defendants about the competitiveness of the vehicle shipping business.  End Payors Complaint ¶¶ 194-200; Auto Dealers Complaint ¶¶ 188-195; Truck Centers Complaint ¶¶ 173-179.  But the IPPs do not--and cannot--make any allegation that the Höegh Defendants either made any of these statements or otherwise took any action to fraudulently conceal the alleged cartel.

## III. ARGUMENT

### A.  ALL ALLEGATIONS PLED AGAINST THE HÖEGH DEFENDANTS ARE BARRED BY THE STATUTE OF LIMITATIONS

Under the Clayton Act, a private antitrust action must be brought within four years of its accrual.  *See* 15 U.S.C. § 15b; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321 (1971).  Nearly all of the IPPs' claims under the antitrust laws of various states have limitations periods of four years or fewer.  Ariz. Rev. Stat. Ann. §§ 34-254(C), 44-1410 (four

years); Cal. Bus. & Prof. Code § 16750.1 (four years); D.C. Code § 23-113(a)(5) (four years); Fla. Stat. § 542.235(1) (four years); Haw. Rev. Stat. § 480-24 (four years); 740 Ill. Comp. Stat. 10/7(2) (four years); Iowa Code § 553.16(1) (four years); *O'Brien v. Leegin Creative Leather Prods., Inc.,* 277 P.3d 1062, 1084-86 (Kan. 2012) (three-year limitations applies to actions under Kansas antitrust statute); Mass. Gen. Laws Ann. ch. 93, § 13 (four years); Mich. Comp. Laws Ann. § 445.781(2) (four years); Minn. Stat. § 325D.64 (four years); Miss. Code Ann. § 15-1-49 (three years); Mo. Rev. Stat. § 416.131.2 (four years); Neb. Rev. Stat. § 59-1612 (four years); Nev. Rev. Stat. § 598A.040(4) (four years); N.H. Rev. Stat. Ann. § 356.12 (four years); N.M. Stat. Ann. § 57-1-12 (four years); N.Y. Gen. Bus. Law § 340(5) (four years); N.C. Gen. Stat. § 75-16.2 (four years); N.D. Cent. Code § 51-08.1-10(2) (four years); Or. Rev. Stat. § 646.800(2) (four years); S.C. Code Ann. §§ 15-3-530, 39-5-150 (three years); S.D. Codified Laws § 37-1-14.4 (four years); *State ex rel. Leech v. Levi Straus & Co.*, 1980-2 Trade Cas. (CCH) 63,558, at 76,973 (Tenn. Ch. 1980) (three-year limitations period applies to antitrust actions under Tennessee law); Utah Code Ann. § 76-10-3117(2) (four years); W. Va. Code § 47-18-11 (four years).  The only exceptions are Arkansas and Montana, which have five-year limitations periods, and Maine, Vermont, and Wisconsin, which have six-year limitations periods.

Ark. Code Ann. § 16-56-115 (five years); Me. Rev. Stat. Ann. Tit. 14, § 752 (six years); Mont. Code Ann. § 27-2-231 (five years); Vt. Stat. Ann. tit. 12, § 511 (six years); Wis. Stat. Ann. § 133.18 (six years).  An action accrues, and the statute of limitations begins to run, when the plaintiff is harmed by alleged acts of the defendant.  *Hinds County, Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 519 (S.D.N.Y. 2009); *Continental-Wirt Electronics Corp. v. Lancaster Glass Corp.*, 459 F.2d 768, 770 (3d Cir. 1972).

The Höegh Defendants were not named in the Auto Dealers and End Payors actions until amended complaints were filed in those actions on June 2, 2014.  The Truck Dealers Complaint was filed even later, on July 16, 2014.  While the IPPs generally assert that the alleged conspiracy was fraudulently concealed, they allege no act on the part of either of the Höegh Defendants that would constitute fraudulent concealment.  Moreover, the IPPs do not allege that either of the Höegh Defendants, during the six years prior to June 2, 2014, committed an overt act in furtherance of the alleged global, multi-defendant conspiracy. Consequently, the IPPs' claims against the Höegh Defendants are time-barred.

### 1.   The IPPs Fail to Adequately Plead Fraudulent Concealment by the Höegh Defendants

Fraudulent concealment is an "equitable doctrine [that] is read into every federal statute of limitations," including the

Clayton Act. *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d. Cir. 1993). The plaintiff, however, must prove that "active misleading" by the defendant prevented the plaintiff from recognizing the validity of its claim within the limitations period, and that the plaintiff's ignorance is not attributable to its lack of "reasonable due diligence in attempting to undercover the relevant facts." *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001) (quoting *Forbes v. Eagleson*, 228 F.3d 471, 468-88 (3d Cir. 2000)); *Shrey v. Foresman*, 505 Fed. Appx. 112 (3d Cir. 2012). In meeting this burden, plaintiffs may not "rely on bald allegations of fraudulent concealment to shield their claims from dismissal as untimely." *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 227 (E.D.N.Y. 2003). Fraudulent concealment is subject to the heightened pleading requirements of Rule 9(b) and must be pled with particularity. *Hinds County*, 620 F. Supp. 2d at 520.

As noted, the IPPs fail to allege that either of the Höegh Defendants took any action to fraudulently conceal the alleged antitrust violations. While the IPPs do allege that certain other defendants made public statements generally discussing the competitiveness of the vehicle carrier services industry, they do not allege a single act of fraudulent concealment by the Höegh Defendants. Therefore, the IPPs' claim of fraudulent

8

concealment does not toll the statute of limitations with respect to the Höegh Defendants.

**2.   The IPPs Fail to Adequately Allege an Overt Act in Furtherance of the Conspiracy By the Höegh Defendants Within Any Applicable Limitations Period**

After a conspiracy is formed a new cause of action may arise, and a new limitations period may begin to run, if the defendant commits a subsequent overt act in furtherance of the antitrust conspiracy. *Zenith*, 401 U.S. at 338. However, the IPPs do not allege that Höegh Defendants committed any overt act in furtherance of the alleged conspiracy for six years prior to June 2, 2014, when the first groups of the IPPs amended their complaints to name the Höegh Defendants. Since six years is the longest of the limitations periods potentially applicable to this action, all of the IPPs' claims against the Höegh Defendants are time-barred.

The only instance in which the Höegh Defendants are described as having done anything during the limitations period is the alleged "dinner" in November 2011 at which executives of Höegh and MOL discussed rates for vehicle carrier services rates for a single route: New York to West Africa. End Payors Complaint ¶ 130; Auto Dealers Complaint ¶ 118; Truck Centers Complaint ¶ 118. There is no allegation that any agreement was reached during this discussion, no allegation of any facts

9

connecting this discussion with the alleged conspiracy, and no allegation that this discussion caused any harm to the IPPs.

Moreover, the "commission of a 'separate new overt act' will not permit the plaintiff to recover for the injury caused by old overt acts that do not fall within the limitations period." *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 192 (S.D.N.Y. 2000). A plaintiff can proceed with a claim based on overt acts that occurred within the statute of limitations, but the plaintiff can recover damages based only on those acts and not on any previous acts. *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d at 192. Thus, at a minimum, all claims arising out of routes other than the New York-West Africa route, or out of any alleged overcharges for the New York-West Africa route occurring prior to November 2011, should be dismissed as time-barred.[2]

---

[2] The IPPs do allege that Höegh engaged in cold layups as a result of discussions that occurred "in or around 2008 or 2009." End Payors Complaint ¶ 148; Auto Dealers Complaint ¶ 135; Truck Centers Complaint ¶ 135. There is no allegation that these discussions occurred on or after June 2, 2008--as would be required to bring them within the six-year limitations period for Maine, Vermont, and Wisconsin--or that they occurred on or after June 2, 2009, as would be required under the five-year limitations period for Arkansas and Montana. Given that the discussions are alleged to have occurred before June 2, 2010, they cannot constitute an overt act for purposes of the four-year limitations period under the remaining states' laws and Federal Clayton Act. In any event, the IPPs have made no allegation that they were harmed at any time by these discussions or the resulting cold layups.

### B. THE IPPs FAIL TO ALLEGE FACTS SUFFICIENT TO DEMONSTRATE THAT THE HÖEGH DEFENDANTS WERE PART OF A CARTEL

The IPPs allege that the Höegh Defendants joined with all other named defendants to form a "conspiracy to fix, raise, maintain, and/or stabilize prices and allocate the market and customers in the United States for Vehicle Carrier Services." Auto Dealers Complaint ¶ 1; *see also* End Payors Complaint ¶ 1; Truck Centers Complaint ¶ 1. Yet the IPPs' non-conclusory allegations against the Höegh Defendants are limited to two discussions and one discrete, bilateral agreement with defendant MOL that occurred more than a decade ago. Under established precedent, these alleged facts are simply insufficient to support the IPPs' claim that the Höegh Defendants participated in a global cartel.

To prove a Section 1 violation, a plaintiff must show that the defendant entered into an agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 553 (2007). To adequately plead an overarching conspiracy, plaintiffs must allege facts to show that one overall agreement was made by all conspirators. *See, e.g., Dickson v. Microsoft Corp.*, 309 F.3d 193, 204 n.12 (4th Cir. 2002) ("A single conspiracy exists where there is one overall agreement, or one general business venture.") (quoting *United States v. Squillacote*, 221 F.3d 542, 574 (4th Cir.

2000)).  Specifically, the complaint must allege "an agreement and a conscious decision by each defendant to join it."  *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (quoting *In re Elec. Carbon Prods. Antitrust Litig.,* 333 F. Supp. 2d 303, 311-12 (D.N.J. 2004)).

The Third Circuit has continuously held that where various defendants enter into separate agreements with a common defendant, but defendants have not formed additional agreements with each other, a single overarching conspiracy does not exist. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010); *United States v. Sargent Electric Co.,* 785 F.2d 1123, 1140 (3d Cir. 1986) (separate conspiracies to rig bids were not also a single conspiracy merely because a core group of defendants conspired with different subgroups of defendants to eliminate competitive bidding).  Allegations of narrow, isolated agreements between pairs of conspirators are insufficient.  *See, e.g., Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.,* 2011 U.S. Dist LEXIS 51330 at *27 (E.D.N.Y. Jan. 4, 2011) (holding individual agreements were not sufficiently connected to each other to form one global conspiracy); *In re Optical Disk Drive Antitrust Litig.*, 2011 U.S. Dist. LEXIS 101763 at *9 (N.D. Cal. Aug. 3, 2011) (holding that allegations of isolated occurrences of bid rigging were "a

12

far cry from establishing plausibility for a broad six year continuing agreement among all defendants").

In *Dickson*, the Fourth Circuit held that the plaintiffs failed to allege a single conspiracy among Microsoft and various computer manufacturers, despite common involvement of Microsoft with each computer manufacturer. *Dickson*, 309 F.3d at 203. Similarly, in *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007), the Second Circuit upheld the dismissal of an antitrust claim where the plaintiffs alleged "basically every type of conspiratorial activity that one could imagine" but provided "an insufficient factual basis for their assertions of a worldwide conspiracy" due to the lack of an overarching agreement by defendants. *Id.* at 50-52.

Here, the IPPs utterly fail to plead facts that establish the Höegh Defendants' participation in the overarching cartel they allege. While the IPPs make general allegations about defendants' "opportunities for conspiratorial communication," identifying trade associations and industry organizations where "Defendants" had "opportunities to meet under the auspices of legitimate business," there are no allegations that the Höegh Defendants belonged to any of these organizations. End Payors Complaint ¶¶ 110-116; Auto Dealers Complaint ¶¶ 94-103; Truck Centers Complaint ¶¶ 93-98. Moreover, the Höegh Defendants are conspicuously missing from the IPPs' allegations about

13

government investigations of, and charges brought against, certain of the other defendants.  End Payors Complaint ¶¶ 149-155; Auto Dealers Complaint ¶¶ 141-148; Truck Centers Complaint ¶¶ 136-142.

The IPPs allege only that: (i) Höegh agreed not to compete with MOL for certain routes between 2002 and 2003 (End Payors Complaint ¶ 138; Auto Dealers Complaint ¶ 126; Truck Centers Complaint ¶ 126); (ii) Höegh engaged in cold layups in approximately  2008 or 2009 after speaking with WWL "about the need for fleet reductions" (End Payors Complaint ¶ 148; Auto Dealers Complaint ¶ 135; Truck Centers Complaint ¶ 135): and (iii) Höegh discussed New York-West Africa pricing with MOL in November 2011 (End Payors Complaint ¶ 130; Auto Dealers Complaint ¶ 118; Truck Centers Complaint ¶ 118).[3]  In only the first of these instances—which occurred more than a decade before the Höegh Defendants were sued--is an agreement alleged, and none of these allegations even remotely suggests Höegh's participation in a global conspiracy with all defendants.

The IPPs also vaguely allege that Höegh and other defendants participated twice a year in meetings at which fleet reductions were "discussed."  End Payors Complaint ¶ 147; Auto Dealers Complaint ¶ 134; Truck Centers Complaint ¶ 134.   The

---

[3] None of the IPPs' complaints makes any allegation that Höegh Inc. did anything other than generally act as Höegh's agent in the United States.  All claims against Höegh Inc. should be dismissed for this separate reason.

IPPs do not allege, however, that any agreements were reached at these meetings, which also would have occurred well outside the limitations period.  The IPPs' conclusory and entirely speculative statements are patently insufficient to survive a motion to dismiss, as allegations that "allude to nothing more than Defendants' participation in meetings, conversations, and communications and state that the defendants reached agreement during these meetings as to their anticompetitive practices" do not satisfy *Twombly* for the purposes of alleging participation in an anticompetitive cartel.  *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,* 2011 U.S. Dist. LEXIS 51330 at *53 (E.D.N.Y. Jan. 4, 2011), *adopted by Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.,* 2012 U.S. Dist. LEXIS 113829 (E.D.N.Y. Aug. 13, 2012) (quoting *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund,* 596 F. Supp. 2d 630, 640 (E.D.N.Y. 2009)) (internal quotation omitted); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 51 & n. 5 (2d Cir. 2007) (allegations that defendants "participated in meetings . . . to discuss pricing and market divisions" insufficient to state a cause of action); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 79 (2d Cir. 1980) ("A mere showing of close relations or frequent meetings between the alleged conspirators, however, will not sustain a plaintiff's burden absent evidence which

would permit the inference that those close ties led to an illegal agreement.").

To survive a motion to dismiss, a plaintiff must allege "an agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008).  Here, at most, the IPPs allege that Höegh agreed with MOL to allocate transportation of vehicles on three routes, United States-Middle East, Thailand-Europe, and the United States-Africa, without any facts suggesting that the IPPs were harmed as a result thereof and one of which (Thailand-Europe) is not even conceivably connected to the IPPs' business.  Allegations that MOL had agreements with other defendants as well as Höegh simply do not support an inference that Höegh itself entered into an agreement with any defendant other than MOL.  The IPPs' attempt to connect the Höegh Defendants to the wide-ranging cartel alleged is manifestly inadequate.

## IV.   <u>CONCLUSION</u>

The Höegh Defendants did not participate in the alleged cartel.  The IPPs do not change this fact by dropping the occasional, sporadic reference to Höegh in the midst of more substantive, detailed allegations against the other defendants. And only one of those references alleges that Höegh did anything with the applicable limitations periods, a bilateral meeting

16

with no alleged connection to the cartel and at which no

agreement is alleged to have been reached.

    For all of these reasons, the Höegh Defendants respectfully

request that plaintiffs' claims against them be dismissed with

prejudice.

                            Respectfully submitted,

**DATED:**    October 13, 2014    /s/ Melissa H. Maxman
                                  Melissa H. Maxman
                                  **COZEN O'CONNOR PC**
                                  1627 I Street, NW - Suite 1100
                                  Washington, D.C. 20006
                                  Telephone:  202-912-4873
                                  mmaxman@cozen.com

                                  Kevin M. Kelly
                                  **COZEN O'CONNOR PC**
                                  1900 Market Street
                                  Philadelphia, PA 19103
                                  Telephone:  215-665-5570
                                  kmkelly@cozen.com

                                  *Counsel for defendants*
                                  *Höegh Autoliners AS and*
                                  *Höegh Autoliners, Inc.*