# Ballard Spahr LLP

210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
TEL 856.761.3400
FAX 856.761.1020
www.ballardspahr.com

Roberto A. Rivera-Soto
Direct: 856.761.3416
riverasotor@ballardspahr.com

<u>*VIA CM/ECF AND VIA ORDINARY MAIL*</u>

June 22, 2015

The Honorable Esther Salas
U.S. District Judge
U.S. District Court for the District of New Jersey
   Newark Vicinage
MLK, Jr. Federal Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:  *IN RE VEHICLE CARRIER SERVICES ANTITRUST LITIG.*
     Master Docket No.: 13-cv-3306 (MDL No. 2471)
     *(This filing relates to all indirect purchaser actions –*
     *the End-Payors complaint, the Auto Dealers complaint, and*
     *the Truck Centers complaint)*

Dear Judge Salas:

On behalf defendants Nippon Yusen Kabushiki Kaisha and NYK Line North America Inc. (the "NYK defendants"); Kawasaki Kisen Kaisha, Ltd. and "K" Line America, Inc. (the "K-Line defendants"); Wallenius Wilhelmsen Logistics AS, Wallenius Wilhelmsen Logistics America LLC, and EUKOR Car Carriers, Inc. (the "WWL/EUKOR defendants"); Compañía Sud Americana de Vapores, S.A. and CSAV Agency, LLC (the "CSAV defendants"); Höegh Autoliners AS and Höegh Autoliners, Inc. (the "Höegh defendants"), and Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K. Bulk

A PA Limited Liability Partnership | John B. Kearney, Managing Partner

Atlanta | Baltimore | Bethesda | Denver | Las Vegas | Los Angeles | New Jersey | New York
Philadelphia | Phoenix | Salt Lake City | San Diego | Washington, DC | Wilmington
www.ballardspahr.com

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 2

Shipping (U.S.A.), Inc. and World Logistics Service (U.S.A.) Inc. (the "MOL defendants"), (collectively, "defendants"), please accept this letter brief in lieu of a more formal brief in response to the June 8, 2015 letter submitted by the end-payor class on behalf of the indirect purchaser plaintiffs (the "IPPs") regarding the recent split decision in Oneok, Inc. v. Learjet, Inc., 575 U.S. ___, 135 S. Ct. 1591 (2015). In their June 8, 2015 letter, the IPPs assert that Oneok undermines defendants' Shipping Act preemption arguments in this case.

The IPPs are wrong for at least three separate reasons: (1) Oneok does not address the question of conflict preemption; (2) Oneok does not address the field preemption issue before the Court; and (3) the different regulatory structures of the Natural Gas Act and the Shipping Act command different results.

We address these issues in that order.

1. **Oneok does not address conflict preemption**.

At the outset, Oneok does not address conflict preemption, and thus has no impact on defendants' argument that the IPPs' state-law claims are also preempted under this

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 3

doctrine. See 135 S. Ct. at 1602 (declining to address conflict preemption because "the parties have not argued conflict pre-emption"); see also id. at 1595 ("[W]e consider only the field pre-emption question."). As noted in defendants' briefs, state laws are preempted to the extent they "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ECF No. 211 at 40 (quoting Edgar v. MITE Corp., 457 U.S. 624, 631 (1982)); see also Oneok, supra, 135 S. Ct. at 1595 (same).

The IPPs' attempt to bring claims under dozens of different state laws presents just such an obstacle to Congress's objectives in designing the Shipping Act as the exclusive civil remedy for conduct that violates the Act: "the Shipping Act's exemption from private suits under federal antitrust law would be rendered meaningless if the same conduct that is exempt under federal law could be challenged by private plaintiffs under the antitrust laws of any of the fifty states." ECF No. 211 at 43; see generally id. at 40-44. Therefore, the Court should dismiss the IPPs' claims as conflict preempted.

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 4

2. **Oneok does not address the field preemption issue before the Court.**

On field preemption, Oneok does not resolve the issue before the Court; unlike this case, Oneok involved conduct that was *not* regulated by the relevant statute. Oneok held that state-law claims by direct purchasers concerning retail sales were not preempted by the Natural Gas Act. 135 S. Ct. at 1600. That conclusion was entirely reasonable: the Act authorizes the Federal Energy Regulatory Commission ("FERC") to regulate "the sale in interstate commerce of natural gas for resale" -- that is, wholesale sales. Id. at 1596.

The Oneok plaintiffs "bought large quantities of natural gas directly from interstate pipelines for their own consumption" – in other words, retail sales. Id. at 1598. They asserted that the retail prices they paid were artificially inflated by certain practices by the Oneok defendants that manipulated the natural-gas indices. Ibid. For that reason, the Court concluded that the claims were "directed at practices affecting retail rates," and not "at jurisdictional [interstate] sales." Id. at 1600, 1602 (emphasis in original). Stated differently, the claims related to conduct that was not covered by the Natural Gas Act -- that is, nonjurisdictional retail

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 5

sales -- and thus could be regulated by the states. Id. at 1600. Importantly, the Natural Gas Act expressly excludes retail sales from the jurisdiction of FERC, showing that Congress clearly did not intend to occupy the field of the regulation of retail natural gas sales. See 15 U.S.C. § 717(b) ("The provisions of this chapter . . . shall not apply . . . to the local distribution of natural gas[.]"); see also Oneok, supra, 135 S. Ct. at 1596 ("The Act leaves regulation of other portions of the industry—such as production, local distribution facilities, and direct sales—to the States.").

In stark contrast, the IPPs challenge conduct that plainly is subject to the Shipping Act. See 46 U.S.C. § 40301(a) ("This part applies to an agreement among ocean common carriers to . . . discuss, fix, or regulate transportation rates . . . control, regulate, or prevent competition in international ocean transportation[.]").

3. **The different regulatory structures of the Natural Gas Act and the Shipping Act command different results.**

Historically, states' roles in regulating natural gas and international ocean shipping have differed in key ways. As Oneok emphasized, states traditionally have played a role in

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 6

regulating the natural gas industry. Oneok, supra, 135 S. Ct. at 1595-96. That tradition was preserved in the Natural Gas Act, which established "a harmonious, dual system of regulation of the natural gas industry—federal and state regulatory bodies operating side by side, each active in its own sphere." Pub. Utilities Comm'n of Ohio v. United Fuel Gas Co., 317 U.S. 456, 467 (1943); see also Oneok, supra, 135 S. Ct. at 1599 (noting Congress's "meticulous regard for the continued exercise of state power" in natural gas industry).

This cooperative federal-state dynamic bears no resemblance to the field of national and international maritime commerce, "where the federal interest has been manifest since the beginning of our Republic." United States v. Locke, 529 U.S. 89, 99 (2000). In this area, "there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers." Id. at 108. Against that historical backdrop, Congress has permitted ocean common carriers to engage in conduct that, in other industries, would garner antitrust scrutiny. See 46 U.S.C. § 40301(a) (allowing ocean common carriers to, among other things, "discuss, fix, or regulate . . . rates" and "control, regulate, or prevent

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 7

competition"); id. at § 40307 (providing exemption from antitrust laws). Congress has defined the boundaries of what conduct is permissible, including conditions that must be satisfied. See id. at § 40302 (filing requirements); id. at § 40303 (content requirements). And, Congress has designed an exclusive remedial scheme for policing transgressions. See id. at § 40304 (enforcement action by Federal Maritime Commission); id. at § 41301 (private enforcement through filing of complaint with Federal Maritime Commission). The Shipping Act leaves no room for states to decide what conduct is permitted and what conduct is not, or to penalize conduct that Congress has authorized.

As IPPs note, Oneok acknowledged that states have a "long history of providing common-law and statutory remedies against monopolies and unfair business practices." Id. at 1601 (internal quotation marks omitted). In Oneok's context, this deference to state antitrust regulation makes sense in light of the history of state regulation of the natural gas industry and the statutory framework that expressly permits state regulation of certain parts of the industry. See Oneok, supra, 135 S. Ct. at 1601 (describing "careful balance between federal and state

regulation that Congress struck when it passed the Natural Gas Act"). Unlike the Shipping Act, nowhere does the Natural Gas Act seek to permit conduct traditionally deemed anticompetitive, such as agreements between competitors to fix rates or prevent competition.

The Shipping Act addresses a field traditionally regulated exclusively by the federal government and expressly permits certain types of anticompetitive conduct, all the while vesting exclusive jurisdiction in the Federal Maritime Commission to administer the provisions of the Act; these include the public and private enforcement mechanisms for violations of the Shipping Act. It cannot be gainsaid: the Shipping Act leaves no room for state regulation in the field of international ocean shipping.

That Congress intended to leave no room for the states to regulate international ocean shipping is underscored by the unworkable implications of the IPPs' position. According to the IPPs, there is no field preemption here because "the Shipping Act expressly precludes certain federal antitrust suits—but it avoids precluding suits brought to enforce state antitrust statutes." ECF No. 251 at 2-3. If the IPPs are correct that

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 9

the Shipping Act does not preclude their state antitrust claims in this case, it would lead to an absurd result: plaintiffs could bring state antitrust claims based on agreements that are filed and effective under the Shipping Act -- which immunizes that conduct from federal antitrust law[1] -- simply because Congress did not "expressly preclude" such suits. That clearly cannot be the result Congress intended. See, e.g., Seawinds Ltd. v. Nedlloyd Lines, B.V., 80 B.R. 181, 184-85 (N.D. Cal. 1987), aff'd, 846 F.2d 586 (9th Cir. 1988) ("By removing the courts from this regulatory process, Congress removed the potential for continuing regulatory uncertainty."); House Report, at 4, 169 (stating Congress's "resolve to provide certainty and predictability in regulation and to establish a regulatory maritime policy that will endure").[2]

---

[1] As defendants noted earlier, "[i]n addition to the exemption from private suits under Section 40307(d), the Shipping Act also provides for a full exemption from 'the antitrust laws' -- including immunity from criminal prosecution -- for agreements filed and effective (or exempt from filing) under the Shipping Act, and for activities reasonably believed to be within the scope of a filed and effective agreement. 46 U.S.C. § 40307(a)(1)-(3). The term 'antitrust laws' is defined entirely by reference to federal laws. 46 U.S.C. § 40102(2)." ECF No. 211 at 43 n.34.

[2] The fact that Congress did not "expressly preclude" state law claims in the Shipping Act says nothing about whether it has occupied the field of international ocean shipping, because field preemption is

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 10

      The illogical consequence of the IPPs' position is made patent when it is contrasted with the industry at issue in Oneok -- the natural gas industry -- where Congress demonstrated "meticulous regard for the continued exercise of state power." See Oneok, supra, 135 S. Ct. at 1599. In light of the differences between the Shipping Act and the Natural Gas Act, Oneok's deference to broadly-applicable state laws cannot be cut-and-pasted blindly into the field of international ocean shipping. In other words, the fact that "Congress sought to preserve the continued exercise of state power" in the context of antitrust regulation of the natural gas industry, see ECF No. 251 at 3, abjectly fails to address the question of state antitrust regulation of international ocean shipping, where Congress has never recognized concurrent state authority.

4. **Conclusion.**

      For the foregoing authority, arguments and reasons, and for the reasons earlier stated in defendants' briefs on the pending motions to dismiss, the state-law claims at issue here

---

a type of "implied preemption." Lozano v. City of Hazleton, 724 F.3d 297, 302-03 (3d Cir. 2013) (emphasis supplied).

The Honorable Esther Salas, U.S.D.J.
June 22, 2015
Page 11

are preempted by the Shipping Act; by its own terms, Oneok has no effect on that conclusion.

* * * * *

Looking forward to appearing before your Honor to argue these matters on July 23rd, I remain,

Respectfully yours,

**BALLARD SPAHR LLP**

By: _/s/ Roberto A. Rivera-Soto_
Roberto A. Rivera-Soto

cc: The Hon. Joseph A. Dickson
U.S. Magistrate Judge *(VIA ORDINARY MAIL)*

Interim Liaison Counsel for the auto dealers *(VIA CM/ECF)*
Interim Liaison Counsel for the end payors *(VIA CM/ECF)*
Interim Counsel for the truck centers *(VIA CM/ECF)*
Counsel for defendants *(VIA CM/ECF)*