IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| IN RE VEHICLE CARRIER : SERVICES ANTITRUST LITIGATION : : *This document relates to* : *the General Motors LLC action* : | Master Docket No.: 13-cv-3306 (MDL No. 2471) ORAL ARGUMENT REQUESTED |

CONSOLIDATED MEMORANDUM OF DEFENDANTS EUKOR CAR CARRIERS INC.,
WALLENIUS WILHELMSEN LOGISTICS AMERICAS LLC
AND NYK LINE (NORTH AMERICA) INC.
IN SUPPORT OF THEIR MOTION TO STAY THE TIME
TO ANSWER, MOVE OR OTHERWISE RESPOND TO
THE COMPLAINT OF PLAINTIFF GENERAL MOTORS LLC

I.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND.

On May 24, 2013, the first of the cases that comprise
this multi-district litigation ("MDL") was filed in this Court.
[Dkt. No. 1.]  On October 8, 2013, Judicial the Panel on Multi-
District Litigation the "MDL Panel") selected this Court as the
transferee court in this MDL.  [Dkt. No. 21.]  By Order No. 1
dated December 27, 2013, the Court commanded that

> [t]he provisions of this Order shall
> govern the practice and procedure in those
> actions:  (a) transferred to this Court by
> the JPML pursuant to its October 18, 2013
> Order;  (b) all actions that arise out of or
> relate to the subject matter of this
> litigation which was previously or will be
> transferred to MDL 2471; and (c) any "tag-

along" actions later filed in, removed to, or transferred to this Court.

[Dkt. No. 48, ¶ 1.]

Order No. 1 further provides that "[a]ny 'tag-along' actions later removed to or transferred to this Court, or directly filed in the District of New Jersey, will automatically be consolidated with this action without the necessity of future motions or orders." Id. at ¶ 2.

Since October 8, 2013 -- but before plaintiff General Motors LLC ("GM") filed its complaint -- twenty-eight class action complaints by direct purchaser plaintiffs ("DPPs") and indirect purchaser plaintiffs ("IPPs") have been consolidated before this Court. [Dkt. No. 95, Schedule A.] By an order dated March 3, 2014, the Court appointed interim co-lead and liaison counsel for each of the following groups of plaintiffs: the DPPs, the End-Payor IPS, and the Auto Dealers IPPs. [Dkt. No. 106.] On June 2, 2014, each of those groups of plaintiffs filed their consolidated amended complaints. [Dkt. Nos. 133, 134, 136, 137, 139, 140, 142, 182, 183, 197, 199.] And, on July 14, 2014, a new class action complaint -- captioned Rich Truck Centers of Arizona, Inc., et al. v. Nippon Yusen Kabushiki Kaisha, et al. (the "Truck Dealers complaint") -- was filed under this master docket number and MDL number; it was addressed as a third set of IPPs in the motions to dismiss. See generally

Sept. 10. 2014 letter to The Honorable Esther Salas [Dkt. No. 187.]

As ordered by the Court on June 16, 2014 [Dkt. No. 156], motions to dismiss have been filed and are fully briefed in respect of all four complaints:  the DPPs' complaint and the three IPPs (the End-Payors, the Auto Dealers and the Truck Centers) complaints.  Oral argument on the pending motions to dismiss is scheduled for July 23, 2015.

On June 16, 2015 -- more than two years after the first complaint was filed, twenty months after the cases were transferred to this Court, six months after the motions to dismiss were fully briefed and filed -- and although it was well aware of the pendency of this MDL before this Court, General Motors LLC ("GM") filed its complaint in the U.S. District Court for the Eastern District of New York.  Three days later, GM filed a notice of potential "tag-along" with the JPML and, on June 29, 2015, the MDL Panel conditionally transferred the GM action to this Court.

As a quintessential direct purchaser plaintiff, GM has sued two sets of related defendants:  (1) the NYK defendants, consisting of a Japanese parent corporation, Nippon Yusen Kabushiki Kaisha ("NYK Japan"), and its wholly-owned U.S. subsidiary, NYK Line (North America) Inc. ("NYK USA"); and (2) a Norwegian corporate entity/parent, Wallenius Wilhelmsen

Logistics AS ("WWL-AS"), its wholly owned U.S. subsidiary,
Wallenius Wilhelmsen Logistics Americas LLC ("WWL-USA"), and
EUKOR Car Carriers Inc. ("EUKOR"), a South Korean entity owned
80% by the shareholders of WWL-AS.  Three of those defendants
have been served:  NYK USA, EUKOR and WWL-USA.  The remaining
defendants - - NJK Japan and WWL-AS -- are foreign corporations
entitled to the protections of The Hague Convention on the
Service Abroad of Judicial and Extrajudicial Documents in Civil
or Commercial Matters (the "Hague Service Convention"),[1]
including a translation of the complaint and related documents.[2]
See also Fed. R. Civ. P. 4(f)(1) (designating Hague Service
Convention as "internationally agreed means of service that is
reasonably calculated to give notice").

---

[1]     For ease of reference, a true and correct copy of the Hague
Service Convention is attached hereto as **Exhibit "A"** and is made
a part hereof by reference.

[2]     Among its several procedural protections, Article 5 of the
Hague Service Convention provides that the "Central Authority
[of the receiving state] may require the document to be written
in, or translated into, the official language or one of the
official languages of the State addressed."  Both Norway and
Japan impose that requirement:  Norway's Royal Ministry of
Justice and Public Safety, Department of Civil Affairs requires
that "requests for service will only be complied with when the
documents to be served is written in Norwegian, Danish or
Swedish, or if the request is accompanied by a translation into
one of these languages," while, according to Japan's Ministry of
Foreign Affairs, "[f]ull translation is required for any
document to be served[.]"  For ease of reference, the listing of
Norway's and Japan's "Central Authority" requirements, as posted
by the Hague Conference on Private International Law, are
attached hereto as **Exhibits "B" and "C"**, respectively, and are
made a part hereof by reference.

Moving defendants have endeavored to coordinate a response to the GM complaint with the present schedule in the MDL, including the July 23, 2015 oral argument on the motions to dismiss.  Specifically, moving defendants offered to enter into a stipulation with GM akin to what other plaintiffs readily agreed:[3]  the foreign defendants would waive their rights under the Hague Service Convention and authorize their U.S. counsel to accept service on their behalf, in exchange for GM stipulating that all five defendants would not have to answer, move or otherwise respond to GM's complaint until 30 days after the Court renders its decision on the pending motions to dismiss, or, alternatively, after GM files an amended complaint in response to the Court's decision.

Moving defendants' proposed stipulation is grounded in reason and common sense.  It would:  (i) relieve the Court of largely duplicative motions to dismiss GM's complaint, which predominantly is based on facts in common with the DPP and IPP consolidated amended complaints and contains the same claims as those complaints (save for GM's added breach of contract claims); (ii) would enable the parties to the GM action to benefit from the Court's ruling on the pending motions to dismiss; and, (iii) would put GM and all five defendants in the

---

[3]     See, e.g., Dkt. Nos. 176, 181, 190, 191, 194, 203, 204, 206.

GM action on the same track in resolving the issues arising from GM's complaint.  GM rejected those offers.  Instead, GM has insisted that the foreign defendants simply waive their rights under the Hague Service Convention, or alternatively, file largely duplicative motions on behalf of moving defendants only to again later file the same motions on behalf of the foreign corporate parents.

Moving defendants readily concede that this question of timing is a matter that should have been – and, in most instances, would have been -- resolved among counsel.  Despite moving defendants' best efforts, it was not.  GM's intransigence required the filing of this motion for a stay, and GM's intractable position deprives all of the defendants the important benefits arising from both the Hague Service Convention and the determination by the MDL Panel:  instead of eliminating duplication and streamlining the proceedings, GM prefers to exacerbate duplicative filings by the parties and decisions by the Court.

## II.  **ARGUMENT**.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  <u>Landis v. North Am. Co.</u>, 299

U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936).  The

decision to enter a stay rests within the sound discretion of

the Court.  Depomed Inc. v. Purdue Pharma L.P., No. 13-571

(JAP), 2014 U.S. Dist. LEXIS 102109, at *5-*6 (D.N.J. July 25,

2014).  "Incidental to a trial court's power to schedule

disposition of the cases on its docket is the power to stay

those proceedings before it so as to promote fair and efficient

adjudication."  Hertz Corp. v. Gator Corp., 250 F. Supp. 2d 421,

424 (D.N.J. 2003) (citations and internal quotation marks

omitted).  "This power to stay proceedings calls for the

exercise of judgment, which must weigh competing interests and

maintain an even balance."  Ibid. (citation and internal

quotation marks omitted).  In exercising its discretion, the

following factors are to be considered: "(1) whether a stay

would unduly prejudice or present a clear tactical disadvantage

to the non-moving party; (2) whether a stay will simplify the

issues in question and trial of the case; and (3) whether

discovery is complete and whether a trial date has been set."

Depomed, supra, 2014 U.S. Dist. LEXIS 102109, at *6 (citations

and internal quotation marks omitted).  Each of those three

factors weighs heavily in favor of a stay.

**(1)   The stay will not prejudice or present a clear
         tactical disadvantage to GM.**

On July 23, 2015, the Court will entertain oral
argument on the pending motions to dismiss.  No discovery has
been undertaken by any party in the MDL pending the Court's
decision on those motions.  More importantly, the Court's
decision will determine whether this MDL goes forward and, if
so, the legal viability of the claims, almost all of which are
duplicated in the GM complaint.  Discovery will not commence
until the ramifications of the Court's decision are fully
explored.  Moreover, GM has been aware of this MDL for months,
if not years.  Yet, it alone decided to wait to file its
complaint until the eleventh hour, and it alone must bear the
brunt of that delay.  In short, GM will not be prejudiced or
incur a "clear tactical disadvantage" by waiting until the
Court's decision before the defendants are required to answer,
move or otherwise respond to GM's complaint.

A stay offers the added benefit of the Court's
guidance on what claims, if any, remain viable; it allows GM the
opportunity to amend its complaint based on that guidance, and
it avoids needless filings by moving defendants that might be
obviated by the Court's decision and GM's amendments in
conformity with them.

Finally, a stay will keep all defendants in this action -- both the served defendants as well as their foreign corporate parents -- on the same time track, a result made certainty by the proposal to waive compliance with the requirements of the Hague Service Convention. It ill-serves this Court or proper concerns of judicial economy to have assorted defendants on different schedules solely because a recalcitrant litigant refuses to stipulate to the self-evident.

(2)   **A stay will simplify the issues**.

GM's complaint arises from the same predominant facts as the DPP and IPP consolidated amended complaints; save for its breach of contract claims, GM alleges the same claims. For that reason, the Court's decision on the pending motions to dismiss will control, in large part, the disposition of GM's complaint, simplifying the issues arising thereunder. Moreover, the Court's decision on the pending motions will substantially reduce the amount of resources needed to answer, move or otherwise respond to GM's complaint. For example, the consolidated amended complaints already contain claims for violations of the Sherman Act, state antitrust claims under New York's Donnelly Act, and unjust enrichment claims, as does GM's complaint. Once the Court dismisses one or more claims, those dismissed claims likewise should be removed from GM's complaint,

thereby obviating the need for additional yet unnecessary motions or extensive briefs.

It stands to reason that, once GM has this Court's decision in hand, GM voluntarily should amend its complaint accordingly.  Hence, any motions to dismiss GM's complaint filed before the Court's decision on the pending motions to dismiss will be a waste of significant effort and expense.

A stay also streamlines the procedural posture between the already served defendants and their foreign corporate parents that are entitled to demand service in accordance with Fed. R. Civ. P. 4(f)(1) and the Hague Service Convention.  As a practical matter, the absence of a stay will force NYK USA, EUKOR and WWWL-USA to move to dismiss GM's complaint, which motions, in large measure, will duplicate the motions to dismiss scheduled to be argued on July 23, 2015.  There are no two ways about it:  that is an additional, needless, ridiculous burden on the Court and moving defendants; if and when they are served under the Hague Service Convention, the foreign defendants also will file their own motions to dismiss.  And, all of this because GM believes it can arrive late to this MDL and demand that it, and it alone, be treated differently.[4]

---

[4]     Pursuant to paragraph 2 in both Orders Nos. 1 and 2, all "tag-along" cases are "automatically consolidated" with the pending MDL.  GM's complaint admittedly was subject to a "tag-along"; indeed, GM's own counsel filed the "tag-along" notice.

**(3)   Discovery has not commenced; no trial date has been set.**

Discovery has not commenced and will likely not commence until the Court renders its decision; no trial date has been set either.

## III. CONCLUSION.

Although presented a reasonable proposal for the orderly conduct of its complaint within the greater context of this MDL, GM steadfastly has refused to acknowledge that its idiosyncratic concerns are not paramount; the Court is confronted with a sizable MDL that consolidates nearly thirty separate complaints for pre-trial purposes. Undaunted, GM insists that matters should be handled as it prefers, no matter

---

Once here, GM plainly alleges that it is a direct purchaser, and that group of purchasers already has filed a consolidated amended complaint and is represented by interim co-lead and liaison counsel selected by the Court. GM's purposeful late arrival on the scene cannot serve to bootstrap its standing outside of the group of plaintiffs the Court already has organized.

The Manual for Complex Litigation § 20.132, pp. 222-23 (4th ed. 2004) specifically advises that a transferee court should "order that (1) tag-along actions shall be automatically made part of the centralized proceedings upon transfer to, or filing in, the transferee court; (2) rulings on common issues -- for example, on the statute of limitations -- shall be deemed to have been made in the tag-along action without the need for separate motions and orders[.]" That is precisely what paragraph 2 in Orders Nos. 1 and 2 commands; that is precisely what GM cannot avoid.

how illogical it is in its purpose or spendthrift it is in its application.

On the other hand, moving defendants have proposed an alternative that protects GM's position while allowing all parties to benefit: deferring any obligation to answer, move or otherwise respond to GM's complaint -- assuming that it is not otherwise subsumed into the consolidated amended complaint already filed by the DPPs -- until the Court decides on the pending motions to dismiss, a decision that will have a significant and fundamental effect on GM's complaint. In the spirit of reasonable compromise, that alternative also offers GM a tangible benefit: the waiver by the foreign defendants of their rights under the Hague Service Convention. On balance, that exchange should have been accepted. The Court should compel that result.

**WHEREFORE**, for the foregoing authority, arguments and reasons, moving defendants respectfully pray that the Court (a) stay moving defendants' time to answer, move or otherwise respond to GM's complaint until at least thirty days after the Court's decision on the pending motions to dismiss, (b) accept the tender of the foreign defendants' waiver of their rights under the Hague Service Convention, and (c) issue such other and further relief as the Court deems just and proper consistent with this prayer for relief.

**DATED:**   July 6, 2015            Respectfully submitted,

/s/ John R. Fornaciari
John R. Fornaciari
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C. 20036
Telephone:  202-861-1612
jfornaciari@bakerlaw.com

*Attorneys for defendant
NYK Line (North America) Inc.*


/s/ Roberto A. Rivera-Soto
Roberto A. Rivera-Soto
**BALLARD SPAHR LLP**
210 Lake Drive East – Suite 200
Cherry Hill, New Jersey 08002-1163
Telephone:  (856) 761-3400
riverasotor@ballardspahr.com

*Attorneys for defendants
EUKOR Car Carriers Inc. and
Wallenius Wilhelmsen Logistics
America LLC*

# EXHIBIT "A"



**HCCH**

HAGUE CONFERENCE ON
PRIVATE INTERNATIONAL LAW
CONFÉRENCE DE LA HAYE
DE DROIT INTERNATIONAL PRIVÉ

## 14. CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS[1]

*(Concluded 15 November 1965)*

The States signatory to the present Convention,
Desiring to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,
Desiring to improve the organisation of mutual judicial assistance for that purpose by simplifying and expediting the procedure,
Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

### Article 1

The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.
This Convention shall not apply where the address of the person to be served with the document is not known.

CHAPTER I – JUDICIAL DOCUMENTS

### Article 2

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.
Each State shall organise the Central Authority in conformity with its own law.

### Article 3

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.
The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

### Article 4

If the Central Authority considers that the request does not comply with the provisions of the present Convention it shall promptly inform the applicant and specify its objections to the request.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Service Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Dixième session (1964)*, Tome III, *Notification* (391 pp.).

## Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –

a)   by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

b)   by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph *(b)* of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.

If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

## Article 6

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered. If the document has not been served, the certificate shall set out the reasons which have prevented service.

The applicant may require that a certificate not completed by a Central Authority or by a judicial authority shall be countersigned by one of these authorities.

The certificate shall be forwarded directly to the applicant.

## Article 7

The standard terms in the model annexed to the present Convention shall in all cases be written either in French or in English. They may also be written in the official language, or in one of the official languages, of the State in which the documents originate.

The corresponding blanks shall be completed either in the language of the State addressed or in French or in English.

## Article 8

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

## Article 9

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.

Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

## Article 10

Provided the State of destination does not object, the present Convention shall not interfere with –

a)   the freedom to send judicial documents, by postal channels, directly to persons abroad,

b)   the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

c)   the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

## Article 11

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

## Article 12

The service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State addressed.
The applicant shall pay or reimburse the costs occasioned by —

a)   the employment of a judicial officer or of a person competent under the law of the State of destination,

b)   the use of a particular method of service.

## Article 13

Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security. It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.
The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for the refusal.

## Article 14

Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels.

## Article 15

Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that —

a)   the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

b)   the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
     and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled —

a)   the document was transmitted by one of the methods provided for in this Convention,

b)   a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

c)   no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.


## Article 16

When a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and a judgment has been entered against a defendant who has not appeared, the judge shall have the power to relieve the defendant from the effects of the expiration of the time for appeal from the judgment if the following conditions are fulfilled –

a)   the defendant, without any fault on his part, did not have knowledge of the document in sufficient time to defend, or knowledge of the judgment in sufficient time to appeal, and

b)   the defendant has disclosed a *prima facie* defence to the action on the merits.

An application for relief may be filed only within a reasonable time after the defendant has knowledge of the judgment.

Each Contracting State may declare that the application will not be entertained if it is filed after the expiration of a time to be stated in the declaration, but which shall in no case be less than one year following the date of the judgment.

This Article shall not apply to judgments concerning status or capacity of persons.


CHAPTER II – EXTRAJUDICIAL DOCUMENTS


## Article 17

Extrajudicial documents emanating from authorities and judicial officers of a Contracting State may be transmitted for the purpose of service in another Contracting State by the methods and under the provisions of the present Convention.


CHAPTER III – GENERAL CLAUSES


## Article 18

Each Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence.

The applicant shall, however, in all cases, have the right to address a request directly to the Central Authority.

Federal States shall be free to designate more than one Central Authority.


## Article 19

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.


## Article 20

The present Convention shall not prevent an agreement between any two or more Contracting States to dispense with –

a)   the necessity for duplicate copies of transmitted documents as required by the second paragraph of Article 3,

b)   the language requirements of the third paragraph of Article 5 and Article 7,

c)   the provisions of the fourth paragraph of Article 5,

d)   the provisions of the second paragraph of Article 12.


Article 21

Each Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following –

a)   the designation of authorities, pursuant to Articles 2 and 18,
b)   the designation of the authority competent to complete the certificate pursuant to Article 6,
c)   the designation of the authority competent to receive documents transmitted by consular channels, pursuant to Article 9.

Each Contracting State shall similarly inform the Ministry, where appropriate, of –

a)   opposition to the use of methods of transmission pursuant to Articles 8 and 10,
b)   declarations pursuant to the second paragraph of Article 15 and the third paragraph of Article 16,
c)   all modifications of the above designations, oppositions and declarations.

## Article 22

Where Parties to the present Convention are also Parties to one or both of the Conventions on civil procedure signed at The Hague on 17th July 1905, and on 1st March 1954, this Convention shall replace as between them Articles 1 to 7 of the earlier Conventions.

## Article 23

The present Convention shall not affect the application of Article 23 of the Convention on civil procedure signed at The Hague on 17th July 1905, or of Article 24 of the Convention on civil procedure signed at The Hague on 1st March 1954.
These Articles shall, however, apply only if methods of communication, identical to those provided for in these Conventions, are used.

## Article 24

Supplementary agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention, unless the Parties have otherwise agreed.

## Article 25

Without prejudice to the provisions of Articles 22 and 24, the present Convention shall not derogate from Conventions containing provisions on the matters governed by this Convention to which the Contracting States are, or shall become, Parties.

## Article 26

The present Convention shall be open for signature by the States represented at the Tenth Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

## Article 27

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 26.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

Article 28

Any State not represented at the Tenth Session of the Hague Conference on Private International Law may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 27. The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for such a State in the absence of any objection from a State, which has ratified the Convention before such deposit, notified to the Ministry of Foreign Affairs of the Netherlands within a period of six months after the date on which the said Ministry has notified it of such accession.

In the absence of any such objection, the Convention shall enter into force for the acceding State on the first day of the month following the expiration of the last of the periods referred to in the preceding paragraph.

Article 29

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification referred to in the preceding paragraph.

Article 30

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 27, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

Article 31

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 26, and to the States which have acceded in accordance with Article 28, of the following –

a)   the signatures and ratifications referred to in Article 26;
b)   the date on which the present Convention enters into force in accordance with the first paragraph of Article 27;
c)   the accessions referred to in Article 28 and the dates on which they take effect;
d)   the extensions referred to in Article 29 and the dates on which they take effect;
e)   the designations, oppositions and declarations referred to in Article 21;
f)   the denunciations referred to in the third paragraph of Article 30.

In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 15th day of November, 1965, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Tenth Session of the Hague Conference on Private International Law.

# EXHIBIT "B"

# Authorities

| Norway - Central Authority & practical information | |
|---|---|
| **Address** | **Central Authority(ies):** <br><br> *The Royal Ministry of Justice and Public Security* <br> *Department of Civil Affairs* |

| **Contact details:** | |
|---|---|
| Address: | The Royal Ministry of Justice and Public Security <br> Department of Civil Affairs <br> *Postal address:* P.O. Box 8005 Dep <br> 0030 OSLO <br> *Office address:* Gullhaug Torg 4 a <br> 0484 OSLO <br> Norway |
| Telephone: | +47 2224 5451 |
| Fax: | +47 2224 2722 |
| E-mail: | postmottak@jd.dep.no |
| General website: | http://www.regjeringen.no/nb/dep/jd |
| Contact person: | |
| Languages spoken by staff: | Norwegian, Swedish, Danish, English |

| **Practical Information:** <br> *(The following information was provided by the relevant State authorities or was obtained from the replies to the 2003 and/or 2008 Service Convention Questionnaires)* | |
|---|---|
| Forwarding authorities (Art. 3(1)): | The courts (including the conciliation boards) and certain administrative authorities such as the County Governors and the Labour and Welfare Administration. |
| Methods of service (Art. 5(1)(2)): | |

|  | The Central Authority forwards the document to the competent District or City Court instructing the Court to effect service. The Court will sometimes effect service itself, but very often this task is carried out by a process server.<br><br>In general, a process server is used. If the documents are written in Norwegian, Swedish or Danish or accompanied by a translation into one of these languages and if it does not include a date set for hearing in the near future, the documents may be served by post. |
|---|---|
| Translation requirements (Art. 5(3)): | Under the regulations adopted by Royal Decree on 12 September 1969, requests for service will only be complied with when the document to be served is written in Norwegian, Danish or Swedish, or if the request is accompanied by a translation into one of these languages, unless the document is meant to be delivered only to an addressee who accepts it voluntarily. However, the Ministry of Justice may also in other cases permit the service of documents if it is convinced that the addressee understands the language used in the document.<br><br>Norway has not entered into any agreement with respect to article 20(b). |
| Costs relating to execution of the request for service (Art. 12): | No costs |
| Time for execution of request: | The average time from receipt at the Central Authority to execution of the request varies between 3 -5 months. |
| Oppositions and declarations (Art. 21(2)): | Click here to read all the declarations and reservations made by Norway under this Convention |
| Art. 8(2): | Opposition |
| Art. 10(a): | Opposition |
| Art. 10(b): | Opposition |
| Art. 10(c): | Opposition |
| Art. 15(2): | Declaration of applicability |

| Art. 16(3): | Declaration of applicability |
|---|---|
| Derogatory channels (bilateral or multilateral agreements or internal law permitting other transmission channels) (Arts. 11, 19, 24 and 25) <br><br> **Disclaimer:** *Information may not be complete or fully updated – please contact the relevant authorities to verify this information.* | Supplementary agreements to the Hague Convention of 17 July 1905 and/or 1 March 1954 were concluded with: *Austria*; *Germany* (Berlin, 2 August 1909); *Luxembourg* (1 June 1910 – Articles 1 and 2). <br><br> A multilateral convention on judicial co-operation was concluded between: *Denmark, Finland, Iceland, Norway* and *Sweden* on 26 April 1974. <br><br> Lugano Convention of 16 September 1988. <br><br> Bilateral convention on judicial co-operation: *Austria* (21 May 1984); *Germany* (17 June 1977); *United Kingdom* (London, 31 January 1931 - Articles 2 to 5). |
| Useful links: | Ministry of Justice and the Police and Rettsanmodninger i sivile saker – lister over sentralmyndigheter *(in Norwegian only)* |

(This page was last updated on 18 July 2014)

| **Conventions (incl. Protocols and Principles)** | • Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters [14] |
|---|---|

# EXHIBIT "C"

# Authorities

| Japan - Central Authority & practical information | |
|---|---|
| **Address** | **Central Authority(ies):** *Ministry of Foreign Affairs* |

<table>
<tr><td colspan="2" align="center"><b>Contact details:</b></td></tr>
<tr><td>Address:</td><td>Ministry of Foreign Affairs<br>2-2-1 Kasumigaseki Chiyoda-ku<br>TOKYO<br>100-8919 Japan</td></tr>
<tr><td>Telephone:</td><td>+81 3 5501 8152</td></tr>
<tr><td>Fax:</td><td>+81 3 5501 8148</td></tr>
<tr><td>E-mail:</td><td>-</td></tr>
<tr><td>General website:</td><td>http://www.mofa.go.jp/</td></tr>
<tr><td>Contact point:</td><td>Consular Policy Division</td></tr>
<tr><td>Languages spoken by staff:</td><td>Japanese (by telephone)<br>Japanese and English (by fax)</td></tr>
</table>

<table>
<tr><td colspan="2" align="center"><b>Practical Information:</b><br><i>(The following information was provided by the relevant State authorities or was obtained from the replies to the 2003 and/or 2008 Service Convention Questionnaires)</i></td></tr>
<tr><td>Forwarding authorities (Art. 3(1)):</td><td>the judges</td></tr>
<tr><td>Methods of service (Art. 5(1)(2)):</td><td><i>Formal Service</i> (Art. 5 (1)(a))<br>The Minister for Foreign Affairs refers the document to the competent court of justice. Service is then effected either by post (special postal service, Article 49 of the Mail Act; a report of service is drawn up by the postman) or through a marshal.</td></tr>
</table>

| | *Informal delivery* (Art. 5(2))<br>The Minister for Foreign Affairs refers the documents sent to it to the competent court clerk. The court clerk informs the addressee of the documents to be served and the addressee then either presents himself / herself to the court or requests that they be forwarded to him / her. In the latter case special postal service will be effected (Article 49 of the Mail Act; the postman will draw up a report of the delivery).When the person to be served refuses to accept the documents, or fails to appear or to apply for forwarding the documents to him / her within three weeks of the date on which he/she was informed, the documents will be returned to the applicant.<br><br>*Service by a particular method* (Art. 5(1)(b))<br>When it is so requested, a marshal will effect service by delivering the document directly to the person after ascertaining that he / she is the addressee. |
|---|---|
| Translation requirements (Art. 5(3)): | Full translation is required for any document to be served under Article 5(1)(a)(b). We serve the translation to the addressee together with the original.<br><br>Japan has not concluded any agreements under Article 20(b). |
| Costs relating to execution of the request for service (Art. 12): | In principle, the applicant incurs no charges because the National Treasury bears costs of service. However, in the case of service by a marshal, a fee is charged and should be reimbursed. To that end, the court which effected the service sends a bill of the costs to be reimbursed to the applicant together with the certificate referred to in Article 6.<br><br>When executed by a marshal, the amount to be paid for the performance of service is 1,800 yen (service in working hours on weekdays) or 4,200 yen (service in night times, weekends or holidays) plus the marshal's travel expenses, which is 37 yen per kilometer from the competent district court to which he / she belongs. |

| | |
|---|---|
| Time for execution of request: | About four months |
| Oppositions and declarations (Art. 21(2)): | Click here to read all the declarations made by Japan under the Service Convention. |
| Art. 8(2): | No opposition |
| Art. 10(a): | No opposition<br><br>*"Japan has not declared that it objects to the sending of judicial documents, by postal channels, directly to addressees in Japan. As the representative of Japan made clear at the Special Commission of April 1989 on the practical operation of the Service and Evidence Conventions, Japan does not consider that the use of postal channels for sending judicial documents to persons in Japan constitutes an infringement of its sovereign power."*<br><br>*"Nevertheless, as the representative also indicated, the absence of a formal objection does not imply that the sending of judicial documents by postal channels to addressees in Japan is always considered valid service in Japan. In fact, sending documents by such a method would not be deemed valid service in Japan in circumstances where the rights of the addressee were not respected."*<br><br>(See Conclusion and Recommendation No 57 of the 2003 Special Commission.) |
| Art. 10(b): | Opposition |
| Art. 10(c): | Opposition |
| Art. 15(2): | Declaration of applicability |
| Art. 16(3): | No declaration of applicability |
| Derogatory channels (bilateral or multilateral agreements or internal law permitting other transmission channels) | Consular Convention between Japan and the United States of America<br><br>Consular Convention between Japan and the United Kingdom of Great Britain and Northern Ireland<br><br>Agreements or arrangements concerning judicial assistance between Japan and; Swiss |

| | (Arts. 11, 19, 24 and 25)<br><br>**Disclaimer:**<br>*Information may not be complete or fully updated – please contact the relevant authorities to verify this information.* | Confederation, Kingdom of Denmark, Republic of Italy, Democratic Socialist Republic of Sri Lanka, Federative Republic of Brazil, Kingdom of Thailand, Federal Republic of Germany, United Kingdom of Great Britain and Northern Ireland, Syrian Arab Republic, Kingdom of Norway, Australia, Islamic Republic of Iran, Republic of Austria, State of Kuwait, Republic of Iraq, State of Israel |
| | Useful links: | |

(This page was last updated on 15 May 2009)

| **Conventions (incl. Protocols and Principles)** | • <u>Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters</u> [14] |