# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### NEWARK VICINAGE

<table>
<tr><td>

In Re:
Vehicle Carrier Services
Antitrust Litigation

*This Document Relates to:*

GENERAL MOTORS LLC v.
NIPPON YUSEN KABUSHIKI
KAISHA, et al.

Case No. 15-cv-04739-ES-JAD

</td><td>

Master Docket No.:13-cv-3306
(MDL No. 2471)

</td></tr>
</table>

**GENERAL MOTORS LLC'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS EUKOR CAR CARRIERS INC., WALLENIUS
WILHELMSEN LOGISTICS AMERICA LLC, AND NYK LINE (NORTH
AMERICA) INC.'S MOTION TO STAY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND...................................................................................3

ARGUMENT ........................................................................................................4

    I.      Legal Standard.........................................................................................4

    II.    Defendants Fail To Meet Their Burden Of Establishing That
They Are Entitled To A Stay.................................................................6

        A.    GM will suffer significant prejudice and be placed at a
great tactical disadvantage if the Court issues a stay................6

            1.    GM will be prejudiced and be placed at a tactical
disadvantage by a stay because it will become a
"procedural straggler".....................................................6

            2.    If a stay issues, GM will suffer further prejudice
and will be tactically disadvantaged because it will
be unable to present its own independent
arguments prior to the Court's ruling on the
outstanding motions to dismiss ......................................8

            3.    A stay will unduly interfere with GM's effort to
diligently prosecute its case against Defendants...........10

        B.    Defendants' failure to offer evidence of any hardship or
inequity they would face if a stay is denied is fatal to
their Motion to Stay .................................................................11

        C.    The requested stay will not simplify the issues because
GM is differently situated than the classes and intends to
raise new and different arguments ...........................................12

        D.    The early posture of the case is not enough to salvage
Defendants' motion.................................................................14

CONCLUSION ....................................................................................................15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*Akishev v. Kapustin*,
   23 F. Supp. 3d 440, 446 (D.N.J. 2014) ........................................................5, 12

*Bash v. Firstmark Standard Life Ins. Co.*,
   861 F.2d 159 (7th Cir. 1988) ..............................................................................9

*Caruso v. Occhiogrosso*,
   No. 11-1951 (DMC), 2013 WL 3441491 (D.N.J. July 9, 2013) ...........10, 11, 13

*Costantino v. City of Atlantic City*,
   No. 13-6667 (RBK/JS), 2015 WL 668161 (D.N.J. Feb. 17, 2015) ......4, 5, 10, 11

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*,
   381 F.3d 131 (3d Cir. 2004) ..............................................................................11

*In re Elec. Carbon Prods. Antitrust Litig.*,
   No. 1:03-cv-02182-JBS-AMD (D.N.J.) ...............................................................7

*Forrest v. Corzine*,
   757 F. Supp. 2d 473 (D.N.J. 2010) ......................................................................4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..................................................................................9

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983) ..............................................................................5

*Holland v. N.J. Res. Corp.*,
   No. Civ. 12-07858, 2013 WL 4780763 (D.N.J. Sept. 5, 2013).........................11

*NL Indus., Inc. v. Old Bridge Twp.*,
   No. 13-3493 (MAS)(TJB), 2015 WL 3452909 (D.N.J. May 29,
   2015) ...............................................................................................................5, 14

*In re Scrap Metal Antitrust Litig.*,
   No. 1:02-CV-0844, 2002 WL 31988168 (N.D. Ohio Nov. 7, 2002) .................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    270 F.R.D. 535 (N.D. Cal. 2010)...................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI (N.D. Cal.) ...................................................................7

*Tyco Fire Prods. LP v. Victaulic Co.*,
    No. 10-4645, 2011 WL 4632689 (E.D. Pa. Oct. 4, 2011)...................................7

**OTHER STATE CASES**

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    3:07-cv-05944-SC (N.D. Cal.)...................................................................7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. 4:02-md-01486 (N.D. Cal.)...................................................................8

*General Motors, LLC v. Nippon Yusen Kabushiki Kaisha et al.*,
    Case No.1:15-cv-03451 ...................................................................3

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    No. 3:10-md-02143-RS (N.D. Cal.) ...................................................................8

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10-md-02196-JZ (N.D. Ohio)...................................................................7

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 2:08-md-02002-GP (E.D. Pa.) ...................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(a)(1)(A) ...................................................................3

*Newberg on Class Actions* § 13:23 (5th ed. 2015) ...................................................................9

# INTRODUCTION

In their Motion to Stay the Time to Answer, Move, or Otherwise Respond to the Complaint of Plaintiff General Motors LLC ("Motion to Stay"), defendants Eukor Car Carriers Inc. ("Eukor"), Wallenius Wilhelmsen Logistics Americas LLC ("WWL Americas"), and NYK Line (North America), Inc. ("NYK North America") (collectively, "Defendants")[1] seek an "extraordinary" remedy—to effectively stay General Motors LLC's ("GM") action against them until at least 30 days after the Court's decision on several pending motions to dismiss *in different cases*.  Defendants' request for a stay is legally and factually deficient and should be denied.

Courts consider four factors in evaluating whether such extraordinary relief may be granted: (1) the prejudice or tactical disadvantage to the nonmoving party if the stay is granted; (2) the potential hardship to the moving party if the stay is denied; (3) whether a stay would simplify the issues; and (4) the stage of the proceedings.  A party requesting a stay faces a steep burden—one that Defendants fall dramatically short of satisfying here.

First, contrary to Defendants' claims otherwise, GM will suffer prejudice and be placed at a significant tactical disadvantage if the Court stays this case.  If a stay issues, GM will become a "procedural straggler," GM will be unable to present its own arguments before the Court rules on the outstanding motions to

---

[1] These companies' foreign affiliates are defendants Nippon Yusen Kabushiki Kaisha ("NYK") and Wallenius Wilhelmsen Logistics AS ("WWL") (collectively, "Foreign Defendants").

dismiss, and the stay will interfere with GM's ability to diligently prosecute its case.

Second, Defendants offer absolutely no reason why they will suffer hardship or inequity if the stay is denied. The Third Circuit has instructed that a party requesting a stay *must* demonstrate a hardship or inequity in order to obtain the stay. Defendants do not address this issue at all, and this silence is a clear ground for denial of their motion.

Third, a stay will not simplify the issues. GM is *not* bringing this action as a putative class representative. Indeed, GM expressly brings this action in its own right so as not to participate in any class action. And as Defendants previously acknowledged, GM is differently situated than any of the current putative class plaintiffs. GM's unique position provides it with arguments that the class plaintiffs could not and did not make. Further, there is not a complete overlap of claims: GM has alleged different claims for relief than the class plaintiffs. For these reasons, aside from the merits of any motion to dismiss filed in this case, the parties would also have to litigate the relevance to this action, if any, of rulings on the motions to dismiss filed against the class plaintiffs. Thus, a stay would only serve to complicate the issues in the litigation. The resources of the parties and the Court would be best served not by a stay, but by timely resolving any motions to dismiss filed in this action on the same schedule as those in the class cases.

Finally, while this case is still at an early stage, this fact alone is demonstrably insufficient to overcome the other deficiencies in Defendants' Motion to Stay. It is less important here, in a large MDL, that the case is at an

early stage because it is vital that GM's suit stays on track with the other cases. Courts routinely deny motions to stay at early stages in the litigation, and the Court should do so here.

## FACTUAL BACKGROUND

On June 15, 2015, GM filed an individual action captioned *General Motors, LLC v. Nippon Yusen Kabushiki Kaisha et al.*, Case No.1:15-cv-03451 ("the GM Action") in the U.S. District Court for the Eastern District of New York.  The GM Action was then transferred to this Court for pretrial proceedings as part of the pending multidistrict litigation ("MDL") on June 30, 2015.

On June 16, 2015, counsel for GM contacted counsel for Defendants to provide a courtesy copy of GM's Complaint and request they accept service of GM's Complaint on behalf of their clients.  Declaration of Chahira Solh ("Solh Decl."), ¶¶ 2, 3.  GM received no response, despite having otherwise been in contact with Defendants and their counsel for months.  Solh Decl. ¶ 4, 5. Defendants' refusal to cooperate forced GM to serve Eukor, WWL Americas, and NYK North America through a process server on June 18, 2015.  Solh Decl. ¶ 6. Defendants' choice to receive service through formal process not only imposed additional expense on GM, it also shortened their deadline to respond to GM's Complaint from August 16, 2015 to July 9, 2015.  Solh Decl. ¶ 7; *see* Fed. R. Civ. P. 12(a)(1)(A).

On June 26, 2015, GM again requested that counsel for NYK and WWL accept service for their respective clients, similar to the agreements that NYK and WWL had entered into with every other plaintiff in the MDL.  Solh Decl. ¶¶ 8, 9.

3

Instead of agreeing to GM's reasonable request, counsel for NYK and WWL said that they would accept service only if GM agreed to stay its action until the Court rules on the pending motions to dismiss the class complaints.  Solh Decl. ¶¶ 8, 9. Because GM seeks to litigate this action without undue delay and believes it has unique arguments concerning the issues raised in Defendants' motions to dismiss the class complaints, it declined to enter into such a stipulation.  NYK and WWL continued to refuse to accept service through their U.S. counsel, and on July 2, 2015, GM moved to serve the foreign Defendants through their U.S. counsel ("Motion to Serve."), filed initially in its individual case, ECF No. 14, and later in the MDL case, ECF No. 256.  Defendants have also failed to timely file an answer, a Rule 12 motion, or a request for an extension of time to respond. Solh Decl. ¶ 10.  Instead, the U.S. Defendants brought this Motion to Stay on July 6, 2015.  Defs' Mot. to Stay, ECF No. 255.[2]

## ARGUMENT

### I.    Legal Standard

"[T]he stay of a civil proceeding is an extraordinary remedy."  *Costantino v. City of Atlantic City*, No. 13-6667 (RBK/JS), 2015 WL 668161, at *3 (D.N.J. Feb. 17, 2015); *accord Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) ("The stay of a civil proceeding is an extraordinary remedy and is not favored.");

---

[2] Defendants complain in their motion that a stay is necessary to ensure procedural harmony between the U.S.-based Defendants and the foreign-based Defendants.  Defs.' Mem. Supp. Mot. to Stay 10, ECF No. 255-1.  Given their refusal to accept service on behalf of their clients—as they agreed to do with virtually every other plaintiff in this action—this argument should not be taken seriously.

*NL Indus., Inc. v. Old Bridge Twp.*, No. 13-3493 (MAS)(TJB), 2015 WL 3452909, at *2 (D.N.J. May 29, 2015) ("However, a stay of a civil case is an extraordinary remedy." (internal citation and quotation marks omitted)).

Despite the uphill battle Defendants face when seeking a stay, they present to the Court only an incomplete legal standard for evaluating whether stay is appropriate. *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014). At the outset, Defendants do not address the general principle that they, as the moving party, bear the burden of proving a stay should issue. *Costantino*, 2015 WL 668161, at *3. Defendants do address—albeit insufficiently— (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay would simplify the issues and the trial of the case; and (3) whether discovery is complete, a trial date has been set, or both. But crucially, they make no argument as to whether a denial of the stay would create a clear case of hardship or inequity for them as the moving party—a required showing in the Third Circuit. Indeed, in this Circuit, "[i]t is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

## II.   Defendants Fail To Meet Their Burden Of Establishing That They Are Entitled To A Stay

An analysis of the relevant factors weighs heavily in favor of denying Defendants' Motion to Stay.  As set forth below, because Defendants have not met their burden, they are not entitled to the "extraordinary" relief they are requesting.

### A.   GM will suffer significant prejudice and be placed at a great tactical disadvantage if the Court issues a stay

The first factor courts weigh is whether GM will be prejudiced or suffer a tactical disadvantage in the event a stay issues.  This factor strongly favors GM for a number of reasons.

#### 1.   GM will be prejudiced and be placed at a tactical disadvantage by a stay because it will become a "procedural straggler"

As GM explained in its Motion to Serve, it is uniquely important in an MDL to avoid "procedural stragglers."  Mot. to Serve 6-7, ECF No. 256-1.  Defendants themselves previously acknowledged that having such procedural stragglers was undesirable:

> In order to avoid any procedural stragglers, and for the administrative convenience of the Court and the parties, the NYK defendants, the K-Line defendants, the WWL defendants, the CSAV defendants, and the Hoegh defendants intend to move to dismiss the truck dealer indirect purchaser complaint at the same time and in accordance with the same schedule set forth in case management order no. 4. . . .

Order re: Case Schedule 2, ECF No. 196.  Little else could assure that GM will become a "procedural straggler" more than a stay prohibiting it from proceeding with its case.

6

Becoming a "procedural straggler" in an MDL causes larger problems than mere delay: it results in inefficiencies for the parties and the Court, requiring the Court to review and rule upon multiple rounds of briefing on similar (though not identical) underlying issues, and throws coordinated discovery among the various plaintiffs into discord. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 538 (N.D. Cal. 2010). A stay will therefore result in undue repetition and considerably increase GM's (and Defendants') costs of litigation. This is no doubt prejudicial to GM. *See Tyco Fire Prods. LP v. Victaulic Co.*, No. 10-4645, 2011 WL 4632689, at *3 (E.D. Pa. Oct. 4, 2011); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196-JZ (N.D. Ohio), Mem. Op. and Order re Stay 8, ECF No. 1169 ("A stay of the Direct Action cases would be even less appropriate. . . . Several Direct Action Plaintiffs have actively litigated this case at much expense through separate counsel. . . .").

That is why—in the context of other MDLs—courts coordinate direct-action plaintiffs such as GM with the classes for discovery and pretrial proceedings rather than issuing a stay. *See. e.g.*, *In re Elec. Carbon Prods. Antitrust Litig.*, No. 1:03-cv-02182-JBS-AMD (D.N.J.) (direct-action plaintiff cases not stayed to resolve common issues); *In re Processed Egg Prods. Antitrust Litig.*, No. 2:08-md-02002-GP (E.D. Pa.) (direct-action plaintiff cases not stayed to resolve common issues); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196-JZ (N.D. Ohio) (direct-action plaintiff cases proceeded in parallel to class actions); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal.) (direct-action plaintiff cases not stayed to resolve common issues); *In re Cathode Ray Tube (CRT)*

*Antitrust Litig.*, 3:07-cv-05944-SC (N.D. Cal.) (direct-action plaintiff cases not stayed to resolve common issues); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143-RS (N.D. Cal.) (direct-action plaintiff cases not stayed to resolve common issues); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 4:02-md-01486 (N.D. Cal.) (direct-action plaintiff cases not stayed to resolve common issues).  It is clear from this authority, that MDL courts allow direct-action plaintiffs to proceed through discovery in parallel with direct and indirect classes.  Defendants do not provide any support for their argument that this Court should ignore the weight of all of this authority and chart a new and unique course.

> **2.    If a stay issues, GM will suffer further prejudice and will be tactically disadvantaged because it will be unable to present its own independent arguments prior to the Court's ruling on the outstanding motions to dismiss**

GM filed its own action, thereby essentially opting out of any of the class actions currently pending before the Court.  To protect its interests and prosecute its claims, GM has selected and retained its own counsel and plans to proceed through fact discovery, expert discovery, and other pretrial and trial proceedings through its counsel, though coordinating with the class plaintiffs when feasible.  Moreover, Defendants are wrong when they casually refer to GM as "a quintessential direct purchaser plaintiff."  Defs.' Mem. Supp. Mot. to Stay 3.  While GM *is* a direct purchaser of vehicle carrier services, it is differently situated than the class representatives, has asserted different claims, has arguments unavailable to many others in the direct purchaser class, and intends to make

8

arguments that were not made by the class.  Defendants point to no authority whatsoever supporting their contention that under these circumstances, GM's individual action is "subsumed" by any of the pending class actions.  Nor could they: "Individual class members retain the right to opt out of the class and settlement, preserving the right to pursue their own litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 792 (3d Cir. 1995).  Defendants' suggestions clearly infringe on GM's right, and would essentially eliminate the ability of companies like GM to opt-out of class actions. Defendants put forth the novel position that all opt-out cases should be delayed or stayed because there is a class action pending, and provide no support for such an untenable position.

At the outset, there is no class yet, and none of the putative class representatives that opposed Defendants' motions to dismiss are original equipment manufacturers ("OEM") like GM.  This automatically sets GM apart from the plaintiffs.  But even if a class is certified and GM is a part of it, GM will have the "right to opt out of this Rule 23(b)(3) class action and bring [its] own lawsuit with [its] own counsel"—a right GM has for all intents and purposes already exercised. *Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 163 (7th Cir. 1988).  "Class members who opt out of the class . . . are no longer considered class members." *Newberg on Class Actions* § 13:23 (5th ed. 2015).  In fact, GM filed its own action in part because it believes that it can represent its interests more adequately than the existing classes can, particularly insofar as its status as an OEM permits it to take positions that the putative classes could not.

9

Indeed, in their motion to dismiss the complaint, Defendants expressly distinguished OEMs—*specifically mentioning GM*—from the putative direct purchaser class.  Defs' Mot. to Dismiss 18, ECF No. 218-1.

Consequently, if GM's case is stayed until the Court rules on the outstanding motions to dismiss against the putative classes, GM will need to make arguments against any motion to dismiss its Complaint after the Court has ruled on motions against differently situated plaintiffs.  Presumably, if GM's case is stayed and Defendants' motion to dismiss is granted, Defendants will argue that GM is bound by the ruling—despite the fact that GM lacked a fair opportunity to be heard.  *See* Defs' Mem. Supp. Mot. to Stay 9 ("[T]he Court's decision on the pending motions to dismiss will control, in large part, the disposition of GM's complaint[.]")  Such a situation would require GM to litigate not only the merits of any motions to dismiss filed in its case, but also the relevance, if any, of any rulings on the motions to dismiss in the class case.  This would prejudice GM enormously and place it at a needless tactical disadvantage.

### 3.   A stay will unduly interfere with GM's effort to diligently prosecute its case against Defendants

Finally, a stay will significantly delay "plaintiff's efforts to 'diligently proceed to sustain [its] claim.'"  *Costantino*, 2015 WL 668161, at *4 (quoting *Forrest*, 757 F. Supp. 2d at 479).  "This substantially prejudices plaintiff."  *Id.* That is because "a stay of litigation essentially abridges the non-moving party's right to litigate."  *Caruso v. Occhiogrosso*, No. 11-1951 (DMC), 2013 WL 3441491, at *3 (D.N.J. July 9, 2013).  These considerations are present here: GM's

10

right to litigate its case in the manner it chooses will be abridged because a stay forces it to sit on the sidelines awaiting a ruling on a dispositive motion in which it had no say.

### B.   Defendants' failure to offer evidence of any hardship or inequity they would face if a stay is denied is fatal to their Motion to Stay

The second factor courts weigh in deciding whether to grant a stay is the hardship or inequity that the moving party would suffer in the absence of a stay: "A party moving for a stay of litigation *must* clearly establish that it would suffer hardship or inequity in being required to go forward." *Caruso*, 2013 WL 3441491, at *3 (emphasis added).  In their motion, Defendants do not even attempt to offer evidence of any hardship or inequity they would encounter if the stay is denied. *See* Defs' Mem. Supp. Mot. to Stay 11-12.  This failure alone warrants denial of the Motion to Stay because this factor is required.  *Id.*  As stated by the Third Circuit, the party "*must* state a clear countervailing interest to abridge a party's right to litigate."  *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004) (emphasis added); *Costantino*, 2015 WL 668161, at *3 (same); *Holland v. N.J. Res. Corp.*, No. Civ. 12-07858, 2013 WL 4780763, at *4 (D.N.J. Sept. 5, 2013) (same).  Given the absence of any proffered hardship or inequity, Defendants have not made the required showing of hardship, inequity, and irreparable harm to justify the imposition of a stay, and thus the Court should deny Defendants' motion on this basis alone.[3]

---

[3] Defendants failed to show how they were harmed, and should not be allowed to raise any such "new" arguments for the first time on reply.  *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 (Continued...)

In any event, Defendants *cannot* meet their burden based on the facts of this case.  At most, Defendants may complain that they will have to litigate an additional motion to dismiss simultaneously with the motions directed to the putative class complaints.  But "the mere existence of concurrent litigation is not, without more, sufficiently onerous to establish 'clear' hardship or 'inequity' for Defendants."  *Akishev*, 23 F. Supp. 3d at 447; *see also In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988168, at *7 (N.D. Ohio Nov. 7, 2002) ("[I]ssuing stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration." (citation and internal quotation marks omitted)). Defendants will suffer no hardship or inequity.

### C.    The requested stay will not simplify the issues because GM is differently situated than the classes and intends to raise new and different arguments

The third factor courts weigh when considering whether to issue a stay focuses on whether a stay would simplify the issues.  Defendants seem to argue that the Court's ruling on the outstanding motions to dismiss the putative class complaints—in which GM took no part in briefing—will somehow bind GM and obviate the need for a full decision on a motion to dismiss GM's Complaint.  *See* Defs' Mem. Supp. Mot. to Stay 9-10.  Defendants are incorrect.

---

F.3d 375, 398 (3d Cir. 1994) (noting that an issue is waived unless a party raises it in the opening brief, and for those purposes, a passing reference to an issue is not sufficient to preserve it); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 543 (D.N.J. 2013) ("It is usually improper for a moving party to shift gears and introduce new legal arguments in the reply brief");

First, Defendants do not—and cannot—argue that there is a perfect identity of claims between the class complaints and GM's Complaint.  GM makes additional allegations not found in prior complaints.  GM states a claim for breach of contract, in addition to its state and federal antitrust claims.  The direct purchaser putative class representatives have not alleged such claims.  Thus, regardless of how the Court rules on Defendants' outstanding motions to dismiss, "there will almost assuredly be issues and claims remaining in" GM's lawsuit. *Caruso*, 2013 WL 3441491, at *3.  This fact counsels against a stay.  *Id.*

Second, as stated, GM is differently situated than the current class plaintiffs.  Despite their current arguments to the contrary, Defendants have previously acknowledged this fact:

> "Notably, the allegations of anticompetitive conduct in the complaint refer largely if not entirely to the transportation of original equipment manufacturer or "OEM" vehicles, i.e., newly manufactured vehicles . . . such as . . . General Motors. These manufacturers ship large volumes of cargo and have considerable expertise in transportation issues. Accordingly, they deal directly with the ocean carrier(s) of their choosing. Freight forwarders in the RO/Ro [sic] or specialized car carrier industry usually arrange for the transportation of commodities shipped in smaller volumes by smaller customers, such as privately owned autos, or used high and heavy cargo such as front-end loaders."

 Consol. Br. Supp. Mot. to Dismiss 18-19, ECF No. 218-1.  Not one of the existing putative class plaintiffs is an OEM. Given GM's different position in the market, it is unsurprising that GM has different arguments to make.  And GM intends to make these arguments.  For that reason, even if the Court grants Defendants' motion to dismiss, GM still intends to assert its unique arguments rather than

13

simply "remov[ing]" these claims from its Complaint, as Defendants suggest GM do.  Defs' Mem. Supp. Mot. to Stay 9.

As a final matter, Defendants' claim that a stay "will substantially reduce the amount of resources" needed to respond to GM—and thus simplify the issues—is meritless.  Defs' Mem. Supp. Mot. to Stay 9.  If this was truly the case (which it is not), Defendants have little work left to do because they have already briefed these issues.  And, if true, this would completely undercut any claim to hardship or equity Defendants could make.  But in reality, as discussed above, the issues are not the same, so Defendants must respond to GM's arguments at some point.  GM is unique from any of the existing plaintiffs, and its right to litigate should not be abridged because Defendants want to wait for the Court's ruling on the first motion.  Further, Defendants will eventually incur the expense of responding anyway—GM's Action will not simply go away because of a ruling on a motion to dismiss aimed at a class of differently situated plaintiffs.

In summary, GM would not have filed its own action prior to the resolution of the pleadings if it merely wanted to join the class arguments.  GM is uniquely situated in this litigation and is entitled to be heard on this basis.

### D.     The early posture of the case is not enough to salvage Defendants' motion

Defendants offer no case law (and GM has found none) supporting the notion that a stay may be granted simply because the case is at an early stage of the litigation.  Courts have denied stays even when the litigation is in its early stages.  *NL Indus.*, 2015 WL 3452909, at *3 (denying stay where "discovery has barely

14

begun"). Further, the Court should place less weight on this factor than it perhaps would in an ordinary case because whether this suit is at an early stage is less significant than whether it is at the same stage as the other actions in the MDL. That is, granting a stay will knock this case off-course, hindering the ease with which the Court and parties can agree to coordinated trial dates and discovery periods down the line.

## CONCLUSION

For the above reasons, GM respectfully requests that the Court deny Defendants' request for a stay pending the Court's resolution of the outstanding motions to dismiss the putative class complaints.

Dated: July 20, 2015

Respectfully submitted,

_/s/ Chahira Solh_
Daniel A. Sasse
Chahira Solh
Ryan C. Wong
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
Facsimile: (949) 263-8414
Email: dsasse@crowell.com
          csolh@crowell.com
          rwong@crowell.com

Kent A. Gardiner
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5161
Email: kgardiner@crowell.com

15

Elizabeth Anne Figueira
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York  10022-2544
Telephone: (212) 223-4000
Facsimile:  (212) 223-4134
Email: efigueira@crowell.com

*Counsel for Plaintiff General Motors LLC*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 20th day of July, 2015, I electronically filed the within and foregoing **GENERAL MOTORS LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS EUKOR CAR CARRIERS INC., WALLENIUS WILHELMSEN LOGISTICS AMERICA LLC, AND NYK LINE (NORTH AMERICA) INC.'S MOTION TO STAY** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filings to the attorneys of record in this case.

Dated: July 20, 2015


_____*s/ Chahira Solh*_____
Chahira Solh