IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

|  |  |  |
|---|---|---|
| | : | |
| IN RE VEHICLE CARRIER | : | |
| SERVICES ANTITRUST LITIGATION | : | Master Docket No.: 13-cv-3306 |
| | : | (MDL No. 2471) |
| *This document relates to* | : | |
| *the General Motors LLC action* | : | ORAL ARGUMENT REQUESTED |
| | : | |

CONSOLIDATED MEMORANDUM IN OPPOSITION TO
THE MOTION OF PLAINTIFF GENERAL MOTORS LLC
FOR LEAVE TO SERVE DEFENDANTS NIPPON YUSEN KABUSHIKI KAISHA
AND WALLENIUS WILHEMSEN LOGISTICS AS
THROUGH THEIR U.S. COUNSEL

I.  <u>PRELIMINARY STATEMENT</u>.

Under the guise of a seemingly innocuous motion,
plaintiff General Motors LLC ("GM") has asked that the Court do
nothing less than rewrite domestic and international law.  In
short, GM asks that it be allowed to serve Nippon Yusen
Kabushiki Kaisha ("NYK-Japan"), a Japanese corporation, and
Wallenius Wilhelmsen Logistics AS ("WWL-AS"), a Norwegian
corporate entity, through their respective U.S. counsel.  That
request violates both foreign entities' right of formal service
provided by the Hague Convention on the Service Abroad of
Judicial and Extrajudicial Documents in Civil or Commercial
Matters (the "Hague Service Convention") and <u>Fed. R. Civ. P.</u>

4(h)(2) and (f)(1).  In support of that extraordinary request, GM claims four separate "grounds."  A closer examination reveals that GM lacks both a factual and legal basis for its request.

Reduced to its essence, GM's sole factual complaint is that serving NYK-Japan and WWL-AS as required by the Hague Service Convention simply takes longer than the expedient of serving the foreign corporations' U.S. counsel.  Convenience alone, however, cannot justify disregarding an international treaty, nor does it constitute good cause for granting a motion pursuant to Rule 4(f)(3), especially where, as here, GM's status as a "procedural straggler" is due to its own dilatory behavior.

GM's legal authority is similarly unavailing:  in large part, GM relies on irrelevant Ninth Circuit cases, including some where the Hague Service Convention admittedly did not apply.  Those cases do not reflect the law applied in this and surrounding federal circuits.  And, the other authorities on which GM relies undercut its motion, as they require that a party first exercise a minimal level of diligence under the Hague Service Convention before requesting relief from the Court, a showing GM clearly has eschewed here.

GM's request for relief should be denied; it should be required to comply with the service obligations all other litigants in this multi-district litigation ("MDL") have observed.

I.    <u>STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND.</u>

A detailed factual history is set forth in the motion of defendants NYK (North America) Inc. ("NYK-USA"), EUKOR Car Carriers Inc. ("EUKOR") and Wallenius Wilhelmsen Logistics America LLC ("WWL-USA") to stay GM's complaint.  [Dkt. No. 255] That said, certain facts bear repeating.

This matter began on May 24, 2013, when the first of the cases in this MDL was filed in this Court.  [Dkt. No. 1.] Since then -- but well before GM filed its complaint -- twenty-eight class action complaints by direct purchaser plaintiffs ("DPPs") and indirect purchaser plaintiffs ("IPPs") have been consolidated before this Court.  [Dkt. No. 95, Schedule A.]  By an order dated March 3, 2014, the Court appointed interim co-lead and liaison counsel for each of the following groups of plaintiffs:  the DPPs, the End-Payor IPPs, and the Auto Dealers IPPs.  [Dkt. No. 106.]  And, on July 14, 2014, a new class action complaint was filed under this master docket number and MDL number, creating a fourth plaintiff group -- a third set of IPPs.  <u>See generally</u> Sept. 10. 2014 letter to The Honorable Esther Salas [Dkt. No. 187.]

As ordered on June 16, 2014 [Dkt. No. 156], motions to dismiss have been filed and are fully briefed in respect of all four complaints; pursuant to a docket entry on June 17, 2015, oral argument is scheduled on the motions for July 23, 2015.

- 3 -

On June 16, 2015 -- more than two years after the first complaint was filed, twenty months after the cases were transferred to this Court, six months after the motions to dismiss were fully briefed and filed -- GM filed its complaint in the U.S. District Court for the Eastern District of New York, although it was well aware of the pendency of this MDL before this Court.  Three days later, GM filed a notice of potential "tag-along" with the Judicial Panel on Multi-District Litigation ("the MDL Panel") and, on June 29, 2015, the MDL Panel conditionally transferred the GM action to this Court.

Instead of consolidating its complaint with the pending direct purchasers' complaint -- as plainly required by this Court's orders -- GM asserts that it can "go it alone."  It has sued two sets of related defendants:  (1) the NYK defendants, consisting of a NYK-Japan and its wholly-owned U.S. subsidiary, NYK-USA; and (2) WWL-AS, its wholly owned U.S. subsidiary, WWL-USA, and EUKOR, a South Korean entity owned 80% by the shareholders of WWL-AS.  Three of those defendants have been served:  NYK-USA, EUKOR, and WWL-USA.  The remaining defendants -- NYK-Japan and WWL-AS -- are foreign entities.

Japan and Norway, like the United States, are signatories to the Hague Service Convention.  Thus, NYK-Japan and WWL-AS are entitled to the protections of the Hague Service Convention, which includes a translation of the complaint and

- 4 -

related documents into the vernacular, as well as service in their home countries.[1]

GM has not attempted to serve either NYK-Japan or WWL-AS through the Hague Service Convention.   Instead, it moved for leave to permit service through counsel for NYK-Japan and WWL-AS, thereby relieving GM of its obligations under the Hague Service Convention and <u>Rule</u> 4(f)(1).

This opposition followed.[2]

## II.   <u>ARGUMENT</u>.

### A.   <u>Standard of review</u>.

Service of process on a foreign corporate entity is governed by <u>Fed. R. Civ. P.</u> 4(h)(2).   It states that "[u]nless federal law provides otherwise . . . , a . . . foreign

---

[1]   Among its several procedural protections, Article 5 of the Hague Service Convention provides that the "Central Authority [of the receiving state] may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed."   Both Norway and Japan impose that requirement:   Norway's Royal Ministry of Justice and Public Safety, Department of Civil Affairs requires that "requests for service will only be complied with when the documents to be served is written in Norwegian, Danish or Swedish, or if the request is accompanied by a translation into one of these languages," while, according to Japan's Ministry of Foreign Affairs, "[f]ull translation is required for any document to be served[.]"   <u>See</u> n.3, below.

[2]   Because neither NYK-Japan nor WWL-AS has been served and do not wish to waive their rights by responding to this motion, neither is responding directly to GM's motion; this opposition is presented by NYK-USA, EUKOR and WWL-USA.

corporation . . . must be served . . . (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(f)(1) directs that an entity "may be served at a place not within any judicial district of the United States . . . (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Service Convention.]"

The Hague Service Convention, a multilateral treaty formulated in 1964, was created "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698, 108 S. Ct. 2104, 2107, 100 L. Ed. 2d 722, 730 (1988). The Hague Service Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 362, T.I.A.S. 6638, Art. 1 (signed Nov. 15, 1965; date-in-force Feb. 10, 1969) (emphasis supplied). Under it, signatory nations are required to establish a central authority to receive requests for service of documents from other countries. Volkswagenwerk, supra, 486 U.S. at 698-99, 108 S. Ct. at 2107, 100 L. Ed. 2d at

730 (citing 20 U.S.T. 362, T.I.A.S. 6638, Art. 2).  After
receiving the documents, the central authority "must serve the
documents . . . [and] then provide a certificate of service that
conforms to a specified model." Id. at 699, 108 S. Ct. at 2107-
08, 100 L. Ed. 2d at 730 (citing 20 U.S.T. 362, T.I.A.S. 6638,
Art. 5-6).

As directed by Rule 4(f), a plaintiff seeking to serve
a corporate entity based in a foreign nation that is a signatory
to the Hague Service Convention must effect service in
accordance with that Convention.  See Fed. R. Civ. P. 4,
Advisory Committee Note to 1993 Amendment ("Use of the [Hague
Service] Convention procedures, when available, is mandatory if
documents must be transmitted abroad to effect service."); see
also Cephalon, Inc. v. Sun Pharm. Indus., Inc., No. CIV.A. 11-
5474, 2011 WL 6130416, at *2 (D.N.J. Dec. 7, 2011); Ferrostaal,
Inc. v. Haci Hassan Yardim, No. 03 CV 4886 (GBD), 2006 WL
2819585, at *2 (S.D.N.Y. Sept. 29, 2006) ("Service pursuant to
the Hague Convention is mandatory when serving a foreign
defendant in a signatory country.").

And, a party cannot default to an alternative means of
serving a foreign defendant under Rule 4(f)(3) without first
demonstrating that following Convention procedures have been
ineffective or would be futile.  Midmark Corp. v. Janak
Healthcare Private Ltd., No. 3:14-CV-088, 2014 WL 1764704, at *2

(S.D. Ohio May 1, 2014); FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 534 (E.D. Va. 2005); Golub v. Isuzu Motors, 924 F. Supp. 324, 328 (D. Mass.1996) (requiring that plaintiff proceed under Hague Service Convention where "there appears to be a reasonable prospect that the plaintiff will ultimately be able to serve the defendant properly").

Fed. R. Civ. P. 4(f)(3) also allows service of process "by other means not prohibited by international agreement, as the court orders." Those determinations rest within the sound discretion of the reviewing court. See Midmark Corp., supra, 2014 WL 1764704, at *1 ("Rulings on motions for alternative service of process under Federal Rule of Civil Procedure 4(f)(3) are conferred to the discretion of the Court[.]"). In exercising that discretion, the Court is guided by the overarching principle that "[w]hen serving a foreign defendant, the first method of service, and the one to be preferred in most cases, is service pursuant to an internationally agreed means, such as those authorized by the Hague [Service] Convention[.]" Ibid. (citing Fed. R. Civ. P. 4(f)(1)). In that vein, courts should view Rule 4(f)(3) "as a 'final effort to make service when other means have failed.'" Id. at *2 (quoting Marcantonio v. Primorsk Shipping Corp., 206 F. Supp. 2d 54, 58 (D. Mass. 2002)). When considering motions under Rule 4(f)(3), courts require that the movant "show that they have reasonably

attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 115-16 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).  "This requirement, although not expressly provided by Rule 4(f)(3), is necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." Ibid. (citation and internal quotation marks omitted).

**B.    GM's has not satisfied its burden before seeking alternate service on NYK-Japan and WWL-AS.**

It cannot be gainsaid:  compliance with the Hague Service Convention is mandatory.  GM's desire to cast aside this internationally agreed-upon procedure solely for its self-serving purpose of avoiding the time and effort required for international service is an affront to comity and the respect owed to international agreements adopted by the United States. In support of its motion, GM fails to offer any cognizable factual or legal basis justifying a divergence from the procedures of the Hague Service Convention.

GM advances four "grounds" to justify the extraordinary relief it seeks; they are that

> (1) NYK(-Japan) and WWL(-AS) have already agreed to accept service through their U.S. counsel with all other plaintiffs in the [MDL]; (2) NYK(-Japan) and WWL(-AS) have

been actively participating in the MDL; (3)
pretrial coordination and judicial
efficiency counsel in favor of requiring
NYK(-Japan) and WWL(-AS) to accept service
through their U.S. counsel; and (4) service
through U.S. counsel complies with
applicable international law, as well as due
process.

[GM's notice of motion and motion to serve
defendants Nippon Yusen Kabushiki Kaisha and
Wallenius Wilhelmsen Logistics AS as through
their U.S. counsel, at 1 [Dkt. No. 256].]

Regardless of the error of GM's assertions -- and in
error they truly are -- GM nevertheless fails to satisfy the
threshold requirement of showing that service under the Hague
Service Convention is impracticable or futile because of a
simple fact:  it never attempted to serve NYK-Japan or WWL-AS.
Instead, GM contends that its desire to avoid being a
"procedural straggler" warrants an alternative means of service.
GM's mem. in supp. of mot. at 6-7 [Dkt. No. 256-1].  But any
procedural delay impacting GM is due solely to GM's own
procrastination; GM cannot bypass a fundamental procedural
requirement simply because it delayed in filing suit.

GM also fails to identify any legal authority
supporting its interpretation of Rule 4(f)(3).  Instead, GM
cites irrelevant case law from other circuits; GM then
interprets these cases in a manner contrary to the overwhelming
weight of authority.  GM's motion should be denied.

### 1.   GM's four "grounds" are irrelevant.

The first of GM's four "grounds" on which it seeks to bypass the sovereign law of the land is that "NYK(-Japan) and WWL(-AS) have already agreed to accept service through their U.S. counsel with all other plaintiffs in the [MDL.]"  That statement is, at best, intentionally misleading.

As GM well and truly knows, both NYK-Japan and WWL-AS agreed to accept service of process via their respective U.S. counsel, but only as a result of written stipulations filed of record with specified parties.  In NYK-Japan's case, it agreed to accept service in exchange for (i) preserving all defenses, including jurisdictional; defenses, (ii) deferring any discovery, and (iii) receiving translated copies of the consolidated amended complaints when they are served.  [Dkt. Nos. 116 and 123.]  On WWL-AS's part, it agreed to accept service in exchange for (i) the dropping of a number of parties defendant from the MDL, (ii) the delivery of tolling agreements as to those dismissed parties defendants, (iii) waiving the requirement of translation of the consolidated amended complaints, and (iv) preserving all defenses, including jurisdictional defenses.  [Dkt. Nos. 125 and 126.]

Although both NYK-Japan and WWL-AS have offered to likewise enter into stipulations with GM concerning acceptance of service of process in exchange for deferring any obligation

to respond to GM's complaint, those offers were rejected. Therefore, GM does not stand in the same shoes as those plaintiffs that (a) understood the Court's January 31, 2014 direction that the provisions of the Hague Service Convention were to be honored, and (b) entered into good-faith stipulations to satisfy all relevant concerns.  Instead, GM insists it must be its way or not at all.  That hubris ill-serves GM abd the Court.

GM's second "ground" -- that "NYK(-Japan) and WWL(-AS) have been actively participating in the MDL" -- is a poorly disguised attempt at bootstrapping:  NYK-Japan and WWL-AS have been participating in the MDL only because of the stipulations they entered into, and not because service was effected on them otherwise.  GM's refusal to act as other, more responsible parties have in this MDL disqualifies them from eligibility for the very relief it seeks.

GM's third "ground" -- that "pretrial coordination and judicial efficiency counsel in favor of requiring NYK(-Japan) and WWL(-AS) to accept service through their U.S. counsel" -- is a naked attempt to place the cart before the proverbial horse. Again, NYK-Japan and WWL-AS have participated in the MDL only because they waived compliance with the Hague Service Convention pursuant to stipulation, something GM has refused to do.  Like the defendant who, having killed his parents, seeks clemency

because he is an orphan, GM cannot seek relief from the Court for the consequences of its own actions.

Finally, GM's fourth "ground" -- that "service through U.S. counsel complies with applicable international law, as well as due process" -- is gibberish:  the Hague Service Convention defines what international law provides, yet that is the very law GM seeks to avoid.  It is at the intersection between the requirements of the Hague Service Convention and GM's request for relief where the folly of GM's request is made patent.

### 2.    Service under the Hague Service Convention is mandatory.

Contrary to GM's representation, when it applies, compliance with the Hague Service Convention is mandatory.  See, e.g., Shenouda v. Mehanna, 203 F.R.D. 166, 170 (D.N.J. 2001)(holding that "compliance with the Convention is mandatory when serving a foreign defendant in a signatory country"; citation omitted); Midmark Corp., supra, 2014 WL 1764704, at *2; Advanced Aerofoil Technologies, AG v. Todaro, No. 11 CIV. 9505 ALC DCF, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) (holding that "the Hague [Service] Convention's procedures for service are mandatory because Switzerland and Germany, the countries in which Plaintiffs sought to serve the documents on the foreign defendants, are signatories to that Convention"); Ferrostaal, Inc., supra, 2006 WL 2819585, at *2 ("Service pursuant to the

Hague [Service] Convention is mandatory when serving a foreign defendant in a signatory country").

There is no dispute that the Hague Service Convention applies:  the relevant countries -- Japan, Norway, and the United States -- have signed and adopted it.[3]  GM has failed to demonstrate that compliance with the Hague Service Convention is not possible, or that other exceptions, such as the unavailability of a person's address, apply.  See Bravetti v. Liu, No. 3:12-CV-7492-MAS-TJB, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013) (holding that "the Hague Convention does not apply because the address of the persons to be served is unknown"), dismissed, 2015 U.S. Dist. LEXIS 56124 (D.N.J. Apr. 28, 2015).  Instead, GM complains only that service under the Convention is inconvenient.  GM's mem. in supp. of mot. at 8 [Dkt. No. 14-1] (suggesting that delay in service will "preclude GM from staying on track with the other MDL actions"); id. at 9 (complaining that GM would be "forced to wait in the sidelines").  These complaints provide no basis to depart from the requirements of either the Hague Service Convention or those of Rule 4(f)(1).

---

[3]    As noted in their corresponding links, each of the United States, see http://www.hcch.net/index_en.php?act=authorities. details&aid=279, Norway, see http://www.hcch.net/index_en. php?act=states.details&sid=58, and Japan, see http://www.hcch. net/index_en.php?act=states.details&sid=47, are parties to the Hague Service Convention.

**3.   GM has failed to show any circumstances meriting departure from the requirements of the Hague Service Convention.**

GM's failure to attempt any service at all under the Hague Service Convention or perform any due diligence in this respect precludes it from the restricted relief available under Rule 4(f)(3).

In very limited circumstances, courts have permitted a party to serve a foreign corporate entity outside the boundaries of the Hague Service Convention.  To qualify for the Rule 4(f)(3) exception, however, a party must demonstrate "they had good cause to circumvent compliance with the Hague Convention." Furukawa Elec. Co. of N. Am. v. Yangtze Optical Fibre & Cable Co., No. CIV.A. 05-11219-RGS, 2005 WL 3071244, at *3 (D. Mass. Nov. 16, 2005).  This means that the plaintiff must "show that they have reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile."  FMAC Loan Receivables v. Dagra, 228 F.R.D. 531, 534 (E.D. Va. 2005) (citation and internal quotation marks omitted).[4]

---

[4]   The Advisory Committee notes to the 1993 Amendment also state that alternate service may be appropriate where there is the failure of a country's Central Authority to effect service within the six-month period provided by the Hague Service

GM has made no effort to comply with the Hague Service
Convention, nor did it represent that compliance with the Hague
Service Convention is otherwise futile.  In fact, GM has
demonstrated no prejudice whatsoever.  GM argues only that the
estimated two- to six-month period required to serve NYK-Japan
and WWL-AS under the Hague Service Convention would delay its
participation in the case.  GM's mem. in supp. of mot. at 6-9
[Dkt. No. 14-1].  Courts routinely and soundly have rejected
this reason as a basis for granting relief under Rule 4(f)(3).
See, e.g., Cephalon, supra, 2011 WL 6130416; Furukawa Elec. Co.,
supra, 2005 WL 3071244.

For example, in Cephalon, the plaintiff's request to
serve a foreign corporation's U.S. counsel was denied because of
the "absence of Plaintiff's 'due diligence' in attempting to
serve [an Indian corporation] in India" pursuant to the Hague
Service Convention.  Cephalon, supra, 2011 WL 6130416, at *5.
Reasoning that Rule 4 "requires that a party first use any
internationally agreed means of service that is reasonably
calculated to give notice," before seeking relief under Rule
4(f)(3), id. at *5 (citation and internal quotation marks
omitted), and that India and the United States were signatories

---

Convention. Fed. R. Civ. P. 4 Advisory Committee's notes (1993
Amendment, subdivision (f)).  This exception to strict
compliance with the Hague Service Convention also has no
application here.

to the Hague Service Convention, the court concluded that Rule 4(f)(1) obligated that the plaintiff first avail itself of the Hague Service Convention procedures before requesting alternative relief. Id. at *6.

The governing proposition is clear:  the failure to first attempt service under the Hague Service Convention before seeking alternate service relief warrants denial of the request for relief under Rule 4(f)(3).  Western Supreme Buddha Ass'n, Inc. v. Oasis World Peace and Health Found., No. 08-cv-1374 (TJM/DRH), 2011 WL 856378 (N.D. N.Y. Mar. 9, 2011), dismissed, No. 08-cv-1374 (TJM/DRH), 2011 U.S. Dist. LEXIS 74693 (N.D. N.Y. July 12, 2011) (holding that plaintiff must demonstrate reasonable efforts to serve defendant, so that court intervention by way of Rule 4(f)(3) order was necessary); C & F Systems, LLC v. Limpimax, S.A., No. 1:09-cv-858, 2010 WL 65200 (W.D. Mich. Jan. 6, 2010) (denying ex parte motion for alternative service by mail to Peru, non-signatory to Hague Service Convention, under Rule 4(f)(3) because plaintiff had not attempted first to effect service under Inter-American Convention on Letters Rogatory).

Furukawa Electric reached a similar conclusion, rejecting the plaintiffs' request under Rule 4(f)(3) to serve a Chinese company in a manner other than as required by the Hague Service Convention. Supra, 2005 WL 3071244, *3.  It concluded

- 17 -

that the Hague Service Convention governed service requirements
because China signed it.  Ibid.  Like here, the plaintiffs made
no effort to serve the defendant pursuant to the Hague Service
Convention; instead they "complain[ed] that making service under
the Convention [was] burdensome and expensive."  Ibid.  The
court rejected that complaint, holding that is "[was] not a
sufficient reason to excuse compliance with the Convention."
Ibid.; see also Badyal v. Bosch Packaging Tech., Inc., No. 2:11-
CV-00349-MCE-AC, 2014 WL 1922621, at *3 (E.D. Cal. May 14, 2014)
(holding that "the fact that service of process by letters
rogatory is expensive and time consuming is generally not
sufficient to demonstrate that the facts and circumstances
necessitate the district court's intervention"); U.S. Aviation
Underwriters, Inc. v. Nabtesco Corp., No. C07-1221RSL, 2007 WL
3012612, at *2 (W.D. Wash. Oct. 11, 2007) (holding that
"plaintiff's request to use Rule 4(f)(3) simply because it 'will
be much faster, thus moving this case forward in an expeditious
and cost-effective manner,' . . . by itself is not sufficient
justification for the Court to authorize service by alternative
method").

        The reasoning of Cephalon and Furukawa Electric
applies with equal force here:  GM, like those plaintiffs, never
even attempted to serve NYK-Japan or WWL-AS pursuant to the
Hague Service Convention.  Instead, GM bellyaches that it should

be relieved of a requirement of international law because it is, in GM's one-sided view, time-consuming and more burdensome. GM's mem. in supp. of mot. at 7-8 [Dkt. No. 14-1].  Neither reason suffices to grant GM's requested relief under Rule 4(f)(3).

Moreover, the cases cited by GM are consistent with Cephalon and Furukawa Electric and support NYK Japan and WWL-AS: they granted Rule 4(f) relief only after the plaintiffs satisfactorily demonstrated that service through the Hague Service Convention was unavailable or ineffective, or that the Hague Service Convention simply did not apply.  Because GM has made no effort whatsoever to comply with the Hague Service Convention, none of those exceptions is applicable here.

Also, unlike any of the cases on which GM relies, neither NYK-Japan nor WWL-AS has engaged in the willful evasion of service, much less to the degree required to merit an alternate manner of service; to the extent GM relies on those authorities, they are inapposite.  See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002) (concluding that alternate service was proper where plaintiff was unsuccessful in serving "an elusive international defendant, striving to evade service of process"); Feyko v. Yuhe Int'l, Inc., No. CV 11-05511 DDP PJWX, 2013 WL 5142362, at *2 (C.D. Cal. Sept. 12, 2013) (granting relief under Rule 4(f)(3) because

"[defendant's] counsel has refused to accept service and Lead Plaintiff has demonstrated the lengthy, costly, and uncertain nature of serving individuals in China"); In re LDK Solar Sec. Litig., No. C 07-05182 WHA, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) ("In the instant action, plaintiffs have shown the difficulty of serving the unserved defendants located abroad."); BP Prods., supra, 232 F.R.D. at 264 ("This Court has no doubt that the defendant is willfully evading the service of process in this case.  Plaintiff has made numerous attempts to serve defendant under the terms of the Hague Convention . . . with no success."); KPN B.V. v. Corcyra D.O.O., No. 08 CIV. 1549 (JGK), 2009 WL 690119, at *2 (S.D.N.Y. Mar. 16, 2009) (granting relief under Rule 4(f)(3) in light of "the plaintiff's diligent efforts to serve [defendant] heretofore and [defendant's] resistance to service").

      To be sure, courts have granted relief under Rule 4(f)(3) when a plaintiff has made numerous service attempts under the Hague Service Convention that were unsuccessful.  See Marlabs Inc. v. Jakher, No. 07-cv-04074 (DMC)(MF), 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010) ("Plaintiff made several attempts to contact Defendant").[5]  In contrast, GM has exerted no

---

[5]    GM did not disclose that Cephalon easily distinguished Marlabs because "the court found that plaintiff had attempted to serve defendant in accordance with the Hague Convention" before awarding relief under Rule 4(f)(3).  Cephalon, supra, 2011 WL

effort at all to serve NJK-Japan or WWL-AS, whether under the Hague Service Convention or otherwise.

> **4.   Those cases where the Hague Service Convention did not apply are irrelevant.**

GM's reliance on cases where the Hague Service Convention did not apply is woefully misplaced.  See In re TFT-LCD (Flat Panel) Antitrust Litig., 270 F.R.D. 535, 537 (N.D. Cal. 2010) (holding that "the Hague [Service] Convention . . . is inapplicable here because Taiwan is not a signatory to that agreement"); Rio Properties, supra, 284 F.3d at 1015 ("The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory."); In re Cathode Ray Tube (CRT) Antitrust Litig., No. 07-5944 SC, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008) (holding that Hague Service Convention did not apply because "transmittal abroad for service is not required").  The aggregate holding of these cases is instructive and seriously undermines GM's interpretation of Rio Properties.

In Rio Properties, a popular Las Vegas casino sued a Costa Rican internet company for infringing on intellectual property rights by setting up gambling websites similar to those

---

6130416, at *6.  Marlabs applies only where a plaintiff can demonstrate that its attempts to serve a party pursuant to the Hague Service Convention were unsuccessful on account of the foreign party's evasive behavior.  That plainly is not the case here.

of the popular Las Vegas casino.  Supra, 284 F.3d at 1013.  The
casino attempted to serve the foreign internet gaming company
through a domestic subsidiary.  The foreign internet gaming
company purposefully evaded the casino's service attempts,
causing the casino seek relief under Rules 4(h)(2) and (f)(3).
Ibid.  Holding that court-ordered alternate service was
permissible under Rule 4(f)(3), the court had no need to
consider the service procedures of the Hague Service Convention
because it simply did not apply.  Id. at 1015, n.4 (holding that
"Hague [Service] Convention does not apply in this case because
Costa Rica is not a signatory").  Given this limitation, GM's
attempt to extend Rio Properties to suggest that service under
Rule 4(f)(3) can substitute for service under the Hague Service
Convention in the absence of compelling circumstances is
fundamentally misplaced:  any statement by the Ninth Circuit in
respect of the Hague Service Convention in a case where the
Hague Service Convention did not apply plainly is dicta.  GM's
mem. in supp. of mot. at 4-5 [Dkt. No. 14-1].

Even courts within the Ninth Circuit have rejected the
interpretation of Rio Properties that GM now advances.  For
example, Kowalski v. Anova Food, LLC, No. CIV. 11-00795 HG-RLP,
2012 WL 3308886, at *2 (D. Haw. Aug. 10, 2012), held that the
Hague Service Convention precluded the plaintiff from seeking
alternative service methods under Rule 4(f)(3) where the

plaintiff could not demonstrate "any facts to suggest that [the defendant] is evading service . . . [or] has attempted to hide its location."  In so holding, Kowalski acknowledged that Rio Properties states that there is no hierarchy of service preferences under Rule 4(f).  Ibid.  It concluded, however, that Ninth Circuit precedent do not permit a party to bypass the requirements of the Hague Service Convention absent a compelling showing; it highlighted that, in Rio Properties, the plaintiff was "an elusive international defendant, striving to evade service of process" in a country where the Hague Service Convention did not apply.  Ibid.

U.S. Aviation Underwriters, supra, 2007 WL 3012612, at *2, reached the same conclusion and rejected a plaintiff's attempt to serve a Japanese corporation in a method other than what is specified in the Hague Service Convention.  Although the plaintiff -- like GM here -- argued it would be "much faster" and more "cost-effective" to serve the company by alternate means, that notion flatly was rejected; the court explained that Rio Properties did not allow it to ignore the Hague Service Convention save in those circumstances, such as those in Rio Properties, "where the defendant was 'elusive' and 'striving to evade service of process.'" Ibid. (citing Rio Properties, supra, 284 F.3d at 1016); see also Jimena v. UBS AG Bank, No. CV-F-07-367 OWW/SKO, 2010 WL 2465333, at *8 (E.D. Cal. June 10, 2010)

(explaining that <u>Rio Properties</u> "noted the extent to which evasion of service occurred and . . . expressly noted that no international treaty service requirements were involved.  Here, Plaintiff makes no showing that he is not bound by the requirements of the Hague Convention").

These authorities demonstrate that <u>Rio Properties</u> cannot be read in the limitless manner GM suggests:  in GM's view, <u>Fed. R. Civ.</u> 4(f)(3) is the exception that swallows up not only the remainder of that <u>Rule</u>, but also all other service requirements.  GM's mem. in supp. of mot. at 4-5 [Dkt. No. 14-1].  As properly read, <u>Rio Properties</u> allows relief under <u>Rule</u> 4(f)(3) in limited circumstances:  where the Hague Service Convention does not apply and/or a foreign defendant is purposefully evading service.  <u>Rio Properties</u> is not a rule of convenience; it is a rule born from necessity.

Closer to home, cases within this region clearly and consistently require a substantial showing that efforts to serve a party under the Hague Service Convention have been frustrated by either the host country or targeted party <u>before</u> alternative service will be allowed under <u>Rule</u> 4(f)(3).  <u>See</u> <u>Cephalon</u>, <u>supra</u>, 2011 WL 6130416, *2 (New Jersey); <u>Western Supreme Buddha Ass'n</u>, <u>supra</u>, 2011 WL 856378, *1 (New York); <u>Marcantonio</u>, <u>supra</u>, 206 <u>F. Supp.</u> 2d at 58 (Massachusetts); <u>Graphic Styles/Styles Int'l LLC v. Men's Wear Creations</u>, No. CIV.A. 14-4283, 2015 WL

1137606, at *4 (E.D. Pa. Mar. 12, 2015) (Pennsylvania --
concluding that if "the only workable means of effecting service
is through the Hague [Service] Convention, then Plaintiff should
take that route rather than attempting, as it does here, to
short circuit the rules for international service of process").

### 5.   The "particularities and necessities" of this case do not merit alternative means of service.

GM's also contends that the "particularities and
necessities" of this case warrant an alternate means of service.
GM's mem. in supp. of mot. at 6-10 [Dkt. No. 14-1].  Curiously,
it declines to identify just what relevant "particularities and
necessities" somehow require the extraordinary relief it seeks.

To the extent GM claims prejudice due to the time that
may be required to serve NJK-Japan and WWL-AS, that prejudice is
of GM's own making; it, like a civil contemnor, has carried the
keys to its own cell in its pocket.  It cannot be disputed that
GM has been aware of this case from its inception, yet it waited
over two years to file its own complaint.  It cannot feign an
immediate need for relief after remaining silent during the
pendency of this matter, nor can GM complain of being a
"procedural straggler" when its failure to join the case until
last month is a product of its own delay.[6]

---

[6]   GM also was well aware of the pending motions to dismiss;
they have been of record since January.  Had GM filed its

Moreover, GM's claim that it will be unable to participate in discovery with the other plaintiffs is baseless. As GM is well aware, discovery in this matter is stayed until the Court rules on the motions to dismiss.  Accordingly, GM cannot contend that it will fall behind the other parties while waiting to serve NYK-Japan and WWL-AS under the Hague Service Convention.  GM's mem. in supp. of mot. at 7 [Dkt. No. 14-1]. Even if discovery was on-going or scheduled to start in the coming months, GM would not be precluded from participating to the extent consistent with the MDL nature of these proceedings.

The stipulations entered into between NYK-Japan and WWL-AS regarding their respective counsel's acceptance of service from the other plaintiffs also have no bearing on the merits of GM's argument.  And, "[t]he mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service."  United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997) (citations omitted); see also United States v. $184,505.01 in U.S. Currency, 72 F.3d 1160, 1164 (3d Cir. 1995).  Moreover, "[s]ervice upon defendants' attorney in the United States does not meet the requirements set forth in the Hague Convention." Trask v. Serv. Merch. Co., 135 F.R.D. 17, 22 (D. Mass. 1991).

---

complaint then, it certainly would have been able to perfect service on NYK-Japan and WWL-AS by now.

NYK-Japan and WWL-AS entered into stipulations for the purpose of moving this case forward in order to contest jurisdiction through motions to dismiss; neither NYK-Japan nor WWL-AS affirmatively has availed themselves of the Court's jurisdiction.  In stark contrast, GM's abject refusal to even discuss, much less consider or accept, a stipulation on terms similar to the other plaintiffs cannot serve a basis for authorizing service on defendants' US counsel.

GM's argument that end-running the Hague Service Convention would serve judicial economy by allowing the Court to consider immediately any potential motion to dismiss GM's complaint is rank sophistry; GM would have the Court sacrifice the protections provided by the Hague Service Convention to serve only GM's convenience.  The pending motions to dismiss have been fully briefed since January 26, 2015, a process that consumed a number of months.  A hearing on those motions is scheduled for July 23, three days from today, four days before GM's reply papers on this motion are even due, and eleven days before the return date GM itself listed on this motion.  GM's contention that, if service can be carried out immediately, any motion to dismiss GM's complaint could be considered contemporaneously with the others, simply is not credible.[7]

---

[7]    It is ironic:  GM's vague reference to different arguments that it will make on account of its different status from the

Finally, as noted in the July 6, 2015 motion to stay GM's complaint, judicial economy is best served by deferring any obligation to answer, move or otherwise respond to GM's complaint until sometime after the Court decides the pending motions to dismiss.  The Court's decision on the pending motions will have a significant and fundamental effect on GM's complaint.  It would also preclude any party from advancing duplicative arguments to the Court.  On balance, then, judicial economy favors denying GM's motion.

### 6.   Rules 4(h)(2) and 4(f)(3) do not authorize alternate service through local counsel.

The relief GM requests -- serving NYK-Japan and WWL-AS through their U.S. counsel -- is not permitted under the plain language of Rule 4.  Rules 4(h)(2) and (f) govern service on a foreign corporate entity when such service occurs "at a place not within any judicial district of the United States."  As Drew Technologies, Inc. v. Robert Bosch, L.L.C., No. 12-15622, 2013 WL 6797175, at *2 (E.D. Mich. Oct. 2, 2013), dismissed, 2014 U.S. Dist. LEXIS 18256 (E.D. Mich. Feb. 13, 2014), explains, Rules 4(h)(2) and (f)(3) "may be used only when the service will occur outside of the United States." (emphasis in original).  Where, as here, a plaintiff requests "an order authorizing alternative service under Rule 4(f)(3) that [is] to occur within

---

other plaintiffs does nothing to advance -- and, in fact, serves to defeat -- its cause.

the United States," that relief is impermissible because "Court ordered service under Rule 4(f)(3) is clearly limited to methods of service made outside of the United States." Id. at *3.

Drew Technologies vacated an earlier order allowing the plaintiff to serve a German corporation through its agent in the United States rather than in accordance with Rule 4(h)(2). It determined that, if service was to take place within the United States, it must be appropriate under Rule 4(h)(1) and that domestic service could not be ordered by the court under Rule 4(f)(3). Id. at *2-3. The governing proposition is straightforward: GM's requested relief -- serving a foreign corporation within the United States through U.S. counsel -- is not permitted by the Federal Rules. GM's motion should be denied.


III. **CONCLUSION.**

GM offers no sound basis to excuse compliance with the Hague Service Convention or Rules 4(h)(2) and 4(f)(1). Instead, GM asks that the Court exalt convenience over compliance with an internationally recognized convention and, more to the point, a treaty to which the United States is a signatory. GM's motion lacks any factual or legal support, and should be denied.

**WHEREFORE,** for the foregoing authority, arguments and reasons, moving defendants respectfully pray that the Court (a)

deny GM's motion, (b) require GM to serve NYK-Japan and WWL-AS
in accordance with the Hague Service Convention, and (c) issue
such other and further relief as the Court deems just and proper
consistent with this prayer for relief.

**DATED:**  July 20, 2015              Respectfully submitted,


                                      /s/ John R. Fornaciari
                                      John R. Fornaciari
                                      **BAKER & HOSTETLER LLP**
                                      1050 Connecticut Ave., NW
                                      Suite 1100
                                      Washington, D.C. 20036
                                      Telephone:  202-861-1612
                                      jfornaciari@bakerlaw.com

                                      *Attorneys for defendant*
                                      *NYK Line (North America) Inc.*


                                      /s/ Roberto A. Rivera-Soto
                                      Roberto A. Rivera-Soto
                                      **BALLARD SPAHR LLP**
                                      210 Lake Drive East – Suite 200
                                      Cherry Hill, New Jersey 08002-1163
                                      Telephone:  (856) 761-3400
                                      riverasotor@ballardspahr.com

                                      *Attorneys for defendants*
                                      *EUKOR Car Carriers Inc. and*
                                      *Wallenius Wilhelmsen Logistics*
                                      *America LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on the date listed below, I caused true and correct copies of the memorandum in opposition to the motion of plaintiff General Motors LLC for leave to serve defendants Nippon Yusen Kabushiki Kaisha and Wallenius Wilhemsen Logistics AS through U.S. counsel to be served via the Court's CM/ECF system.

**DATED:**     July 20, 2015          /s/ Roberto A. Rivera-Soto
                                     Roberto A. Rivera-Soto