UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| In Re:<br>Vehicle Carrier Services<br>Antitrust Litigation<br><br>*This Document Relates to:*<br><br>GENERAL MOTORS LLC v.<br>NIPPON YUSEN KABUSHIKI<br>KAISHA, et al.<br><br>Case No. 15-cv-04739-ES-JAD | Master Docket No.:13-cv-3306<br>(MDL No. 2471)<br><br>Motion Day:  July 23, 2015 |

**GENERAL MOTORS LLC'S REPLY IN SUPPORT OF ITS MOTION TO SERVE DEFENDANTS NIPPON YUSEN KABUSHIKI KAISHA AND WALLENIUS WILHELMSEN LOGISTICS AS <u>THROUGH THEIR U.S. COUNSEL</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

    I.    Defendants' Reading of the Hague Convention, the Federal Rules of Civil Procedure, and the Relevant Case Law is Incorrect ................................................................................................ 1

        A.    The Hague Convention is mandatory when—and only when—the method of service calls for documents to be transmitted abroad ............................................................................ 1

        B.    There is no "exhaustion" requirement requiring GM to first attempt service under the Hague Convention before seeking an order under Rule 4(f)(3) ............................................ 3

        C.    Rule 4(f)(3) permits service on a foreign defendant through that defendant's U.S. counsel ...................................... 6

    II.    The Court Should Exercise its Discretion to Allow Service Under Rule 4(f)(3) Because the "Particularities and Necessities" of This Case Merit Such an Order ................................. 6

CONCLUSION ..................................................................................................... 10

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

    I.    Defendants' Reading of the Hague Convention, the Federal Rules of Civil Procedure, and the Relevant Case Law is Incorrect ................................................................................................ 1

        A.    The Hague Convention is mandatory when—and only when—the method of service calls for documents to be transmitted abroad ............................................................................ 1

        B.    There is no "exhaustion" requirement requiring GM to first attempt service under the Hague Convention before seeking an order under Rule 4(f)(3) ............................................ 3

        C.    Rule 4(f)(3) permits service on a foreign defendant through that defendant's U.S. counsel ...................................... 6

    II.    The Court Should Exercise its Discretion to Allow Service Under Rule 4(f)(3) Because the "Particularities and Necessities" of This Case Merit Such an Order ................................. 6

CONCLUSION ..................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Advanced Aerofoil Techs., AG v. Todaro*,
    No. 11 Civ. 9505 ALC, 2012 WL 299959 (S.D.N.Y. Jan. 31, 2012) ................. 2

*Badyal v. Bosch Packaging Tech., Inc.*,
    No. 2014 WL 1922621 (E.D. Cal. May 14, 2014) ............................................. 7

*Bravetti v. Liu*,
    No. 3:12-cv-7492-MAS-TJB, 2013 WL 6501740 (D.N.J. Dec. 11,
    2013) ............................................................................................................. 3, 4

*Brown v. China Integrated Energy, Inc.*,
    285 F.R.D. 560 (C.D. Cal. 2012) ........................................................................ 5

*C & F Systems, LLC v. Limpimax, S.A.*,
    No. 1:09-cv-858, 2010 WL 65200 (W.D. Mich. Jan. 6, 2010) ........................... 4

*Cephalon, Inc. v. Sun Pharmaceutical Industries, Inc.*,
    No. 11-5474, 2011 WL 6130416 (D.N.J. Dec. 7, 2011) ..................................... 4

*Drew Technologies, Inc. v. Robert Bosch, L.L.C.*,
    No. 12-15622, 2013 WL 6797175 (E.D. Mich. Oct. 2, 2013) ............................ 6

*Flava Works, Inc. v. Does 1-26*,
    No. 12 C 5844, 2013 WL 1751468 (N.D. Ill. Apr. 19, 2013) ............................. 4

*FMAC Loan Receivables v. Dagra*,
    228 F.R.D. 531 (E.D. Va. 2005) ......................................................................... 3

*Knit With v. Knitting Fever, Inc.*,
    No. CIV. A., No. 08-4221, 2010 WL 4977944 (E.D. Pa. Dec. 7,
    2010) ................................................................................................................... 9

*Midmark Corp. v. Janak Healthcare Private Ltd.*,
    No. 3:14-cv-088, 2014 WL 1764704 (S.D. Ohio May 1, 2014) ..................... 2, 4

*NYKCool A.B. v. Pac. Intern. Servs., Inc.*,
    No. 12-cv-5754 (LAK), 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) .................. 5

*Rio Properties, Inc. v. Rio International Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ........................................................................4, 5

*Shenouda v. Mehanna*,
    203 F.R.D. 166 (D.N.J. 2001) ..............................................................................2

*Western Supreme Buddha Ass'n, Inc. v. Oasis World Peace and
    Health Foundation*,
    No. 08-cv-1374, 2011 WL 856378 (N.D.N.Y. Mar. 9, 2011) ..............................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 1 .................................................................................................9

Fed. R. Civ. P. 4(f)(1) ........................................................................................3

Fed. R. Civ. P. 4(f)(3) .................................................................................*passim*

# INTRODUCTION

When shorn of its invective, Defendants' 31-page opposition provides the Court with no basis to deny GM's motion to serve the foreign Defendants through their U.S. counsel. The opposition rests on a cascade of legal errors concerning the Hague Convention and the Federal Rules of Civil Procedure. Most fundamentally, Defendants argue that the Hague Convention is mandatory here. It is not. Second, Defendants argue that GM must attempt service through the Hague Convention before obtaining an order under Rule 4(f)(3). This is also incorrect. While the Court has discretion to require GM to first attempt service through the Hague, this is not a legal requirement. And for several reasons, the Court should not impose such a requirement here. That is because the "particularities and necessities" of this case make it a perfect candidate for the order GM is requesting. GM respectfully requests that the Court grant its motion to serve Defendants through their U.S. counsel.

# ARGUMENT

## I. Defendants' Reading of the Hague Convention, the Federal Rules of Civil Procedure, and the Relevant Case Law is Incorrect

### A. The Hague Convention is mandatory when—and only when—the method of service calls for documents to be transmitted abroad

First, Defendants erroneously contend that "a plaintiff seeking to serve a corporate entity based in a foreign nation that is a signatory to the Hague Service Convention must effect service in accordance with that Convention." ECF No. 262 at 7. This is a misstatement of the law: the Hague Convention is mandatory only "when serving a foreign defendant *in a signatory country*."

1

ECF No. 262 at 13 (quoting *Shenouda v. Mehanna*, 203 F.R.D. 166, 170 (D.N.J. 2001) (emphasis added)). But this principal is immaterial here because GM's proposed method of service does not require documents to be transmitted abroad; rather, the documents will be served domestically on Defendants' U.S. counsel. Whether the defendant is served in a foreign country—as opposed to simply being a foreign defendant—is a critical distinction, and one that is amply reflected in Defendants' own authority.[1]

GM preempted this argument in its opening brief by citing a litany of cases stating that if service under Rule 4(f)(3) is effected domestically, the Hague Convention does not apply. ECF No. 256-1 at 12-13. Defendants do not respond to the incontrovertible legal authority contained in these cases, opting instead to misdirect the issue to whether "compliance with the Hague Service Convention is not possible, or that other exceptions, such as the unavailability of a person's address, apply." ECF No. 262 at 14. This conflates two separate issues: whether service under the Hague Convention is mandatory is different from whether there is an "exhaustion" requirement before service may be ordered under Rule 4(f)(3). As to the former issue, if "the proposed method to serve . . . does not require the

---

[1] *See, e.g.*, *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505 ALC, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (plaintiff sought court order "allowing service of the foreign defendants by international courier"); *Midmark Corp. v. Janak Healthcare Private Ltd.*, No. 3:14-cv-088, 2014 WL 1764704, at *1 (S.D. Ohio May 1, 2014) (plaintiff sought court order "for permission to perfect service via email"); *Shenouda*, 204 F.R.D. at 168 (plaintiff who "forwarded [summons and complaint] to a local attorney in Egypt to serve on the Defendants" did not properly serve the defendant). All of these cases involved methods of service that required documents to be "transmitted abroad." Numerous other cases also support this key distinction.

transmittal of documents abroad . . . the Hague Convention does not apply." *Bravetti v. Liu*, No. 3:12-cv-7492-MAS-TJB, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013); *see also* ECF No. 256-1 at 13.[2] Because GM's proposed method of service does not require service abroad, the Hague Convention is not mandatory.

### B. There is no "exhaustion" requirement requiring GM to first attempt service under the Hague Convention before seeking an order under Rule 4(f)(3)

Defendants' assertion that GM must attempt service under the Hague Convention before requesting relief under Rule 4(f)(3) fares no better. Defendants contend that "GM . . . fails to satisfy the threshold requirement of showing that service under the Hague Service Convention is impracticable or futile." ECF No. 262 at 10. There is no threshold "requirement," and Defendants' own authority once again undercuts their spurious legal argument. For instance, Defendants misleadingly assert that "the plaintiff *must* 'show that they have reasonably attempted to effectuate service on defendant. . . .'" ECF No. 262 at 15 (emphasis added) (quoting *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005)). In fact, *FMAC* does not hold that the plaintiff "must" do anything; instead, it explains that "no language in Rule 4(f)(1) or 4(f)(2) indicates their primacy. However, a district court, in exercising the discretionary power permitted by Rule 4(f)(3), *may* require the plaintiff to show that they have reasonably attempted to effectuate service on defendant. . . ." *Id.* (citation and

---

[2] Defendants try to distinguish *Bravetti* on the ground that the Hague Convention did not apply in that case because the address of the person to be served was unknown. ECF No. 262 at 14. This was an additional, independent ground for why the Hague was not mandatory. It was not the only reason.

3

-

internal quotation marks omitted) (emphasis added). In other words, the district court has discretion to require a party to first attempt service under the Hague Convention, but there is absolutely no legal requirement that it must do so.[3]

Defendants cite a few additional outlier cases that have either been disagreed with or ignored. For instance, *C & F Systems, LLC v. Limpimax, S.A.*, No. 1:09-cv-858, 2010 WL 65200 (W.D. Mich. Jan. 6, 2010) was expressly disagreed with by *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). Likewise, *Cephalon, Inc. v. Sun Pharmaceutical Industries, Inc.*, No. 11-5474, 2011 WL 6130416 (D.N.J. Dec. 7, 2011), concludes—without citing a single case and acknowledging its disagreement with seminal authority—that Rule 4(f)(3) requires that if the defendant's country is a signatory to the Hague Convention, the plaintiff is required to use it. This case has not been followed and has been ignored by subsequent cases in this District that concluded exactly the opposite (but with legal support). *See Bravetti*, 2013 WL 6501740, at *3.

Defendants also unsuccessfully try to narrow the seminal case on Rule 4(f)(3), *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002), and weakly contend its application should be limited. It is difficult to determine what exactly Defendants are arguing about *Rio Properties*, but if they

---

[3] *Midmark*, also cited repeatedly by Defendants, says exactly the same thing. 2014 WL 1764704, at *1. In fact, there is little variation in Defendants' cases. *See, e.g.*, *Western Supreme Buddha Ass'n, Inc. v. Oasis World Peace and Health Foundation*, No. 08-cv-1374 (TJM/DRH), 2011 WL 856378, at *1 (N.D.N.Y. Mar. 9, 2011) (noting that service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief" but that the district court "*may* impose a threshold requirement for parties . . . to show that they have reasonably attempted to effectuate service on the defendant(s)" (emphasis added)).

are arguing that its principles do not apply when a Hague Convention signatory is involved, they are wrong. Courts have not distinguished *Rio Properties* on this basis. *See, e.g.*, *NYKCool A.B. v. Pac. Intern. Servs., Inc.*, No. 12-cv-5754 (LAK), 2015 WL 998455, at *3 (S.D.N.Y. Mar. 5, 2015) (citing *Rio Properties* and noting that "[a]s an initial matter, it is not necessary to exhaust or demonstrate the impossibility of service under Rule 4(f)(1)-(2) before resorting to service under Rule 4(f)(3)"); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565 (C.D. Cal. 2012) (citing *Rio Properties* and noting that "the court cannot accept China Integrated's argument that plaintiff's requested method of service is improper because they have failed to demonstrate the impracticability of other methods").[4]

  The upshot is that this Court has wide discretion when ordering service under Rule 4(f)(3). Included in this discretion is the power to order GM to first attempt service under the Hague Convention. Nothing in the Federal Rules, however, mandates that GM first attempt to serve Defendants under the Hague Convention. And for the reasons below, GM requests that the Court not require it to first attempt service under the Hague Convention.

---

[4] Defendants also bizarrely argue that *In re Cathode Ray Tube (CRT) Litigation* is "irrelevant," reasoning that the Hague Convention was inapplicable because "transmittal abroad for service is not required." ECF No. 262 at 21. This is GM's exact argument: the Hague Convention does not apply because GM will not be transmitting documents abroad to serve Defendants. The countries of the foreign defendants in that case were both signatories to the Hague.

### C. Rule 4(f)(3) permits service on a foreign defendant through that defendant's U.S. counsel

For the final argument in their brief, Defendants contend that Rule 4(f)(3) does not authorize service on Defendants' U.S. counsel. This argument is meritless. Defendants' entire argument is based on *Drew Technologies, Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2013 WL 6797175, at *2-3 (E.D. Mich. Oct. 2, 2013), a complete anomaly in the case law that has—for good reason—never been cited by another case. *Drew Technologies* holds that "court ordered service under Rule 4(f)(3) may be effected only outside of a judicial district of the United States." *Id.* at *2. This proposition is plainly wrong, and the cases permitting service on a foreign defendant's U.S. counsel are legion. *See* ECF No. 256-1 at 12.

## II. The Court Should Exercise its Discretion to Allow Service Under Rule 4(f)(3) Because the "Particularities and Necessities" of This Case Merit Such an Order

As discussed in GM's opening brief, service under Rule 4(f)(3) is appropriate where the "particularities and necessities" of a case make it so. After spending over two pages incorrectly stating why the four "particularities and necessities" of this case are "irrelevant," ECF No. 262 at 11, Defendants go on to say that GM "[c]uriously . . . declines to identify just what 'particularities and necessities' somehow require the extraordinary[5] relief it seeks," ECF No. 262

---

[5] GM must point out the irony of Defendants' description of GM's request as "extraordinary" in view of the stay Defendants are concurrently requesting. While numerous courts in this District have referred to the stay of a civil case as an "extraordinary" remedy, ECF No. 261 at 4-5, courts around the nation have explicitly and repeatedly stated that an order permitting service under
(Continued...)

6

at 25.  The latter point is false, as the prior section of Defendants' opposition demonstrates—that is, GM identified several separate grounds for why its motion should be granted.  Defendants' responses to these grounds are unpersuasive.

    First, Defendants acknowledge—as they must—that their practice in this litigation has been "to accept service of process via their respective U.S. Counsel." ECF No. 262 at 11.  They have done so with every plaintiff so far, and GM sought to continue that practice.  Defendants now argue that "GM's abject refusal to even discuss, much less consider or accept, a stipulation on terms similar to the other plaintiffs cannot serve a basis for authorizing service on defendants' U.S. counsel." ECF No. 262 at 27.  Nonsense.  GM very plainly stated to Defendants in an email that "GM is willing to accept the above terms"—terms that replicated those of *every single stipulation Defendants signed so far*.  ECF Nos. 256-5 at 1, 256-6 at 2. Those terms included (1) agreeing to stay discovery pending a decision on the motion to dismiss and (2) providing translated versions of the complaint.  *Id.*  It is Defendants—not GM—that would not stipulate to these previously accepted terms.[6]  Not one of these prior stipulations stayed any of the plaintiffs' cases; they merely stayed discovery.  In case it is unclear, GM will state it very clearly here: GM was, is, and remains willing to stipulate to stay discovery until the Court rules

---

Rule 4(f)(3) is *not* "extraordinary" relief, ECF No. 256-1 at 4-5; *accord Badyal v. Bosch Packaging Tech., Inc.*, No. 2014 WL 1922621, at *2 (E.D. Cal. May 14, 2014) (same).

    [6] And the Court need only review the correspondence between the parties to see who would not engage in a dialogue.  *E.g.*, ECF No. 256-6 at 1 (Mr. Fornaciari:  "I don't intend to waste time on a futile exercise.").

7

on any pending motions to dismiss and will provide Defendants with translated copies of GM's complaint in exchange for accepting service through U.S. counsel. It does not, however, agree to stay its entire case.

Second, Defendants' argument that the Court should not care about whether GM becomes a "procedural straggler" because of when GM filed its suit should hold little weight in light of Defendants' past words and actions. As an initial matter, Defendants are on record with their concern about avoiding such "procedural stragglers." ECF No. 256-1 at 7. Further, the foreign Defendants have already agreed to accept service through their U.S. counsel from other later-filing plaintiffs. Specifically, after first stipulating with the putative classes in March 2014 for their U.S. counsel to accept service, Defendants *again* stipulated in November 2014 for their U.S. counsel to accept service on behalf of the later-filed truck-dealer class. ECF Nos. 203 (WWL), 204 (NYK). The truck-dealer stipulation—despite being filed after the motions to dismiss were already served—contained no requirement that those plaintiffs stay their case. *See id.*

Further, if GM is forced to serve the foreign Defendants under the Hague Convention, GM will not be the lone "straggler." Defendants' U.S.-based companies have already been served (and are in default on their response).[7] If GM

---

[7] In their "certifications," Messrs. Rivera-Soto and Fornaciari both contend that Ms. Solh's statement that neither responded to her request to accept service is inaccurate. ECF Nos. 262-1 ¶¶ 3-5, 262-2 ¶ 4. Ms. Solh's e-mails requesting that counsel accept service were sent on June 16, 2015. After hearing nothing for two days, GM served the U.S.-based Defendants. It was only five or six days *after being served* that Messrs. Rivera-Soto and Fornaciari replied with a limited response concerning only the foreign-based Defendants. Nothing in the Solh certification is inaccurate, as the attachments to that certification make apparent.

8

spends the next several months trying to effect service under the Hague, the schedules for the U.S.-based Defendants and foreign-based Defendants will be thrown into discord in this litigation. This is not desirable for any of the parties or the Court. The bottom line is that GM, the foreign Defendants, or both, will fall behind absent an order under Rule 4(f)(3).

Third, Defendants refer to GM's concern about maximizing judicial economy as "rank sophistry." ECF No. 262 at 27. Yet, they provide virtually no reason—other than parroting back a schedule the Court is already well aware of—for why expediting service will not be more efficient for the resolution of this case. Counsel for WWL and Eukor has already admitted that "The Hague Convention service of process requirements are detailed, expensive and time-consuming." ECF No. 265-5 at 1. GM agrees. Unfortunately, Defendants appear to be using the threat of this "expensive and time-consuming" process to try and coerce an unwarranted benefit from GM, regardless of the (conceded) effect it will have on this litigation. This turns Rule 1 on its head: "[The FRCP] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Defendants also argue that "Courts routinely and soundly have rejected [delay] as a basis for granting relief under Rule 4(f)(3)." ECF No. 262 at 16. But many other courts have held just the opposite: "Repeatedly, courts around the country have found that service upon a foreign defendant through counsel is appropriate 'to prevent further delays in litigation.'" *Knit With v. Knitting Fever, Inc.*, No. CIV. A., No. 08-4221, 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010) (citation omitted) (collecting cases).

9

Defendants similarly invoke their motion to stay as a reason why service on the foreign Defendants through their U.S. counsel would not maximize judicial economy. Specifically, they argue that the "Court's decision on the pending motions will have a significant and fundamental effect on GM's complaint. It would also preclude any party from advancing duplicative arguments to the Court." ECF No. 262 at 28. GM will not belabor why this argument is incorrect here, but as discussed in both GM's opening brief and in its opposition to Defendants' motion to stay, it is. *See* ECF No. 256-1 at 8-9; ECF No. 261 at 8-10.

## CONCLUSION

For the above reasons and for those in GM's opening brief, GM respectfully requests that the Court enter an order under FRCP 4(f)(3) allowing GM to serve NYK and WWL through their U.S. counsel.

Dated: July 22, 2015

Respectfully submitted,

/s/ Chahira Solh

Daniel A. Sasse
Chahira Solh
Ryan C. Wong
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA  92614
Telephone:  (949) 263-8400
Facsimile:   (949) 263-8414
Email:  dsasse@crowell.com
            csolh@crowell.com
            rwong@crowell.com

Kent A. Gardiner
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:   (202) 628-5116
Email:  kgardiner@crowell.com

Elizabeth Anne Figueira
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York  10022-2544
Telephone:  (212) 223-4000
Facsimile:   (212) 223-4134
Email: efigueira@crowell.com

*Counsel for Plaintiff General Motors LLC*


12

## CERTIFICATE OF SERVICE

     I hereby certify that on this 22nd day of July, 2015, I electronically filed the within and foregoing **GENERAL MOTORS LLC'S REPLY IN SUPPORT OF ITS MOTION TO SERVE DEFENDANTS NIPPON YUSEN KABUSHIKI KAISHA AND WALLENIUS WILHELMSEN LOGISTICS AS THROUGH THEIR U.S. COUNSEL** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filings to the attorneys of record in this case.

Dated: July 22, 2015

                                    */s/ Chahira Solh*
                                    Chahira Solh